# United States District Court

EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | Case Number: 4:20-CR-318 |
| v. | § | Judge Mazzant |
| | § | |
| KEITH TODD ASHLEY | § | |
| | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant's Motion to Revoke or Amend Detention Order (Dkt. #33). The Court, having considered the Motion, the briefing, and the applicable law, finds the Motion must be **DENIED**.

## BACKGROUND

Defendant Keith Todd Ashley ("Ashely") is detained and awaiting trial for operating a Ponzi scheme and murdering one of his investors. From approximately 2003 to 2013, Ashley worked as a legitimate financial advisor selling mutual funds and life insurance policies. At an unknown date, Ashley began soliciting money under false pretenses and depositing the money into his own bank account. Ashley used the money for personal expenses, including mortgage payments, casino bills, and expenses incurred by a brewery he owned. In total, Ashley spent over $1 million of his clients' money.

In 2016, Ashley solicited money from an individual identified as "JS." Ashley invested JS's money in a fictitious security and a $2 million life insurance policy. Ashley also arranged to be the trustee and executor of JS's estate.

On February 19, 2020, JS died under suspicious circumstances. The morning of his death, JS had a meeting scheduled with Ashley to draw blood to use for his life insurance policy. Security cameras captured Ashley enter JS's house at 9:30 a.m. At 10:15 a.m., a loud noise activated JS's

garage security camera.  At 10:17 a.m., a "suicide note" was printed from JS's computer.  At 10:21 a.m., security cameras captured Ashley leaving JS's house.  Police later determined the garage security camera would not activate from a car starting or bookshelf falling, but would activate from a gunshot.

Later that day, JS's wife and son discovered JS's body in his home office.  JS held a 9mm pistol in his left hand and had a fatal gunshot wound to his head.  Neither the gun nor the shell casings had any fingerprints.  While blood splattered the office, there was no blood on the "suicide note."  Additionally, the pistol was in JS's non-dominant hand.  Authorities later discovered the drug etomidate in JS's system at the time of his death.  Etomidate is used before intubation in a hospital and renders a patient paralyzed within thirty to sixty seconds of injection.

Following JS's death, Ashley attempted to access JS's financial accounts.  Unsuccessful, Ashley returned to JS's home and instructed JS's seven-year-old son to help him.  After accessing JS's cell phone, Ashley deleted text messages between himself and JS and transferred $20,000 from JS's account to his own bank account.  Authorities later discovered computer searches by Ashley for whether there is deferred adjudication for manslaughter and whether a doorbell camera would record a sound.  His cell phone also contained a draft personal suicide note, which represented that he was in serious financial trouble and stole over $100,000 from his mother-in-law.  And Ashely had access to the drug etomidate because he is a registered nurse.

On November 11, 2020, a federal grand jury indicted Ashley for six counts of wire fraud (Dkt. #1).  On December 8, 2020, state grand jury in Dallas County indicted Ashley for murder (Dkt. #39).  On March 10, 2021, a superseding federal indictment added additional wire fraud counts, two mail fraud counts, and one count of carrying or possessing a firearm in furtherance of a crime of violence (Dkt. #37).

2

On February 2, 2021, United States Magistrate Judge Kimberly C. Priest Johnson held a detention hearing regarding Ashley (Dkt. #28).  On February 4, 2021, Magistrate Judge Priest Johnson ordered pretrial detention after finding Ashley dangerous, a flight risk, and a risk of obstructing justice (Dkt. #29).  On February 16, 2021, Ashley moved this Court to revoke or amend his pretrial detention (Dkt. #33).  On March 19, 2021, the Government responded (Dkt. #39).

## LEGAL STANDARD

### I.      Timeliness

Rule 59(a) of the Federal Rules of Criminal Procedure establishes a fourteen-day deadline for a defendant to seek review of a magistrate judge's detention order. FED. R. CRIM. P. 59(a).  If the defendant fails to appeal the magistrate judge's decision within fourteen days, the right to review is waived. *Id.*; *see also United States v. Watts*, 2010 WL 11452009, at *1 (N.D. Tex. Jun. 25, 2010) (citing *United States v. Hoffman*, 2009 WL 1068856, at *1 (W.D. Ark. Apr. 21, 2009)). Any review by the district court following a waiver is discretionary and not a matter of right. *Id.*

### II.     Detention

A defendant may seek reconsideration of a detention order by filing a motion for revocation under 18 U.S.C. § 3145(b).  District courts review a motion to revoke a detention order *de novo* and "must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992) (citing *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985)).  Because the review is *de novo*, courts consider both the original hearing transcript and any written arguments presented by the parties. *Id.*; *see also United States v. Tadlock*, 399 F.Supp.2d 747, 749 (S.D. Miss. 2005).

The Bail Reform Act requires the pretrial release of a defendant unless "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the

person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). If a defendant is a danger to the community, but not a risk of flight, the Fifth Circuit holds that pretrial detention is unwarranted unless an additional circumstance set out by 18 U.S.C. § 3142(f) applies. *See United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992). In determining whether there are conditions of release that will reasonably assure appearance of the defendant and protect the community, courts consider: "(1) the nature and circumstances of the offense charges . . ."; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

There is a rebuttable presumption that no condition or combination of conditions will reasonably mitigate the risk of flight or ensure safety of the community "if the judicial officer finds that there is probable cause to believe that the person committed . . . a violation of 18 U.S.C. § 924(c) [Carrying/Possessing a Firearm in Furtherance of a Crime of Violence]." 18 U.S.C. § 3142(e)(3)(B). If the rebuttable presumption does not apply, the Government must show by a preponderance of the evidence standard that no condition or combination of conditions will reasonably assure the appearance of the person. *Fortna*, 769 F.2d at 250; *United States v. McConnell*, 842 F.2d 105 (5th Cir. 1988). The Government's burden of proof changes to clear and convincing in a case where the government argues the defendant should be detained because he is a danger to the community. 18 U.S.C. § 3142(f)(2)(B).

## ANALYSIS

Ashley moves to revoke or amend his pretrial detention, arguing the Government failed to prove he is a flight risk. The Government argues Ashley is a risk of flight, is a danger to the community, and there are no conditions of pretrial release that would reasonably mitigate these

4

concerns.

The Court finds Ashley's pretrial detention is warranted. Ashley failed to rebut the presumption that he is a risk flight and danger to the community. No conditions of release would reasonably mitigate these concerns. Accordingly, Ashley's Motion is denied.

## I.      Timeliness

The Court begins its analysis by determining if the Motion is timely. A defendant must seek review of a magistrate judge's detention order within fourteen days or the "right to review is waived, and review by the district court following such a waiver is discretionary and not a matter of right." *See* FED. R. CRIM. P. 59(a); *United States v. Watts*, No. 3:09-CR-249-D (09), 2010 WL 11452009, at *1 (N.D. Tex. June 25, 2010) (citation omitted).

Here, the Magistrate Judge issued the detention order on February 4, 2021 (Dkt. #29). Ashley filed his Motion to Revoke or Amend on February 16, 2021 (Dkt. #33). As Ashley filed within the fourteen-day window, his Motion is timely, and the Court may conduct a review.

## II.     Rebuttable Presumption

The Court next determines if a rebuttable presumption applies. The Government typically bears the burden of proof in detention cases, but there is a rebuttable presumption that a defendant is a flight risk and danger to the community if there is probable cause the defendant committed an offense listed under 18 U.S.C. § 3142(e)(3).

The First Superseding Indictment charges Ashley with carrying or possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Dkt. #37). This is an offense listed under 18 U.S.C. § 3142(e)(3), which provides a statutory presumption of detention for particular crimes. In cases charged by a grand jury, the indictment itself supplies probable cause that Ashley committed the crime. *United States v. Valenzuela-Verdigo*, 815 F.2d 1011, 1012 (5th

Cir. 1987).

Accordingly, because there is probable cause to support the charge and the charge is one listed under 18 U.S.C. § 3142(e)(3), there is a rebuttable presumption that Ashley is a flight risk and a danger to the community.[1]

## III.    Detention

On the merits, Ashley may be detained pending trial if no condition or combination of conditions will reasonably assure his appearance and the safety of any other person or the community. 18 U.S.C. § 3142(e)(1).  The Court finds detention is warranted because Ashley is a danger to the community, flight risk, and no conditions mitigate these concerns.[2]

### i.    Danger to the Community

First, the Court considers whether Ashley is a danger to the community.  Ashley does not provide argument as to why he is not a danger.  However, the Court still analyzes this factor as required by § 3142(e) and the Fifth Circuit. *See Byrd*, 969 F.2d at 109.

Applying the rebuttable presumption from § 3142(e)(3)(b), the Court finds that Ashley is a danger to the community.  This inquiry permits consideration of a defendant's propensity to commit crime generally, "even where only pecuniary and not physical harm might result to the community at large." *United States v. Parr*, 399 F. Supp. 883, 888 (W.D. Tex. 1975); S. Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3195.  Here, Ashley is accused of developing a friendship with JS over several years and murdering him to gain control of his multi-million-dollar estate.  The nature and circumstances of his crime suggest he is capable

---

[1] Though a rebuttable presumption did not apply at Ashley's original detention hearing, it applies now because the Court conducts a *de novo* review of pretrial detention.

[2] The Government also argues that Ashley should be detained because he poses a risk of destroying evidence. While the Magistrate Judge made this finding at the original detention hearing, the Court need not analyze this concern because it finds Ashley is a flight risk.  Ashley's flight risk and danger to the community are enough to warrant detention.

of harming clients who were victims of his Ponzi scheme.  Even after Ashley's phone was seized by law enforcement, he continued to contact the fraud victims and lied that his cell phone was lost or stolen.  Several of the potential victims are also elderly, including a 92-year-old woman.  Along with being a danger to his clients, Ashley poses a risk of physical or economic harm to his family.  Ashley previously stole thousands of dollars from his mother-in-law and has large life insurance policies over his wife and children.  Further, Ashley is a danger to himself.  When law enforcement reviewed Ashley's cell phone, they discovered a lengthy suicide note.

As Ashley is a danger to other victims of his financial crimes, his family, and himself, he meets the first factor for pretrial detention.  Ashley fails to rebut the presumption that he is a danger to the community.

### ii.    Flight Risk

Next, the Court considers whether Ashley is a flight risk.  Ashley argues the Government failed to present any evidence that he is a flight risk, beyond painting his situation as "desperate."  The Government disagrees, arguing Ashley is a serious flight risk because of the nature of his crime, his lack of support from his family, and suicide note.

Applying the rebuttable presumption from § 3142(e)(3)(b), the Court finds Ashley is a flight risk.  First, while desperation alone does not make a defendant a flight risk, Ashley is facing serious charges in both federal court and state court, as well as significant restitution for his financial crimes.  Ashley already went to significant lengths to cover up his crime, and while he may have cooperated with parts of the investigation, he also tried to destroy evidence and lie to other victims.  These attempts demonstrate a pattern of risky behavior.  Second, ties to the community are a factor in determining whether a defendant poses a flight risk, but these ties must be the "sort of family ties from which we can infer that a defendant is so deeply committed and

personally attached that he cannot be driven from it by the threat of a long prison sentence." *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992).  Here, Ashley invokes his love for his family, but stole several thousand dollars from his mother-in-law.  The Government suggests it is unclear whether his family will continue to support him after learning of this theft.  Lastly, Ashley wrote a recent suicide note following the murder mentioning his intention to escape his crimes and give all his money to his wife and children (Dkt. #39, Exhibit 2).  This note suggests he is a risk of killing himself to avoid the charges if released.

Though the Magistrate Judge had concerns that the Government did not meet its burden in proving flight risk, the presumption from the § 924(c) shifts the burden to Ashley.  Ashley fails to rebut the presumption that he is a flight risk.

### iii.    Reasonable Conditions of Release

Finally, having found Ashley is a danger to the community and flight risk, the Court considers whether any conditions of supervised release would reasonably mitigate these concerns.

In determining whether any condition or combination of conditions will reasonably assure his appearance and safety, the Bail Reform Act lists four factors that a Court must consider. 18 U.S.C. § 3142(g).  First, the Court considers "the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug." *Id.*  Second, the Court assesses "the weight of the evidence against the person." *Id.*  Third, the Court weighs "the history and characteristics of the person." *Id.*  Finally, the Court considers "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.*  Weighing these factors, there are no conditions of release that would reasonably mitigate the danger that Ashley poses to the community and his flight risk.

The very nature and circumstances of his § 924(c) charge, carrying or possessing a firearm

in furtherance of a crime violence, constitutes an unreasonable danger.   Section 3142(g) specifically instructs the Court to consider whether the charged offense involves a firearm because this type of offense suggests the defendant poses greater danger to the community.   Further, the planning and execution of the crime evidence Ashley's capacity to lie and use violence against his financial associates.   Ashley is charged with killing JS, as well as operating an elaborate Ponzi scheme involving several other victims.   In the case of JS, Ashley spent years systematically gaining control of over $2 million in financial assets before allegedly killing him.   The length and planning of his crime, his use of a firearm, and use of a paralysis drug suggest conditions of release could not mitigate the risk he poses to others.

The weight of the evidence against Ashley is significant.   Ashley had a motive to kill JS because he was facing significant financial hardship from his financial crimes.   Because he made himself trustee of JS's estate, Ashley stood to gain millions of dollars of assets from the murder. Further, there is also evidence that puts Ashley at the scene of the crime at the time of JS's death. Security camera footage captured him at JS's home at the time of death and JS's toxicology report shows the drug etomidate in his system, which Ashley had access to.   Following JS's death, Ashley also attempted to steal money from his accounts and delete incriminating text messages.   Taken together, this evidence paints a detailed picture of Ashley's role in the crime.

Lastly, history and characteristics of Ashley suggest he is dangerous and a flight risk. Ashley is in significant legal and financial trouble because of this case, which carry the potential for lengthy sentences and restitution.   Ashley faces a murder charge in Dallas County, wire fraud charges in federal court, and owes a large amount of debt from his Ponzi scheme.   This criminal history alone suggest Ashley is dangerous, as his Ponzi scheme lasted approximately ten years and took advantage of primarily elderly individuals.   Ashley suggests he should be released to a third-

party custodian, but does not suggest who.  Further, his family members are also victims because he stole money from his mother-in-law.  Ashley may have resided in the community for a long period of time, but his continued stability is also unclear because he paid for his house using stolen money from his Ponzi scheme.  Ashley appears personally distraught, as he wrote a recent suicide note, the veracity of which he failed to disprove.  GPS tracking and home confinement may limit the physical harm he can do to others, but they cannot prevent him from doing harm to himself.

Ashley proposes several conditions of release to mitigate these concerns, but the Court finds there are no conditions that mitigate Ashley's danger to the community and flight risk.  The nature and circumstances of the crime are serious, the weight of the evidence is significant, Ashley's criminal history is sophisticated, and his risk to the community is severe.  Weighed together, these factors support detention.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Revoke or Amend Detention Order (Dkt. #33) is hereby **DENIED**.

**SIGNED this 13th day of April, 2021.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE