IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Criminal No. 4:20-cr-318-ALM-KPJ |
| | § | |
| KEITH TODD ASHLEY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Keith Todd Ashley's ("Defendant") Motion to Reconsider Detention (the "Motion") (Dkt. 60). The Government filed a response in opposition to the Motion (Dkt. 61), and on March 23, 2022, the parties appeared for a hearing on the Motion. Upon consideration, the Motion (Dkt. 60) is hereby **DENIED**.

## I.     BACKGROUND

### A.  Factual and Procedural History

Defendant is awaiting trial in state and federal court for allegedly operating a Ponzi scheme and murdering one of his investors. *See* Dkt. 37; *State of Texas v. Keith T. Ashley*, No. F2100109 (195th Dist. Ct., Dallas Cnty., Tex. filed Apr. 21, 2021). In federal court, Defendant is charged with fourteen counts of wire fraud, two counts of mail fraud, and one count of carrying or possessing a firearm in furtherance of a crime of violence. *See* Dkt. 37. In state court, Defendant is charged with capital murder. *See State of Texas v. Keith T. Ashley*, No. F2100109 (195th Dist. Ct., Dallas Cnty., Tex. filed Apr. 21, 2021).

Defendant was indicted in federal court on November 13, 2020, and arrested the same day. *See* Dkt. 1. Defendant was arraigned on November 17, 2020, at which point the United States

moved to detain Defendant pending trial. *See* Dkts. 6, 7. Defendant initially waived his right to a detention hearing and was remanded to the custody of the United States Marshal Service pending trial. *See* Dkts. 12–15, 22. On December 23, 2020, Defendant moved for a detention hearing, which the Court granted. *See* Dkts. 25, 26.

The Court held a detention hearing on February 2, 2021 (the "Detention Hearing"). *See* Dkt. 28. Agent Vernon Messer of the Federal Bureau of Investigation testified regarding the details of the alleged offenses and the investigation that culminated in Defendant's arrest. *See* Dkts. 28, 29. According to Agent Messer, Defendant worked as a registered nurse, financial advisor, life insurance salesman, and owned a local brewery. *See* Dkt. 29 at 3. "J.S." was a financial advisory and life insurance client of Defendant. *See id.* According to Agent Messer, Defendant assumed control of J.S.'s financial resources—including a $2 million life insurance policy sold by Defendant to J.S.—by acting as trustee of a trust held by J.S. and as independent executor of J.S.'s estate. *See id.*

Defendant is accused of murdering J.S. on February 19, 2020. *See id.* Agent Messer testified that J.S. died of a gunshot wound to the head in his home office. *See id.* The firearm was found in J.S.'s non-dominant hand; there were no fingerprints on the firearm or on the shell casings. *See id.* A "suicide note" was located near J.S.; however, the letter contained no trace of blood despite the fact that blood was spattered throughout the office. *See id.*

Security camera footage connected Defendant to J.S.'s death. On the day J.S. died, Defendant entered J.S.'s home at 9:30 a.m. *See id.* Shortly after, at 10:15 a.m., J.S.'s garage security camera was activated, presumably by the gun shot that killed J.S. *See id.* Notably, the "suicide note" was printed from J.S.'s computer two minutes later at 10:17 a.m. *See id.* A few minutes later, at 10:21 a.m., Defendant departed J.S.'s house. *See id.*

Additional evidence implicates Defendant in J.S.'s death. For example, J.S. had etomidate in his system at the time of death. *See id.* Etomidate is a paralytic agent, to which Defendant had access and routinely used as a registered nurse. *See id.* at 3–4. Defendant, through a coworker, allegedly obtained J.S.'s autopsy report to determine if etomidate was found in J.S.'s system after his death. *See id.* at 4. Additionally, two days after J.S.'s death, Defendant returned to J.S.'s home to access J.S.'s cell phone. *See id.* Using the cell phone, Defendant allegedly transferred $20,000 from J.S.'s account to his own bank account and deleted text messages between J.S. and Defendant. *See id.* Furthermore, Defendant's computer revealed Defendant searched whether there is deferred adjudication for manslaughter and whether doorbell cameras record on sound. *See id.* Defendant's computer also contained a draft suicide note, wherein Defendant represented that he stole more than $100,000 from his mother-in-law. *See id.* After Agent Messer's testimony concluded, the prosecution informed the Court that the State of Texas indicted Defendant for J.S.'s murder. *See* Dkt. 34 at 63; *see also* Dkt. 34 at 64–65 (discussing status of state proceedings); *State of Texas v. Keith T. Ashley*, No. F2012321 (195th Dist. Ct. Dallas Cnty., Tex. filed Dec. 8, 2020).

Defendant did not present witnesses during the Detention Hearing. *See* Dkt. 28. The Court ordered Defendant to be detained pending trial, finding there was no condition or combination of conditions that would reasonably assure the safety of any other person and the community or reasonably assure Defendant's appearance as required, as well as a "serious risk" that Defendant would obstruct or attempt to obstruct justice (the "Detention Order"). *See* Dkt. 29.

On February 16, 2021, Defendant filed a Motion to Revoke or Amend the Detention Order. *See* Dkt. 33. On March 10, 2021, the United States filed the First Superseding Indictment, which included a charge of possessing or carrying a weapon in furtherance of a crime of violence. *See* Dkt. 37. In light of this additional charge, the District Judge found that a presumption in favor of

detention applied in this case and denied the Motion to Revoke or Amend. *See* Dkt. 37. The District

Judge found Defendant's release would: (a) endanger the victims of his financial crimes, his

family, and himself; (b) pose a risk of flight, considering the gravity of the charges pending against

him, the large amount of restitution sought, and the "significant lengths" Defendant had taken "to

cover up his crime"; (c) pose a risk of flight based on Defendant's potential lack of familial support,

given that he stole thousands of dollars from his mother-in-law; and (d) pose a risk of flight by

suicide. *See* Dkt. 43 at 6–8. As set forth by the District Judge:

> [T]here are no conditions that mitigate [Defendant's] danger to the community and
> flight risk. The nature and circumstances of the crime are serious, the weight of the
> evidence is significant, [Defendant's] criminal history is sophisticated, and his risk
> to the community is severe. Weighed together, these factors support detention.

*See id.* at 10. Defendant appealed the District Judge's decision, which the Fifth Circuit affirmed.

*See* Dkt. 48.

While the federal proceedings were pending, Defendant was again indicted in Dallas

County relating to J.S.'s death—this time for capital murder. *See State of Texas v. Keith T. Ashley*,

No. F2100109 (195th Dist. Ct., Dallas Cnty., Tex. Apr. 21, 2021). Thereafter, on June 23, 2021,

Defendant contends he was transferred from federal custody to state custody pursuant to a Writ of

Habeas Corpus Ad Prosequendum, which represented Defendant's capital murder trial would

begin on June 25, 2021. *See* Dkt. 60 at 2; Dkt. 60-1. Defendant contends he remained in state

custody until at least December 20, 2021, but did not stand trial. *See* Dkt. 60 at 2. On December

20, 2021, the state court released Defendant back to federal custody. *See id.*; Order -

Miscellaneous, *State of Texas v. Keith T. Ashley*, No. F2100109 (195th Dist. Ct., Dallas Cnty.,

Tex. Dec. 20, 2021).

Both the federal and state proceedings remain pending. Defendant's federal case was

initially set for trial on January 8, 2021. *See* Dkt. 8. It was continued, at Defendant's request, first

to May 7, 2021, because Defendant had not yet received discovery from the United States, and then to November 5, 2021, because Defendant requested additional time to conduct discovery and prepare for trial. *See* Dkts. 21, 23, 41, 44. Subsequently, the trial was continued at the United States' request and pursuant to an order designating this case to be complex; it is specially set for trial on July 5, 2022. *See* Dkts. 54, 55. Defendant represents the state case is set for trial on August 15, 2022. *See* Dkt. 60 at 3.

### B.  The Parties' Arguments

Defendant requests the Court reconsider his detention on two grounds. First, Defendant requests the Court reopen the issue of detention pursuant to 18 U.S.C. § 3142. Second, Defendant requests the Court reopen the issue of detention because, as he argues, his continued detention violates due process. Defendant advances four arguments in support. *See* Dkt. 60.

Defendant first argues he is not a risk of flight. According to Defendant, the United States may have argued that Defendant "was a risk of flight insofar as, if he were released from federal custody, the State of Texas would assert jurisdiction over him, and the federal government would thereby lose primary jurisdiction over the case." *See id.* at 3. However, Defendant argues his six-month release to state custody undermines any such argument, as "any argument that they fear losing jurisdiction to the State of Texas is contrary to actions they have already taken." *See id.* Defendant also argues there is no risk he would flee prosecution by suicide. *See id.* at 4. Defendant contends he "has been incarcerated for over a year now, and there have not been any suicide attempts or ideations." *See id.* According to Defendant, "There is absolutely no evidence that he has been a safety concern in the past year." *See id.*

Second, Defendant argues his pretrial detention has been unnecessarily lengthened due to actions taken by the United States. Defendant argues he missed his November 5, 2021 trial setting

because the United States released him to state custody and because Defendant remained in state custody through December 2021. *See id.* at 4. According to Defendant, "Had the government done what is normally done, and not surrendered [Defendant] to Dallas County custody, [Defendant] could have asserted his speedy trial rights and proceeded to trial in federal court by now." *See id.*

Third, Defendant argues there is no danger Defendant will obstruct justice if released. Defendant asserts, "In the past year, there has been no evidence of any kind that [Defendant] has attempted to obstruct justice in any way" either by reaching out to potential witnesses or codefendants or by instructing others to do so on his behalf. *See id.* at 5.

Finally, Defendant argues conditions could be imposed to assure the safety of others and Defendant's appearance as required.

In response, the United States argues Defendant's Motion "is based largely on recycled arguments and attempts to rebut information presented at the detention hearing." *See* Dkt. 61 at 3. The United States argues Defendant has not met his burden for the Court to reconsider his detention under Section 3142, and the length of Defendant's pretrial detention does not violate due process. *See* Dkt. 61.

The parties appeared for a hearing on the Motion on March 23, 2022. *See* Dkt. 64. During the hearing, Defendant conceded that if the issue of detention was reopened, the evidence presented would be identical to the evidence presented at the Detention Hearing.

## II.      ANALYSIS

The Court agrees with the United States that Defendant's Motion should be denied.

### A.  Section 3142

Defendant, in part, requests the Court reopen the issue of detention under 18 U.S.C. § 3142(f). Section 3142(f) states the issue of detention "may be reopened, before or after a

determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. 3142(f)(2); *see United States v. Stanford*, 367 F. App'x 507, 510 (5th Cir. 2010) (the standard asks "whether any 'new' information was presented").

Defendant presents the following "new" information, which Defendant argues is sufficient to reopen the issue of pretrial detention: the increased length of Defendant's pretrial detention, which was allegedly caused by transfers between state and federal custody. *See* Dkt. 60 at 1–3. However, as set forth by the Fifth Circuit, "the length of [a defendant's] current or potential future detention" may not be considered under Section 3142 "since it is not material to the issue of risk of flight or dangerousness." *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989).

Defendant further argues that, while detained, he has not attempted suicide, had suicidal ideations, or attempted to obstruct justice. *See* Dkt. 60 at 4–5. Defendant claims he is, therefore, "not a flight risk, not a danger to the community, and there does exist a combination of conditions that could be crafted to ensure his appearance at all future court dates." *See id.* at 2. These arguments do not materially affect the Court's prior evaluation of Defendant's dangerousness or risk of flight. The fact that Defendant, while incarcerated, has not attempted to obstruct justice or flee prosecution by suicide simply does not show that Defendant, if released, would not be a danger to others or himself, would not attempt to flee prosecution, and would not attempt to obstruct justice. Defendant has not identified any new information or evidence to rebut the substantial evidence that was presented during the Detention Hearing, which showed that Defendant's release would pose a risk of flight, obstruction, and danger to the community. Furthermore, the Motion

fails to address the Court's concern that Defendant's release would pose a risk of flight due to the gravity of the charges brought against him, Defendant's potential length of imprisonment, and the significant amount of restitution that looms. Nor does the Motion address the Court's concern that Defendant may lack familial support or the Court's concern that Defendant—who is accused of murdering his client and attempting to cover up the murder—if released, would endanger others. In the absence of new, material information, Defendant's Motion must be denied.

### B.  Due Process

Defendant argues the United States has unnecessarily prolonged his pretrial detention in violation of the Due Process Clause of the Fifth Amendment. *See* Dkt. 60 at 3–4. The Due Process Clause of the Fifth Amendment permits pretrial detention that is regulatory in nature but forbids pretrial detention that is punitive in nature. *United States v. Stanford*, 394 F. App'x 72, 74 (5th Cir. 2010) (citing *United States v. Salerno*, 481 U.S. 739, 747–48 (1987)). Pretrial detention is regulatory in nature if it is ordered to prevent danger to the community or the defendant's risk of flight. *See id.* But pretrial detention that is "excessively prolonged . . . in relation to Congress's regulatory goal" (to deter risk of flight and dangerousness to the community) is punitive in nature and violates due process. *Id.* (quoting *Salerno*, 481 U.S. at 747). Whether pretrial detention becomes "excessively prolonged" is determined "on a case-by-case basis" considering the following factors:

> factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that the defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits [the "Section 3142(g) Factors"], but also additional factors such as the length of the detention that has in fact occurred or may occur in the future, the non-speculative nature of future detention, the complexity of the case, and whether the strategy of one side or the other occasions the delay.

*Id.* at 74–75 (quoting *Hare*, 873 F.2d at 801).

1.  *Section 3142(g) Factors*

The Court previously evaluated the Section 3142(g) factors—including the seriousness of the charges, Defendant's danger to the community, Defendant's risk of flight, and the strength of the United States' evidence against Defendant—in light of evidence presented during the Detention Hearing. The Court found Defendant should be detained pending trial. *See* Dkt. 29. The District Judge agreed, *see* Dkt. 43, and the Fifth Circuit affirmed. *See* Dkt. 48.

Because Defendant does not offer new material information or evidence, the Court stands by its previous factual findings. *See United States v. Faulkner*, No. 3:18-cr-500, 2020 WL 374543, at *6 (N.D. Tex. Jan. 23, 2020) (citing *United States v. Simpson*, 3:09-cr-249, 2010 WL 3283053, at *2 (N.D. Tex. Aug. 19, 2010)) (absent new material information, a previous detention order supports the defendant's continued detention). There is sufficient evidence that Defendant's release would endanger the community and would present a risk that Defendant would obstruct justice or flee prosecution. The Section 3142(g) factors support Defendant's continued pretrial detention.

2.  *Length of Detention and its Non-speculative Nature*

The Court finds the length of Defendant's pretrial detention does not offend due process. In this case, Defendant's pretrial detention will likely not exceed twenty months: Defendant was arrested on November 13, 2020, and Defendant's federal trial is specially set for July 5, 2022. *See* Dkt. 54. Courts have "routinely upheld" lengthier periods of pretrial detention. *See Stanford*, 394 F. App'x at 75 (citing *United States v. El-Hage*, 213 F.3d 74, 77–79 (2d Cir. 2000) (thirty to thirty-three months) and *United States v. Millan*, 4 F.3d 1038, 1044 (2d Cir. 1993) (thirty months)); *accord United States v. Parrish*, No. 3:19-cr-160, 2021 WL 4046741, at *4 (N.D. Tex. Mar. 26, 2021), *R. & R. adopted*, 2021 WL 4034516 (N.D. Tex. Sept. 3, 2021) (finding 25–36 month pretrial

detention did not violate due process); *United States v. Stanford*, 722 F. Supp. 2d 803, 810 (S.D. Tex. 2010) ("Added to the time Stanford has been detained to this point, the total length of pretrial detention should be approximately nineteen months, which as the Court has explained, is *well less* than those periods of detention that other courts across the country have determined not to be violative of the Due Process Clause." (emphasis added)), *aff'd*, 394 F. App'x 72 (5th Cir. 2010). Hence, the length of Defendant's pretrial detention is constitutionally permissible.

3. *Complexity of the Case*

The District Judge declared this case to be complex and, therefore, found it requires extensive pretrial preparation. As noted by the District Judge, it would be "unreasonable" to expect the parties to adequately prepare for trial in the time limits set by the Speedy Trial Act considering the "voluminous documents relating to the sixteen counts of wire and mail fraud, the inextricably intertwined pending capital murder case in Dallas County, and the numerous expert witnesses and fraud victims . . . ." *See* Dkt. 54. Indeed, Defendant's filings acknowledge the complexity of this case. *See* Dkts. 41, 49, and 56. Based on the complexity of this case, the trial setting was continued from November 5, 2021, to July 5, 2022. *See id*. Where, as here, "the complexity of a case is a reason for the length of the detention, the detention continues to be regulatory in nature rather than penal" and, therefore, does not violate due process. *Stanford*, 722 F. Supp. at 810 (citing *Hare*, 873 F.2d at 801).

4. *Source of Delay*

The Court finds Defendant has contributed to any trial delays experienced in this case. While Defendant's initial trial continuance may be attributable to the United States, *see* Dkt. 21 (requesting continuance because discovery had not been served), the second trial continuance was not. *See* Dkt. 41 (requesting a continuance to have sufficient time to review discovery, anticipate

10

additional discovery, and prepare for trial). Likewise, on April 26, 2021, Defendant filed an interlocutory appeal of the Detention Order, which was resolved on July 7, 2021. *See* Dkts. 47, 48. It is well-settled that trial delays caused by the defendant do not implicate due process concerns. *See Hare*, 873 F.2d at 801 n.24 (citing *United States v. Theron*, 782 F.2d 1510, 1516 (10th Cir. 1986)); *Stanford*, 722 F. Supp. 2d at 810.

While delays caused by prosecutorial strategy may give rise to a due process violation, *see Stanford*, 722 F. Supp. 2d at 810, the Court finds no such delays are present here. Defendant argues his trial was delayed because the United States transferred Defendant to state custody. *See* Dkt. 60 at 4 ("Had the government . . . not surrendered Mr. Ashley to Dallas County Custody, Mr. Ashley could have asserted his speedy trial rights and proceeded to trial in federal court by now."). Defendant's argument is not supported by the record. On October 28, 2021, the District Judge continued the November 5, 2021 trial setting to July 5, 2022, based on a finding that this case is complex and requires additional trial preparation—not because Defendant was in state custody. *See* Dkt. 54.

On balance, the Court concludes the *Hare* Factors support Defendant's continued detention.

### III.     CONCLUSION

For the foregoing reasons, Defendant's Motion (Dkt. 60) is **DENIED.** Defendant shall remain detained pending trial.

So ORDERED and SIGNED this 7th day of April, 2022.

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE