```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF TEXAS
 2                         SHERMAN DIVISION

 3       UNITED STATES OF AMERICA      |  DOCKET 4:20-CR-318
                                       |
 4                                     |  OCTOBER 4, 2022
         VS.                           |
 5                                     |  9:02 A.M.
                                       |
 6       KEITH TODD ASHLEY            |  SHERMAN, TEXAS

 7       ----------------------------------------------------------

 8            VOLUME 7 OF 8, PAGES 1638 THROUGH 1703

 9            REPORTER'S TRANSCRIPT OF JURY TRIAL

10         BEFORE THE HONORABLE AMOS L. MAZZANT, III,
             UNITED STATES DISTRICT JUDGE, AND A JURY
11       ----------------------------------------------------------

12
         FOR THE GOVERNMENT:    HEATHER HARRIS RATTAN
13                              JAY COMBS
                                U.S. ATTORNEY'S OFFICE - PLANO
14                              101 E. PARK BOULEVARD, SUITE 500
                                PLANO, TX 75074
15
                                JASON FINE
16                              DALLAS COUNTY D.A.'S OFFICE
                                133 N. RIVERFRONT BOULEVARD
17                              DALLAS, TX 75207

18
         FOR THE DEFENDANT:     JAMES P. WHALEN
19                              RYNE THOMAS SANDEL
                                WHALEN LAW OFFICE
20                              9300 JOHN HICKMAN PKWY, SUITE 501
                                FRISCO, TX 75035
21

22       COURT REPORTER:        CHRISTINA L. BICKHAM, CRR, RDR
                                FEDERAL OFFICIAL REPORTER
23                              101 EAST PECAN
                                SHERMAN, TX 75090
24

25          PROCEEDINGS RECORDED USING MECHANICAL STENOGRAPHY;
          TRANSCRIPT PRODUCED VIA COMPUTER-AIDED TRANSCRIPTION.
```

1                              <u>INDEX</u>

2

3                                                          <u>PAGE</u>

4   Court's Instructions to the Jury              1648

5   Note Number 1                                 1689

6   Note Number 2                                 1689

7   Note Number 3                                 1693

8   Note Number 4                                 1694

9   Note Number 5                                 1698

10  Note Number 6                                 1702

11  COURT REPORTER'S CERTIFICATION                1703

12

13

14

15

16

17

18

19

20

21

22

23

24

25

 1          (Open court, defendant present, jury not present.)

 2          THE COURT:  It's my understanding there was an

 3  issue you wanted to raise before we begin?

 4          MR. WHALEN:  We did, your Honor.  You received the

 5  email.  We sent it to the Court, copied the government on

 6  it and --

 7          THE COURT:  I did see it, yes.

 8          MR. WHALEN:  Okay.  And so there was a

 9  representation made during the closing argument of the

10  government that showed a picture of Mr. Ashley's -- or was

11  his house that showed this pool, and there was comments

12  made that that's where everybody's money went.

13          Looking at the Collin County Appraisal District,

14  that pool was added after he sold the home; so it was

15  extremely misleading to the jury and should be corrected

16  that that is not an accurate representation of his home at

17  the time of the offense that they have alleged was

18  committed.

19          THE COURT:  Well, Mr. Whalen, if you had objected,

20  of course, the Court would have said it's up to the jury to

21  decide what the facts of the case are so -- and the Court

22  has instructions in there that indicates what the lawyers

23  say is not evidence.  I don't know that any kind of

24  instruction is necessary.

25          MR. WHALEN:  Well, I think there is an exhibit --

1    the Google Earth exhibit is in evidence and so -- based on

2    that animation that they did, that came off of that exhibit

3    that's in evidence; and so there is an exhibit in evidence

4    that misrepresents the status of his home at the time of

5    the offense.

6              THE COURT:  Okay.  So -- well, I thought it was

7    just argument.  I didn't realize -- so there is an exhibit

8    that, I guess, was not objected to?

9              MR. WHALEN:  I believe there is an exhibit -- I

10   believe it is based off the exhibit that he --

11             THE COURT:  I thought it was just a demonstrative.

12   I don't believe it was -- I don't believe it was something

13   that was admitted.  So I guess let me ask the government.

14             I thought it was just a demonstrative.

15             MS. RATTAN:  I think we offered it for all

16   purposes.  It's Government's Exhibit 97 and we offered it

17   yesterday morning or, rather -- anyway, it was offered in

18   Agent Rennie's testimony.  It's part of Government's -- or

19   was offered along with Government's Exhibit 134.  So it's

20   97.

21             Your Honor, may I be heard while the Court is

22   looking?

23             THE COURT:  Yes.

24             MS. RATTAN:  Of course, whether it's demonstrative

25   or whether it's actually offered for all purposes, the

1   time, as the Court was pointing out, to make the objection

2   was when it was offered or when it was reviewed with a

3   witness; and that, even then, would go to the weight and

4   not the admissibility.

5          And the cross-examination is, "This isn't

6   accurate" and point out the things that he's pointed out.

7          And certainly he could have objected, as the Court

8   points out, during closing argument as he did twice.  Those

9   would be the times to handle those issues.

10         But I do want the Court to know we were not

11  intentionally attempting to misrepresent anything and that

12  was taken from Google Earth and the argument was based on

13  something that was admitted, either for all purposes or

14  demonstrative purposes; and that's fair argument.

15         So he had the opportunity during objecting to the

16  exhibit, cross-examining on the exhibit, or even in his

17  argument.  Three separate opportunities to make these

18  points, and they weren't made.

19         THE COURT:  Well, if it was just argument and a

20  demonstrative in terms of -- the objection is not waived

21  by -- the objection just has to be made before the case

22  goes to the jury, which hasn't happened yet.  It's a

23  different situation if it's a fully admitted exhibit, which

24  is what I'm trying to figure out.

25         97 was, I think, fully admitted.  But I don't have

 1    it in my book, so I'm trying to --

 2            MS. RATTAN:  It's the animation, I'm sure the

 3    Court knows.

 4            THE COURT:  No, I understand; but I'm just trying

 5    to see the slide that shows the house.

 6            Mr. Whalen, what about that?  I mean, if it's a

 7    fully admitted exhibit --

 8            MR. WHALEN:  Well, we did lodge objections to the

 9    exhibit; so objections were made to the exhibit.

10            THE COURT:  But this objection wasn't made.

11            MR. WHALEN:  No -- well, here's the point.  And

12    maybe, you know, my view of the world is skewed.  But I

13    have to believe that when the government -- when they offer

14    exhibits, they review exhibits and in good faith offer them

15    knowing them to be accurate.

16            But we objected to it.  They pointed it out.  We

17    didn't -- based on what they showed, we didn't see that

18    there was -- going to zoom in on a Google Earth.  It showed

19    this animation of it going over, not that they were

20    introducing these Google Earth exhibits that now you can

21    blow up that the jury is just not going to -- whether

22    they're going to be able to do that or not.  That's not how

23    it was represented.  It's just animation that shows the

24    movement of this, simply that, not the ability to then zoom

25    in on everything based on what they represented the exhibit

1    was.

2          And so to then get up and then zoom in on it and

3    then have the jury have the ability to do that, they can

4    manipulate the exhibit and --

5          THE COURT:  Well, I don't think they have the

6    ability back in the jury room, actually.  They can play it,

7    but they won't have the ability to zoom in.

8          But, Ms. Rattan, can you show me the slide that is

9    at issue?

10          MS. RATTAN:  And what we're going to pull up, your

11    Honor, is the slide from closing?

12          THE COURT:  Yes.

13          MS. RATTAN:  Okay.

14          THE COURT:  Okay.  I see that so -- and is that

15    same picture in the admitted Exhibit 97?

16          MS. RATTAN:  It was taken off of Exhibit 97, yes,

17    your Honor.

18          THE COURT:  But in terms of 97, that's -- the

19    demonstrative you used for closing has been blown up,

20    correct?

21          MS. RATTAN:  Well, yes, but I would point out that

22    when we presented 97 with Special Agent Rennie, we

23    specifically paused on this depiction of the house.

24          THE COURT:  Okay.  So, Ms. Rattan, of course, I'm

25    not sure -- well, Mr. Whalen, I guess, I should address.

1           I'm not sure what you want the Court to do.  I

2    mean, this exhibit has been fully admitted.  The fact that

3    the pool wasn't -- I mean, the record is closed so it's

4    part of the record and it's been admitted.  The objection

5    you made had nothing to do regarding it was inaccurate

6    so -- in terms of the timing.  It is an accurate depiction

7    of the house, I guess, when it was taken.  The fact that

8    the pool wasn't done until after all this happened -- I

9    don't know what you want me to do about that.

10           MR. WHALEN:  Well, your Honor, I think what we

11   would like you to do is that the jury be instructed that

12   that was not a representation of his house at the time the

13   offense was alleged to have been committed.

14           THE COURT:  And my question is why should I do

15   that when you've never raised that in a timely manner?

16           MR. WHALEN:  Well, because --

17           THE COURT:  And this was admitted as an exhibit.

18           MR. WHALEN:  Well, it was -- one, it was not part

19   of the exhibit.  The exhibit was simply an overview of

20   showing his travel from -- the phone's travel from his

21   house to there.  It never zoomed in on any particular

22   objects or anything like that.

23           THE COURT:  So what you're saying is this picture

24   is not part of the -- so the jury --

25           MR. WHALEN:  Not the way they presented it to the

1    jury.  And so they would have presented it to the jury on

2    the animation, it didn't zoom in and say, okay, this was

3    the start part and let's go from --

4            THE COURT:  Okay.  I guess let me clear it up with

5    the government.  Is this slide part of 97?

6            MS. RATTAN:  Yes, your Honor, it is.

7            THE COURT:  Okay.

8            MS. RATTAN:  And I would also say that when we

9    played 97 with Agent Rennie, we specifically paused on the

10   scene that depicts the defendant's house.

11           THE COURT:  Okay.  Well -- and so what does the

12   government want?  This is your record to protect on appeal,

13   so you tell me.

14           MS. RATTAN:  We think the record is fine, your

15   Honor.  The defendant had ample, multiple opportunities to

16   make these objections when it was offered.  No

17   cross-examination and then nothing in closing argument

18   after Mr. Combs made the argument.

19           The other thing is the estate is accurate.  The

20   fact that there is a pool there that the defendant is

21   saying Collin County records show was placed there after he

22   moved out is really *de minimis* because, as we can all see,

23   it's a large estate and a large house.

24           THE COURT:  Okay.  Well, I'm going to overrule the

25   objection so --

1           MR. WHALEN:  All right.  And, your Honor, just so

2      the record is clear, we're objecting to that and we are

3      objecting because it does deny him a right to a fair trial

4      under the Sixth Amendment and we would object on those --

5           THE COURT:  There is no basis for that in any way,

6      but I understand you want to make your objection.

7           Again, you had the ability to object to this both

8      when the exhibit was offered as -- and you didn't as to

9      this basis and -- plus, in my view, it is an accurate

10      depiction of the house.  So the fact that the pool wasn't

11      put in until 2021, in my view, is -- was that the correct

12      date, 2021?

13           MR. WHALEN:  Yes.

14           THE COURT:  Okay.  But I just don't see an issue

15      here so -- it's really a minor issue in the scheme of

16      things of the case, so I'm going to overrule your

17      objection.

18           Anything else?

19           MR. WHALEN:  Yes, your Honor.  Could we make the

20      attachment to the email I sent to the Court a part of the

21      record as well as the government's slide as part of the

22      record, please.  And I can print it out if I need to but --

23           THE COURT:  Well, print the email out; and we can

24      certainly make that part of the record, if you so desire.

25           I don't know if they can print the page from the

 1    slides.  And actually probably you're going to provide us a

 2    copy of all of the slides anyway, aren't you, as part of

 3    the record since it's part --

 4              MS. RATTAN:  Yes.

 5              THE COURT:  It's not part of the evidence record,

 6    but it's part of what the jury got to see as a

 7    demonstrative so they'll have -- that will be part of the

 8    record --

 9              MR. WHALEN:  All right.  Thank you, your Honor.

10              THE COURT:  -- for appeal purposes.

11              Okay.  Anything from the government?

12              MS. RATTAN:  No, your Honor.

13              THE COURT:  Okay.  Let's bring the jury in.

14              (The jury enters the courtroom, 9:13 a.m.)

15              THE COURT:  Okay.  Please be seated.

16              Welcome back, ladies and gentlemen.  I'm going to

17    have my lawyer give you each a copy of the

18    Court's instructions.  The law requires me to read these in

19    open court, but you will have a copy to follow along and

20    take back with you when you begin deliberations.

21              Members of the jury, now that you have heard all

22    the evidence in this case, it becomes my duty to give you

23    the instructions of the Court as to the law applicable to

24    this case.

25              In any jury trial there are, in effect, two

1    judges.  I am one of the judges; the other is you, the

2    jury.  It is my duty to preside over the trial and to

3    determine what testimony and evidence is proper for your

4    consideration.  It is also my duty at the end of the trial

5    to explain to you the rules of law that you must follow and

6    apply in arriving at your verdict.

7         First, I will give you some general instructions

8    which apply in every case, for example, instructions about

9    the burden of proof and how to judge the believability of

10   the witnesses.  Then I will give you some specific rules of

11   law about this particular case, and finally I will explain

12   to you the procedures you should follow in your

13   deliberations.

14        You, as jurors, are the judges of the facts.  But

15   in determining what actually happened -- that is, in

16   reaching your decision as to the facts -- it is your sworn

17   duty to follow all the rules of law as I explain them to

18   you.

19        You have no right to disregard or give special

20   attention to any one instruction or to question the wisdom

21   or correctness of any rule that I may state to you.  You

22   must not substitute or follow your own notion or opinion as

23   to what the law is or ought to be.  It is your duty to

24   apply the law as I explain it to you, regardless of the

25   consequences.

1          It is also your duty to base your verdict solely

2     upon the evidence, without prejudice or sympathy.  That was

3     the promise you made and the oath you took before being

4     accepted by the parties as jurors, and they have the right

5     to expect nothing less.

6          The Indictment or formal charge against a

7     defendant is not evidence of guilt.  Indeed, the defendant

8     is presumed by the law to be innocent.  The defendant

9     begins with a clean slate.  The law does not require a

10    defendant to prove his innocence or to produce any evidence

11    at all, and no inference whatever may be drawn from the

12    election of the defendant not to testify.

13         The government has the burden of proving the

14    defendant guilty beyond a reasonable doubt; and if it fails

15    to do so, you must acquit the defendant.  While the

16    government's burden of proof is a strict or heavy burden,

17    it is not necessary that the defendant's guilt be proved

18    beyond all possible doubt.  It is only required that the

19    government's proof exclude any reasonable doubt concerning

20    the defendant's guilt.

21         A reasonable doubt is a doubt based upon reason

22    and common sense after careful and impartial consideration

23    of all the evidence in the case.  Proof beyond a reasonable

24    doubt, therefore, is proof of such a convincing character

25    that you would be willing to rely and act upon it without

1   hesitation in making the most important decisions of your

2   own affairs.

3           Now, as I told you earlier, it is your duty to

4   determine the facts.  To do so, you must consider only the

5   evidence presented during the trial.  Evidence is the sworn

6   testimony of the witnesses, including stipulations, and the

7   exhibits.  The questions, statements, objections, and

8   arguments made by the lawyers are not evidence.

9           The function of the lawyers is to point out those

10  things that are most significant or most helpful to their

11  side of the case and, in doing so, to call your attention

12  to certain facts or inferences that might otherwise escape

13  your notice.  In the final analysis, however, it is your

14  own recollection and interpretation of the evidence that

15  controls in the case.  What the lawyers say is not binding

16  upon you.

17          Now, during the trial I sustained objections to

18  certain questions or exhibits.  You must disregard those

19  questions and exhibits entirely.  Do not speculate as to

20  what the witness would have said if permitted to answer the

21  question or as to the contents of an exhibit.  Your verdict

22  must be based solely on the legally admissible evidence and

23  testimony.

24          Also, do not assume from anything that I have done

25  or said during the trial that I have an opinion concerning

1  any of the issues in this case.  Except for the

2  instructions to you on the law, you should disregard

3  anything that I have said during the trial in arriving at

4  your verdict.

5          Now, in considering the evidence, you are

6  permitted to draw such reasonable inferences from the

7  testimony and exhibits as you feel are justified in the

8  light of common experience.  In other words, you may make

9  deductions and reach conclusions that reason and common

10  sense lead you to draw from the facts which have been

11  established by the evidence.

12          Do not be concerned about whether evidence is

13  direct evidence or circumstantial evidence.  You should

14  consider and weigh all of the evidence that was presented

15  to you.

16          Direct evidence is the testimony of one who

17  asserts actual knowledge of a fact, such as an eyewitness.

18  Circumstantial evidence is proof of a chain of events and

19  circumstances indicating that something is, or is not, a

20  fact.

21          The law makes no distinction between the weight

22  you may give to either direct or circumstantial evidence;

23  but the law requires that you, after weighing all of the

24  evidence, whether direct or circumstantial, be convinced of

25  the guilt of the defendant beyond a reasonable doubt before

 1   you can find him guilty.

 2          I remind you that it is your job to decide whether

 3   the government has proved the guilt of the defendant beyond

 4   a reasonable doubt.  In doing so, you must consider all of

 5   the evidence.  This does not mean, however, that you must

 6   accept all of the evidence as true or accurate.

 7          You are the sole judges of the credibility or

 8   believability of each witness and the weight to be given to

 9   the witness' testimony.  An important part of your job will

10   be making judgments about the testimony of the witnesses

11   who testified in this case.  You should decide whether you

12   believe all, some part, or none of what each person had to

13   say and how important that testimony was.  In making that

14   decision, I suggest you ask yourself a few questions:

15          Did the witness impress you as honest?

16          Did the witness have any particular reason not to

17   tell the truth?

18          Did the witness have a personal interest in the

19   outcome of the case?

20          Did the witness have any relationship with either

21   the government or the defense?

22          Did the witness seem to have a good memory?

23          Did the witness clearly see or hear the things

24   about which he or she testified?

25          Did the witness have the opportunity and ability

1    to understand the questions clearly and answer them

2    directly?

3           Did the witness' testimony differ from the

4    testimony of other witnesses?

5           These are a few of the considerations that will

6    help you determine the accuracy of what each witness said.

7           Your job is to think about the testimony of each

8    witness you have heard and decide how much you believe of

9    what each witness had to say.  In making up your mind and

10   reaching a verdict, do not make any decisions simply

11   because there were more witnesses on one side than on the

12   other.  Do not reach a conclusion on a particular point

13   just because there were more witnesses testifying for one

14   side on that point.  You will always bear in mind that the

15   law never imposes upon a defendant in a criminal case the

16   burden or duty of calling any witnesses or producing any

17   evidence.

18          The defendant has an absolute right not to

19   testify.  The fact that a defendant does not testify should

20   not be considered by you in any way or even discussed in

21   your deliberations.  I remind you that it is up to the

22   government to prove the defendant's guilt beyond a

23   reasonable doubt.  It is not up to the defendant to prove

24   that he is not guilty.

25          Now, the testimony of a witness may be discredited

 1   by showing that the witness testified falsely or by

 2   evidence that at some other time the witness said or did

 3   something, or failed to say or do something, which was

 4   inconsistent with the testimony the witness gave at trial.

 5         Earlier statements of a witness were not admitted

 6   in evidence to prove that the contents of those statements

 7   are true.  You may not consider the earlier statements to

 8   prove that the content of an earlier statement is true; you

 9   may only use earlier statements to determine whether you

10   think the earlier statements are consistent or inconsistent

11   with the trial testimony of the witness and, therefore,

12   whether they affect the credibility of that witness.

13         If you believe that a witness has been discredited

14   in this manner, it is your exclusive right to give the

15   testimony of that witness whatever weight you think it

16   deserves.

17         Now, during the trial you heard the testimony of

18   witnesses who were presented to you as an expert in a

19   certain field.  If scientific, technical, or other

20   specialized knowledge might assist the jury in

21   understanding the evidence or in determining a fact in

22   issue, a witness qualified by knowledge, skill, experience,

23   training, or education may testify and state an opinion

24   concerning such matters.

25         Merely because such a witness has expressed an

1    opinion does not mean, however, that you must accept this

2    opinion.  You should judge such testimony like any other

3    testimony.  You may accept it or reject it and give it as

4    much weight as you think it deserves, considering the

5    witness' education and experience, the soundness of the

6    reasons given for the opinion, and all other evidence in

7    the case.

8         You will note that the Fourth Superseding

9    Indictment charges that the offense was committed on or

10   about a specified date or during a specific period of time.

11   The government does not have to prove that the crime was

12   committed on those exact dates so long as the government

13   proves beyond a reasonable doubt that the defendant

14   committed the crime on a date reasonably near the dates

15   stated in the Fourth Superseding Indictment for each count.

16        You are here to decide whether the government has

17   proved beyond a reasonable doubt that the defendant is

18   guilty of the crime charged.  The defendant is not on trial

19   for any act, conduct, or offense not alleged in the Fourth

20   Superseding Indictment.  Neither are you called upon to

21   return a verdict as to the guilt of any other person or

22   persons not on trial as a defendant in this case except as

23   you are otherwise instructed.

24        Now, if the defendant is found guilty, it will be

25   my duty to decide what the punishment will be.  You should

1    not be concerned with punishment in any way.  It should not

2    enter your consideration or discussion.

3          A separate crime is charged in each count of the

4    Fourth Superseding Indictment.  Each count, and the

5    evidence pertaining to it, should be considered separately.

6    The fact that you might find the defendant guilty or not

7    guilty as to one of the crimes charged should not control

8    your verdict as to any other count.

9          You have heard evidence of acts of the defendant

10   which may be similar to those charged in the Indictment but

11   which were committed on other occasions.  You must not

12   consider any of this evidence in deciding if the defendant

13   committed the acts charged in the Indictment.  However, you

14   may consider the evidence for other, very limited purposes.

15         If you find beyond a reasonable doubt from other

16   evidence in this case that the defendant did commit the

17   acts charged in the Indictment, then you may consider

18   evidence of similar acts allegedly committed on other

19   occasions to determine:

20         One, whether the defendant had the state of mind

21   or intent necessary to commit the crime charged in the

22   Fourth Superseding Indictment; or,

23         Two, whether the defendant had the motive or the

24   opportunity to commit the acts charged in the Indictment;

25   or,

1          Three, whether the defendant acted according to a

2   plan or in preparation for commission of a crime; or,

3          Four, whether the defendant committed the acts for

4   which he is on trial by accident or mistake.

5          These are the limited purposes for which any

6   evidence of other similar acts may be considered.

7          Now, some exhibits have been identified as

8   typewritten transcripts of oral conversations which can be

9   heard on tape recordings received in evidence.  The

10  transcripts also purport to identify the speakers engaged

11  in such conversations.

12         I have admitted the transcript for the limited and

13  secondary purpose of aiding you in following the content of

14  the conversation as you listen to the tape recording and to

15  also aid you in identifying the speakers.

16         You are specifically instructed that whether the

17  transcript correctly, or incorrectly, reflects the content

18  of the conversation or the identity of the speakers is

19  entirely for you to determine based upon your own

20  evaluation of the testimony you have heard concerning the

21  preparation of the transcript and from your own examination

22  of the transcript in relation to your hearing of the tape

23  recording itself as the primary evidence of its own

24  contents; and if you should determine that the transcript

25  in any respect is incorrect or unreliable, you should

1    disregard it to that extent.  It is what you hear on the

2    tape that is evidence, not the transcripts.

3          Now, certain charts and summaries have been shown

4    to you solely as an aid to help you explain the facts

5    disclosed by the evidence, which is the testimony, books,

6    records, and other documents in the case.  These charts and

7    summaries are not admitted evidence or proof of any facts.

8    You should determine the facts from the evidence that has

9    been admitted.

10         Now, certain charts and summaries of other records

11   have been received into evidence.  They should be

12   considered like any other evidence in the case.  You should

13   give them only such weight as you think they deserve.

14         The charts and summaries include inferences or

15   conclusions drawn from the records underlying them.  It is

16   up to you to determine if these inferences or conclusions

17   are accurate.

18         Summary testimony by a witness and charts or

19   summaries prepared or relied upon by the witness have been

20   received into evidence for the purpose of explaining facts

21   disclosed by testimony and exhibits which are also in

22   evidence in this case.

23         If you find that such summary testimony and charts

24   correctly reflect the other evidence the case, you may rely

25   upon them.  But if and to the extent that you find they are

1   not in truth summaries of the evidence in the case, you are

2   to disregard them.  The best evidence of what occurred are

3   the underlying records themselves.

4         As used in these instructions, a representation,

5   statement, or pretense is "material" if it has a natural

6   tendency to influence, or is capable of influencing, the

7   decision of the person to which it is addressed.  The

8   government may prove materiality in either of two ways.

9         First, a representation, statement, or pretense is

10  "material" if a reasonable person would attach importance

11  to its existence or nonexistence in determining his or her

12  choice of action in the transaction in question.

13        Second, a statement could be material, even though

14  only an unreasonable person would rely upon it, if the

15  person who made the statement knew or had reason to know

16  his victim was likely to rely upon it.

17        In determining materiality, you should consider

18  that naivety, carelessness, negligence, or stupidity of the

19  victim does not excuse criminal conduct, if any, on the

20  part of the defendant.

21        The word "knowingly," as that term has been used

22  from time to time in these instructions, means that the act

23  was done voluntarily and intentionally, not because of

24  mistake or accident.

25        In this case the defendant is charged with

Jury Trial, Volume 7                              1661

1   multiple offenses called "counts," for wire fraud, mail

2   fraud, possessing or carrying a firearm during commission

3   of a crime of violence, and bank theft.  A current copy of

4   the Fourth Superseding Indictment will be provided to you

5   for deliberations.

6           So Counts 1 through 6, 9 through 14, and 20, wire

7   fraud, 18 USC, Section 1343.

8           The defendant is charged in Counts 1 through 6, 9

9   through 14, and 20 of the Fourth Superseding Indictment

10  with the offense of wire fraud under Title 18 United States

11  Code, Section 1343, which makes it a crime for anyone to

12  use interstate wire communications in carrying out a scheme

13  to defraud.

14          For you to find the defendant guilty of this

15  crime -- of these crimes for these various counts, you must

16  be convinced that the government proved each of the

17  following beyond a reasonable doubt:

18          First, that the defendant knowingly devised or

19  intended to devise any scheme to defraud.  The scheme

20  charged in this case is a scheme in which the defendant

21  solicited money from victim investors for the purported

22  investments, when in reality the funds were used for

23  personal enrichment;

24          Second, that the scheme to defraud employed false

25  material representations or false material pretenses;

Christina L. Bickham, CRR, RDR
(903) 209-4013

1          Third, that the defendant transmitted or caused to

2   be transmitted by way of wire communications, in interstate

3   commerce, any writing, sign, signal, picture, or sound for

4   the purpose of executing such scheme; and,

5          Fourth, that the defendant acted with a specific

6   intent to defraud.

7          Attempted wire fraud under 18 USC, Section 1349.

8          The government can prove Counts 1 through 6, 9

9   through 14, and 20 by showing beyond a reasonable doubt

10  that the defendant did or did "attempt" to commit the

11  offense.  It is a crime for anyone to attempt to commit a

12  violation of certain specified laws of the United States.

13  In this case defendant is charged in Counts 1 through 6, 9

14  through 14, and 20 of the Fourth Superseding Indictment

15  with attempting to commit wire fraud under Title 18 United

16  States Code, Section 1349.

17         For you to find the defendant guilty of attempting

18  to commit wire fraud, you must be convinced that the

19  government has proved each of the following beyond a

20  reasonable doubt:

21         First, that the defendant intended to commit wire

22  fraud; and,

23         Second, that the defendant did an act that

24  constitutes a substantial step towards the commission of

25  that crime and that strongly corroborates the defendant's

1   criminal intent and amounts to more than mere preparation.

2          Now, your verdict, whether it is guilty or not

3   guilty, must be unanimous.  The following instruction

4   applies to the unanimity requirement as to Counts 1 through

5   6, 9 through 14, and 20.

6          Counts 1 through 6, 9 through 14, and 20 of the

7   Fourth Superseding Indictment charge the defendant with

8   committing the crime of wire fraud in two ways.

9          The first is the defendant committed wire fraud.

10          The second is the defendant attempted to commit

11   wire fraud.

12          The government does not have to prove both of

13   these for you to return a guilty verdict on Counts 1

14   through 6, 9 through 14, and Count 20.  But in order to

15   return a guilty verdict, all of you must agree that the

16   same one has been proved.  All of you must agree that the

17   government proved beyond a reasonable doubt that the

18   defendant committed wire fraud, or all of you must agree

19   that the government proved beyond a reasonable doubt that

20   the defendant attempted to commit wire fraud.

21          Now, you should use the following instructions and

22   definitions in your deliberations on Counts 1 through 6, 9

23   through 14, and 20.

24          A "scheme to defraud" means any plan, pattern, or

25   course of action intended to deprive another of money or

 1   property or bring about some financial gain to the person

 2   engaged in the scheme.

 3          A "specific intent to defraud" means a conscious,

 4   knowing intent to deceive or cheat someone.

 5          A representation or pretense is "false" if it is

 6   known to be untrue or is made with reckless indifference to

 7   its truth or falsity.  A representation or pretense would

 8   also be "false" if it constitutes a half-truth or

 9   effectively omits or conceals a material fact, provided it

10   is made with the intent to defraud.

11          A representation or pretense is "material" if it

12   has a natural tendency to influence or is capable of

13   influencing the decision of the person or entity to which

14   it is addressed.

15          "Interstate commerce" means commerce or travel

16   between one state, territory, or possession of the United

17   States and another state, territory, or possession of the

18   United States, including the District of Columbia.

19          It is not necessary that the government prove all

20   of the details alleged in the Indictment concerning the

21   precise nature and purpose of the scheme.  What must be

22   proved beyond a reasonable doubt is that the defendant

23   knowingly devised or intended to devise a scheme to defraud

24   by means of false or fraudulent pretenses or

25   representations that were substantially the same as the one

1    alleged in the Indictment.

2           It is also not necessary that the government prove

3    that the material transmitted by wire communications was

4    itself false or fraudulent or that the use of the

5    interstate wire communications facilities was intended as

6    the specific or exclusive means of accomplishing the

7    alleged fraud.  What must be proved beyond a reasonable

8    doubt is that the use of the interstate wire communications

9    facilities was closely related to the scheme between the

10   defendant -- scheme because the defendant either wired

11   something or caused it to be wired in interstate commerce

12   in an attempt to execute or carry out the scheme.

13          The alleged scheme need not actually succeed in

14   defrauding anyone.

15          To "cause" interstate wire communications

16   facilities to be used is to do an act with knowledge that

17   the use of the wire communications facilities will follow

18   in the ordinary course of business or where such use can

19   reasonably be foreseen.

20          Each separate use of interstate wire

21   communications facilities in furtherance of a scheme to

22   defraud by means of false or fraudulent pretenses or false

23   or fraudulent representations constitutes a separate

24   offense.

25          Should you find the defendant guilty to any of

 1    Counts 1 through 6 in Fourth Superseding Indictment, you

 2    will then need to determine if the wire fraud affected a

 3    financial institution.

 4          The term "financial institution" means federally

 5    insured depository institutions.

 6          A "financial institution" is affected when there

 7    is an increased risk of laws lot caused by the fraudulent

 8    scheme.  This remains true even if the "financial

 9    institution" suffered no loss -- the increased risk of loss

10    is sufficient.

11          Counts 15 through 16, mail fraud, 18 United States

12    Code, Section 1341.

13          The defendant is charged in Counts 15 and 16 of

14    the Fourth Superseding Indictment with the offense of mail

15    fraud under Title 18 United States Code, Section 1341,

16    which makes it a crime for anyone to use the mails,

17    including any private or commercial interstate carrier, in

18    carrying out a scheme to defraud.

19          For you to find the defendant guilty of these

20    crimes, you must be convinced that the government proved

21    each of the following beyond a reasonable doubt for each

22    count:

23          First, that the defendant knowingly devised or

24    intended to devise a scheme to defraud.  Here, the

25    defendant is charged with a scheme to obtain money by means

1   of false and fraudulent pretenses and representations;

2          Second, that the scheme to defraud employed false

3   material representations or false material pretenses;

4          Third, that the defendant mailed something or

5   caused something to be sent and/or delivered through the

6   U.S. Postal Service or a private or commercial interstate

7   carrier for the purpose of executing such scheme or

8   attempting to do so; and,

9          Fourth, that the defendant acted with a specific

10  intent to defraud.

11         The government can prove Counts 15 and 16 by

12  showing beyond a reasonable doubt that the defendant did or

13  did "attempt" to commit the offense.  It is a crime for

14  anyone to attempt to commit a violation of certain

15  specified laws of the United States.  In this case the

16  defendant is charged in Counts 15 and 16 of the Fourth

17  Superseding Indictment with attempting to commit mail fraud

18  under Title 18 United States Code, Section 1349.  For you

19  to find the defendant guilty of attempting to commit wire

20  fraud -- mail fraud, excuse me -- you must be convinced

21  that the government has proved each of the following beyond

22  a reasonable doubt:

23         First, that the defendant intended to commit mail

24  fraud; and,

25         Second, that the defendant did an act that

1   constitutes a substantial step towards the commission of

2   that crime and that strongly corroborates the defendant's

3   criminal intent and amounts to more than mere preparation.

4           Your verdict, whether it is guilty or not guilty,

5   must be unanimous.  The following instruction applies to

6   the unanimity requirement as to Counts 15 and 16.

7           Counts 15 and 16 of the Fourth Superseding

8   Indictment charge the defendant with committing the crime

9   of mail fraud in two ways.

10          The first is that the defendant committed mail

11  fraud.

12          The second is that the defendant attempted to

13  commit mail fraud.

14          The government does not have to prove both of

15  these for you to return a guilty verdict on Counts 15 and

16  16; but in order to return a guilty verdict, all of you

17  must agree that the same one has been proved.

18          All of you must agree that the government proved

19  beyond a reasonable doubt that the defendant committed mail

20  fraud, or all of you must agree that the government proved

21  beyond a reasonable doubt that the defendant attempted to

22  commit mail fraud.

23          You should use the following instructions and

24  definitions in your deliberations on Counts 15 and 16.

25          A "scheme to defraud" means any plan, pattern, or

1    course of action intended to deprive another of property or

2    money or bring about some financial gain to the person

3    engaged in the scheme.

4         A "specific intent to defraud" means a conscious,

5    knowing intent to deceive or cheat someone.

6         A representation or pretense is "false" if it is

7    known to be untrue or is made with reckless indifference as

8    to the truth or falsity.  A representation or pretense

9    would also be "false" if it constitutes a half-truth or

10   effectively omits or conceals a material fact provided it

11   is made with the intended to defraud.

12        A representation or pretense is "material" if it

13   has a natural tendency to influence or is capable of

14   influencing the decision of the person or entity to which

15   it is addressed.

16        "Interstate commerce" means commerce or travel

17   between one state, territory, or possession of the United

18   States and another state, territory, or possession of the

19   United States, including the District of Columbia.

20        It is not necessary that the government prove all

21   of the details alleged in the Indictment concerning the

22   precise nature and purpose of the scheme.  What must be

23   proved beyond a reasonable doubt is that the defendant

24   knowingly devised or intended to devise a scheme to defraud

25   by means of false or fraudulent pretenses or

1    representations that was substantially the same as the one

2    alleged in the Indictment.

3           It is also not necessary that the government prove

4    that the mailed material or material sent by private or

5    commercial interstate carrier was itself false or

6    fraudulent or that the use of the mail or a private or

7    commercial interstate carrier was intended as the specific

8    or exclusive means of accomplishing the alleged fraud.

9           What must be proved beyond a reasonable doubt is

10   that the use of the mails, including the use of private or

11   commercial interstate carriers, was closely related to the

12   scheme because the defendant either mailed something or

13   caused it to be mailed or the defendant either sent or

14   delivered something or caused it to be sent or delivered by

15   a private or commercial interstate carrier in an attempt to

16   execute or carry out the scheme.

17          The alleged scheme need not actually have

18   succeeded in defrauding anyone.

19          To "cause" the mails or private or commercial

20   interstate carrier to be used is to do an act with

21   knowledge that the use of the mails, including the use of a

22   private or commercial interstate carrier, will follow in

23   the ordinary course of business or where such use can

24   reasonably be foreseen even though the defendant did not

25   intend or request the mails, including a private or

1    commercial interstate carrier, to be used.

2          Each separate use of the mails, including the use

3    of a private or commercial interstate carrier, in

4    furtherance of a scheme to defraud by means of false or

5    fraudulent pretenses or false or fraudulent representations

6    constitutes a separate offense.

7          Count 18, possessing or carrying a firearm during

8    the commission of a crime of violence, 18 United States

9    Code, Section 924(c)(1) and (j).

10          The defendant is charged in Count 18 of the Fourth

11    Superseding Indictment with the offense of carrying or

12    discharging a firearm during a crime of violence or

13    possession of a firearm in furtherance of a crime of

14    violence causing death or murder by robbery under Title 18

15    United States Code, Sections 924(c)(1) and (j).

16          Title 18 United States Code, Section 924(c)(1)

17    makes it a crime for anyone to knowingly carry a firearm

18    during and in relation to a crime of violence or to

19    knowingly possess a firearm in furtherance of a crime of

20    violence.

21          For you to find the defendant guilty of this crime

22    under Section 924(c)(1), you must be convinced that the

23    government proved each of the following beyond a reasonable

24    doubt:

25          First, that the defendant committed the crime of

1   affecting commerce by robbery, in violation of 18 United

2   States Code, Section 1951(a), as set forth in the

3   subsection titled "D, Affecting Commerce by Robbery,

4   18 USC, Section 1951, Hobbs Act," on pages 26 through 29 of

5   these instructions.  I instruct you that affecting commerce

6   by robbery is a crime of violence; and,

7          Second, that the defendant knowingly carried a

8   firearm during and in relation to the defendant's

9   commission of the crime of affecting commerce by robbery,

10  or that the defendant knowingly possessed a firearm and

11  that possession was in furtherance of the defendant's

12  commission of the crime of affecting commerce by robbery.

13         The events presented at trial happened in various

14  places.  You are hereby instructed that when an offense is

15  begun in one district and completed in another, venue is

16  proper in any district in which the offense was begun,

17  continued, or completed.

18         In order for you to return a guilty verdict, the

19  government must prove by a preponderance of the evidence

20  that the offense began, continued, or was completed in the

21  Eastern District of Texas.  This is a fact that the

22  government has to prove only by a preponderance of the

23  evidence, which means that it is more likely than not so.

24  All of the other elements of the offense must be proved

25  beyond a reasonable doubt.

1           You should use the following instructions and

2    definitions in your deliberations regarding carrying or

3    discharging a firearm during a crime of violence or

4    possession of a firearm in furtherance of a crime of

5    violence under Title 18 United States Code,

6    Section 924(c)(1):

7           To prove the defendant "carried" a firearm during

8    and in relation to a crime of violence, the government must

9    prove that the defendant carried the firearm in the

10   ordinary meaning of the word "carry," such as transporting

11   a firearm on the person or in a vehicle.  The defendant's

12   carrying of the firearm cannot be merely coincidental or

13   unrelated to the crime of violence.

14           "In relation to" means that the firearm must have

15   some purpose, role, or effect with respect to the crime of

16   violence.

17           To prove that the defendant possessed a firearm

18   "in furtherance" of the crime of violence, the government

19   must prove that the defendant possessed a firearm that

20   furthered, advanced, or helped forward that crime.

21           Affecting commerce by robbery, 18 USC,

22   Section 1951, Hobbs Act.

23           Title 18 United States Code, Section 1951(a) makes

24   it a crime for anyone to obstruct, delay, or affect

25   commerce by robbery.

1           "Robbery" means the unlawful taking or obtaining

2    of personal property from the person or in the presence of

3    another, against his will, by means of actual or threatened

4    force or violence or fear of injury, immediate or future,

5    to his person or property or anyone in his company at the

6    time of the taking or obtaining.

7           For you to find that the defendant committed this

8    crime, you must be convinced that the government has proved

9    each of the following beyond a reasonable doubt:

10          First, that the defendant unlawfully obtained

11   personal property from a person or in his presence, against

12   his will;

13          Second, that the defendant did so by means of

14   actual or threatened force or violence or fear of injury,

15   immediate or future, to his person or property, property in

16   his custody or possession, or anyone in his company at the

17   time of the taking or obtaining; and,

18          Third, that the defendant's conduct in any way or

19   degree obstructed, delayed, or affected commerce or the

20   movement of any article or commodity in commerce.

21          You should use the following instructions and

22   definitions in your deliberations regarding affecting

23   commerce by robbery under Title 18 United States Code,

24   Section 1951(a):

25          The government is not required to prove that the

1  defendant knew that his conduct would obstruct, delay, or

2  affect commerce or the movement of any article or commodity

3  in commerce.

4          It is not necessary for the government to show

5  that the defendant actually intended or anticipated an

6  effect on commerce by his actions.

7          All that is necessary is that the natural and

8  probable consequence of the acts the defendant took would

9  be to affect commerce.  If you decide that there would be

10  any effect at all on commerce, that is enough to satisfy

11  this element.

12          A robbery of an individual affects interstate

13  commerce if the robbery depletes the assets of an

14  individual who is directly and customarily engaged in

15  interstate commerce, or the robbery causes or creates the

16  likelihood that the individual will deplete the assets of

17  an entity engaged in interstate commerce, or the number of

18  individuals victimized or the sum at stake is so large that

19  there will be some cumulative effect on interstate

20  commerce.

21          "Interstate commerce" means commerce or travel

22  between one state, territory, or possession of the United

23  States and another state, territory, or possession of the

24  United States, including the District of Columbia.

25          The term "personal property" includes money and

1   other tangible things of value.

2          The term "commerce" means commerce within the

3   District of Columbia; commerce within the territory or

4   possession of the United States; all commerce between any

5   point in a state, territory, or possession or the District

6   of Columbia and any point outside thereof; all commerce

7   between points within the same state through anyplace

8   outside such state; or all other commerce over which the

9   United States has jurisdiction.

10         "Affecting commerce" means that there is any

11  effect at all on interstate or foreign commerce, however

12  minimal.

13         Should you find the defendant guilty of 18 United

14  States Code, Section 924(c)(1), you will then need to

15  determine whether, in the course of so doing, the defendant

16  caused the death of a person through the use of a firearm.

17  If you so find, you must next find whether the killing is a

18  murder within the meaning of 18 USC, Section 1111.  The

19  elements of murder are set forth in the subsection below.

20         Murder (first degree) 18 USC, Section 1111.

21         Title 18 United States Code, Section 1111(a),

22  makes it a crime for anyone to murder another human being

23  with premeditation in the commission, or attempted

24  commission, of certain felonies.

25         For you to find the defendant committed this

1    crime, you must be convinced that the government has proved

2    each of the following beyond a reasonable doubt:

3            First, that the defendant unlawfully killed J.S.;

4            Second, that the defendant killed J.S. with malice

5    aforethought; and,

6            Third, that the killing was premeditated.

7            You should use the following instructions and

8    definitions in your deliberations regarding murder under

9    Title 18 United States Code, Section 1111(a).

10           To kill "with malice aforethought" means either to

11   kill another person deliberately and intentionally or to

12   act with callous and wanton disregard for human life.  To

13   find malice aforethought, you need not be convinced that

14   the defendant acted out of spite, hatred, malevolence, or

15   ill will toward the victim.

16           In deciding whether the killing was with malice

17   aforethought, you may consider the use of a weapon or

18   instrument and the manner in which the death was caused.

19           A killing is "premeditated" when it is the result

20   of planning or deliberation.  The amount of time needed for

21   premeditation of a killing depends on the person and the

22   circumstances.  It must be long enough for the killer,

23   after forming the intent to kill, to be fully conscious of

24   that intent.

25           You should consider all the facts and

1    circumstances before, during, and after the killing which

2    shed light on the defendant's state of mind, before and at

3    the time of the kill.

4            Count 19, bank theft, 18 USC, Section 2113(b).

5            The defendant is also charged in Count 19 of the

6    Fourth Superseding Indictment with the offense of bank

7    theft under Title 18 United States Code, Section 2113(b),

8    which makes it a crime for anyone to take and carry away,

9    with the intent to steal or purloin, any property or money

10   or any other thing of value exceeding $1,000 belonging to

11   or in the care, custody, control, management, or possession

12   of any federally insured bank.

13           For you to find the defendant guilty of this

14   crime, you must be convinced that the government proved

15   each of the following beyond a reasonable doubt:

16           First, that the defendant did or did attempt to

17   take and carry away money and property belonging to or in

18   the care, custody, control, management, possession of Texas

19   Capital Bank;

20           Second, that at that time Texas Capital Bank had

21   its deposits insured by the Federal Deposit Insurance

22   Corporation;

23           Third, that the defendant did or did attempt to

24   take and carry away such money and property with the intent

25   to steal; and,

1              Fourth, that such money and property exceeded

2     $1,000 in value.

3              The government can prove Count 19 by showing

4     beyond a reasonable doubt that the defendant did or did

5     "attempt" to commit the offense.  It is a crime for anyone

6     to attempt to commit a violation of certain specified laws

7     of the United States.  In this case the defendant is

8     charged in Count 19 with attempting to commit bank

9     fraud (*sic*) under Title 18 United States Code,

10    Section 1349.

11             For you to find the defendant guilty of attempting

12    to commit bank fraud *(sic)*, you must be convinced that the

13    government has proved each of the following beyond a

14    reasonable doubt:

15             First, that the defendant intended to commit bank

16    theft; and,

17             Second, that the defendant did an act that

18    constitutes a substantial step towards the commission of

19    that crime and that strongly corroborates the defendant's

20    criminal intent and amounts to more than mere preparation.

21             MS. RATTAN:  Your Honor, may we approach?

22             THE COURT:  Yes.

23             (Sidebar conference off the record.)

24             THE COURT:  Okay.  Ladies and gentlemen, I'm going

25    to instruct you the statute is -- on page 32, attempted

1    bank theft is actually in violation of Title 18 United

2    States Code 2113(b).  So I'm going to reread that and make

3    that change both on that B paragraph.

4             So the government can prove Count 19 by showing

5    beyond a reasonable doubt that the defendant did or did

6    "attempt" to commit the offense.  It is a crime for anyone

7    to attempt to commit a violation of certain specified laws

8    of the United States.  In this case the defendant is

9    charged in Count 19 with attempting to commit bank theft

10   under Title 18 United States Code, Section 2113(b).

11            For you to find the defendant guilty of attempting

12   to commit bank theft, you must be convinced that the

13   government has proved each of the following beyond a

14   reasonable doubt:

15            First, that the defendant intended to commit bank

16   theft; and,

17            Second, that the defendant did an act that

18   constitutes a substantial step towards the commission of

19   that crime and that strongly corroborates the defendant's

20   criminal intent and amounts to more than mere preparation.

21            Again, your verdict, whether it is guilty or not

22   guilty, must be unanimous.  The following instruction

23   applies to the unanimity requirement as to Count 19.

24            Count 19 of the Fourth Superseding Indictment

25   charges the defendant with committing the crime of bank

1   theft in two ways.

2          The first is that the defendant committed bank

3   theft.

4          The second is that the defendant attempted to

5   commit bank theft.

6          The government does not have to prove both of

7   these for you to return a guilty verdict for Count 19; but

8   in order to return a guilty verdict, all of you must agree

9   that the same one has been proved.  All of you must agree

10  that the government proved beyond a reasonable doubt that

11  the defendant committed bank theft, or all of you must

12  agree that the government proved beyond a reasonable doubt

13  that the defendant attempted to commit bank theft.

14         Now, the events presented in this trial happened

15  in various places.  You are hereby instructed that when an

16  offense is begun in one district and completed in another,

17  venue is proper in any district in which the offense was

18  begun, continued, or completed.

19         In order for you to return a guilty verdict, the

20  government must prove by a preponderance of the evidence

21  that the offense began, continued, or was completed in the

22  Eastern District of Texas.  This is a fact that the

23  government has to prove only by a preponderance of the

24  evidence, which means that it is more likely than not.  All

25  other elements of the offense must be proved beyond a

1    reasonable doubt.

2            You should use the following instructions and

3    definitions in your deliberations on Count 19.

4            A "federally insured bank" means any bank with

5    deposits insured by the Federal Deposit Insurance

6    Corporation.

7            Should you find the defendant guilty of this

8    crime, you will then need to determine whether the

9    defendant, in committing the violation, or in avoiding or

10   attempting to avoid apprehension for committing the

11   offense, or in freeing himself or attempting to free

12   himself from arrest or confinement for the offense, killed

13   J.S.

14           Okay.  To reach a verdict, whether it is guilty or

15   not guilty, all of you must agree.  Your verdict must be

16   unanimous on each count of the Fourth Superseding

17   Indictment.  Your deliberations will be secret.  You will

18   never have to explain your verdict to anyone.

19           It is your duty to consult with one another and to

20   deliberate in an effort to reach an agreement if you can do

21   so.  Each of you must decide the case for yourself, but

22   only after an impartial consideration of the evidence with

23   your fellow jurors.  During your deliberations do not

24   hesitate to reexamine your own opinions and change your

25   mind if you're convinced you were wrong.  But do not give

1    up your honest beliefs as to the weight or effect of the

2    evidence solely because of the opinion of your fellow

3    jurors or for the mere purpose of returning a verdict.

4            Remember at all times you are the judges, judges

5    of the facts.  Your sole interest is to seek the truth from

6    the evidence in the case, to decide whether the government

7    has proven the defendant guilty beyond a reasonable doubt

8    as to each count.

9            Any notes that you have taken during the trial are

10   only aids to your memory.  If your memory should be

11   different from your notes, then you should rely on your

12   memory and not on the notes.  The notes are not evidence.

13   A juror who has not taken notes should rely on his or her

14   own independent recollection of the evidence and should not

15   be unduly influenced by the notes of other jurors.  Notes

16   are not entitled to any greater weight than the

17   recollection or impression of each juror about the

18   testimony.

19           When you go to the jury room, the first thing you

20   should do is select one of your members as your foreperson,

21   who will help guide your deliberations and will speak for

22   you here in the courtroom.

23           A verdict form has been prepared for your

24   convenience.

25           The foreperson will write the unanimous answer of

1  the jury in the space provided for each count of the Fourth

2  Superseding Indictment, either "guilty" or "not guilty."

3  At the conclusion of your deliberations, the foreperson

4  should sign and date the verdict and use his or her

5  initials.

6          And I will be sending each of you a copy of the

7  verdict.  Of course, only the foreperson will fill out the

8  one for -- to return to the Court.  But this goes

9  through -- and you don't have this yet, but we'll send this

10 up to you.  It just says "Verdict of the Jury."  And then

11 the first one are the wire fraud counts, Counts 1 through

12 6; and then it just goes through the various questions and

13 then there are what I call hooks or instructions after each

14 question based on how you answer.

15         Like Question 1, as to the offense charged in

16 Count 1 of the Fourth Superseding Indictment, we, the jury,

17 find the defendant, Keith Todd Ashley -- there is a space

18 for guilty or not guilty.

19         And so that goes through all the various counts up

20 through Count 20, and then the last page is just -- again,

21 I want the foreperson to just initial it because we want to

22 keep your name out of the record as well.

23         Now, during your deliberations you must not

24 communicate with or provide any information to anyone by

25 any means about this case.  You must not use any electronic

1  device or media, such as a telephone, cell phone,

2  smartphone, iPhone, BlackBerry, or computer; the Internet,

3  any Internet service or any text or instant messaging

4  service; or any Internet chat room, blog, or website such

5  as Facebook, MySpace, LinkedIn, YouTube, or Twitter to

6  communicate to anyone any information about this case or to

7  conduct any research about this case until I accept your

8  verdict.

9         If you need to communicate with me during your

10  deliberations, the foreperson should write the message and

11  give it to the court security officer.  I will either reply

12  in writing or bring you back into the courtroom to respond

13  to your inquiry.

14         Bear in mind that you are never to reveal to any

15  person, not even to the Court, how the jury stands,

16  numerically or otherwise, on any count of the Fourth

17  Superseding Indictment until you've reached a unanimous

18  verdict.

19         And let me just give you a couple other

20  instructions.  So all communications will be by note.  So

21  if you have a question, you don't ask the court security

22  officer.  They are super nice and want to be helpful.  You

23  actually put it in a note and send it back to the Court,

24  and then I will respond in kind.

25         The other thing is when you go up to the jury

1    room, the first thing you will do will be to select one of

2    your own to be your foreperson; and that will be Note

3    Number 1 you send back to the jury.  That will be Juror

4    Number 1 through 12 is the foreperson.

5            The other thing is -- is that under the law the

6    alternates cannot deliberate, so that would be Juror

7    Number 13.  So you have one of two options.  When you go

8    back to the jury room, you can leave.  I don't make you

9    stay here.  If you want to stay here, we can find you a

10   place to; but you are welcome to leave if you want to

11   leave.  But, Juror 13, you are still under the same

12   instructions.  You can't talk about the case with anyone

13   else because there is always a possibility you could get

14   called back.

15           If we reach a verdict, you will get notified if

16   you decide to go back home and we'll notify you and then

17   once you've been notified of the verdict, you are free to

18   talk about the case as much as you want.

19           The other thing is for the 12 of you, once you go

20   back up and just 12 of you are present, then select your

21   foreperson; and you can then begin deliberations.

22           We will also send in the exhibits.  You have a

23   copy of the charge you can take with you, and we will send

24   each of you a copy of the -- the Fourth Superseding

25   Indictment be sent up.  And then also I have a copy of the

1   verdict for each one of you so it's easier for you to

2   follow along.  We used to only send one copy of the

3   verdict, but then after my last trial -- this is my 103rd

4   jury trial.  The last jury actually asked can each of us

5   have a copy of the verdict.  And so that makes sense.  I

6   don't know why we've never really done that.  So I'll send

7   each of you a copy of that as well.

8           The one thing to remember is if you take a break,

9   deliberations have to cease.  Doesn't mean you can't

10  individually look through the evidence as you so desire;

11  but, again, all 12 of you must be present during

12  deliberations.

13          The other thing is, of course, you're going to

14  start deliberations.  If we come up to the lunch hour, all

15  I need is -- you don't need my permission.  If you want to

16  leave to -- just send a note saying, "We're going to leave

17  for lunch."  And if you want to leave, you can leave from

18  12:00 to 1:00.  Just remember all of my prior instructions

19  are still under -- you can't talk about the case or

20  anything if you-all go to lunch from 12:00 to 1:00.

21          If you want like lunch brought in, we can

22  certainly do that, too, for the 12 of you.  And just send

23  that note, or you can tell -- when the exhibits are brought

24  up, you can tell them if you want lunch brought in.  But if

25  we bring lunch in, the attorneys will probably be gone from

1    12:00 to 1:00.  I'll give them a break during that time

2    period while you are doing a working lunch.

3          So, ladies and gentlemen, thank you for your

4    attentiveness over these seven days.  You've been a great

5    jury, and I'm going to send you back to the jury room to

6    basically begin your deliberations.  The case is now in

7    your hands.  Thank you.

8          (The jury exits the courtroom, 9:59 a.m.)

9          THE COURT:  Okay.  Anything further from the

10   government?

11         MS. RATTAN:  No, your Honor.

12         THE COURT:  Anything further from defense?

13         MR. WHALEN:  No, your Honor.

14         THE COURT:  And then if you want to wait around,

15   the attorneys -- I assume we'll get a note pretty quickly,

16   if you want to know who the foreperson is.  Otherwise, I

17   will -- once we get a second note, I'll put that one on the

18   record, the first note who the foreperson is.  But I will

19   come out and tell you if you -- are y'all interested in who

20   the foreperson is?

21         MS. RATTAN:  Yes, your Honor.

22         THE COURT:  Okay.  So when I get that note, I'll

23   come out.  Just stay here.  It shouldn't take too long.

24         And then after that, if you want to go to your

25   respective rooms; and then I'll also let you know if they

Jury Trial, Volume 7                1689

 1  decide they want to go out for lunch or have lunch brought

 2  in.  I'll let you know that.  But either way, you can take

 3  12:00 to 1:00 for lunch.

 4          Okay.  Very good.  Thank y'all.

 5          (Recess, 10:00 a.m. to 10:30 a.m.)

 6          (Open court, defendant present, jury present.)

 7          THE COURT:  Okay.  We have Note Number 1, which

 8  is -- they didn't identify it as Note Number 1 but -- they

 9  didn't put a number on there, but I am going to add "1"

10  just so it's the first note.  It's the foreperson -- any

11  guesses from the attorneys before --

12          MS. RATTAN:  4?

13          MR. WHALEN:  No.  I have no guess.

14          THE COURT:  Okay.  I'm never good at this.  Juror

15  Number 1 is the foreperson.

16          MR. WHALEN:  He drew the short straw.

17          THE COURT:  Okay.  And then I have a Note Number 2

18  that was handed to me while I was waiting here so --

19  "Question:  May we have the timeline board that the U.S.

20  Attorney prepared?"

21          MS. RATTAN:  Of course, we're willing to provide

22  it.

23          THE COURT:  Well, that's very nice of you to be so

24  generous; but unlike the *Jordan* case, you didn't offer

25  this.

1             MS. RATTAN:  We agree.  We did not.

2             THE COURT:  It's a demonstrative so --

3             MS. RATTAN:  Yes.

4             THE COURT:  I assume the defense isn't agreeing to

5    allowing that timeline to go back.

6             MR. WHALEN:  No, we don't agree to that, your

7    Honor.

8             THE COURT:  Okay.  So I'll respond to the second

9    note that -- essentially, that the timeline board was a

10   demonstrative and not an admitted exhibit --

11            MS. RATTAN:  Yes, your Honor.

12            THE COURT:  -- so the Court cannot provide that to

13   you.

14            MS. RATTAN:  Yes, your Honor.

15            THE COURT:  Okay.  She's preparing the note; and

16   while she is doing that, I did want to raise a question

17   regarding Count 19.  Of course, the government pointed out

18   that on the "attempt" language, that we had the wrong

19   provision.  Well, that raises the question.  Under 2113(b)

20   attempt is not listed as a crime, only the completed

21   offense.

22            MS. RATTAN:  Under 31, I believe, (c) of the Rules

23   of Criminal Procedure attempt is automatically inherently

24   included in every charge.

25            THE COURT:  Well, but I'm saying is -- I don't

1   know that -- how does that counteract to the statute?

2   There is only -- the Circuit has -- in our quick research,

3   only one Circuit has addressed this and -- but the issue

4   of -- (a) actually provides for attempt and (d) provides

5   for that, but (b) does not.

6          MS. RATTAN:  Again, I think that the Code of

7   Criminal Procedure says, under 31(c), that the charge of

8   attempt is automatically included in any crime that's

9   charged.

10          THE COURT:  Okay.  What rule is that again?

11          MS. RATTAN:  It's procedure, 31(c), I believe.

12          THE COURT:  Mr. Whalen, Rule 31 of the Criminal

13   Rules of Procedure does provide that a defendant may be

14   found guilty of any of the following:

15          One, an offense necessarily included in the

16   offense charged;

17          Two, an attempt to commit the offense charged; or,

18          Three, an attempt to commit an offense necessarily

19   included in the offense charged, if the attempt is an

20   offense in its own right.

21          MR. WHALEN:  Just one moment, your Honor.

22          THE COURT:  That's fine.

23          And then let me just -- so I can go ahead and send

24   the note back to the jury, the typewritten response is:

25   "Response to Jury Note Number 2:  The timeline board was a

1  demonstrative and not an admitted exhibit.  The Court

2  cannot provide this to you."

3        Any objection to me answering it that way is this.

4        MS. RATTAN:  No, your Honor.

5        THE COURT:  Mr. Whalen?

6        MR. SANDEL:  No objection to that, your Honor.

7        THE COURT:  Okay.  I'm going to go ahead and sign

8  that and send it back to the jury with Note Number 2.

9        MR. WHALEN:  Your Honor.

10        THE COURT:  Yes.

11        MR. WHALEN:  I don't know how to -- just -- these

12  are just my musings on it but -- 31(c) does say that, but I

13  also think why (b) doesn't have attempt in it, I guess, the

14  special issue does, when they mentioned (d).  So, I guess

15  they couldn't find an attempt of (b) -- and it gets pretty

16  convoluted, but I think 31(c) does it allow it to -- they

17  can plead an attempt the way I understood it but --

18        THE COURT:  So you don't think there's a -- you

19  don't think there's an issue here?

20        MR. WHALEN:  It doesn't -- on its face it doesn't

21  appear to be.

22        THE COURT:  Okay.  Very good.  I just wanted to

23  raise it while there was still a chance to -- if we had to

24  fix something, we could fix it.

25        Okay.  Very good.  Again -- oh, the other thing

1    I'll just let you know is the jury did ask for lunch to be

2    brought in.  So the attorneys are welcome -- we're going to

3    be providing them lunch; but you are welcome to -- just if

4    you want to leave the building from 12:00 to 1:00, I've

5    already told them that, you know, they'll have a working

6    lunch and we'll be gone during that time.

7            Otherwise, we will await the jury's verdict.

8    Thank y'all.

9            (Recess, 10:37 a.m. to 11:27 a.m.)

10           (Open court, defendant present, jury not present.)

11           THE COURT:  Okay.  We received another note from

12   the jury and it's not numbered, but we'll number it

13   Number 3.

14           "Can we receive multiple copies of the Indictment,

15   preferably one for each juror?"

16           Of course, we sent up the redacted version, one

17   copy.  If there is no objection, I'll just have Ms. McCord

18   go up and obtain the redacted version that you've already

19   signed off on and make the copies.

20           Any objection to that?

21           MS. RATTAN:  No, your Honor.

22           MR. WHALEN:  No, your Honor.

23           THE COURT:  Okay.  So I think instead of just

24   responding to the note -- I'm not going to give a written

25   response.  I'll just provide -- we'll obtain that, make the

 1   copies, and provide it to them.

 2         Is that suitable?

 3         MR. WHALEN:  That's fine, your Honor.

 4         MS. RATTAN:  Yes, your Honor.

 5         THE COURT:  Okay.  Very good.

 6         Again we continue to await the jury's verdict.

 7   Thank you.

 8         (Recess, 11:28 a.m. to 1:56 p.m.)

 9         (Open court, defendant present, jury not present.)

10         THE COURT:  We have another note from the jury,

11   and they didn't -- they didn't put the number, but I think

12   this is Note Number 4.

13         "Would Ashley's actions in Count 9 be considered

14   wire fraud if J.S. were still alive?"

15         That is the question that they are asking.  Any

16   comment from the government?

17         MS. RATTAN:  I think that the Court just has to

18   instruct them that they've received the evidence and the

19   instructions and they need to focus on that and not provide

20   anything additional.

21         MR. WHALEN:  I agree, your Honor.

22         THE COURT:  So I would propose that we just

23   respond indicating "The Court refers you back to the

24   Court's instructions," just that.

25         Does that sound okay?

1           MR. WHALEN:  That's fine, your Honor.

2           MS. RATTAN:  So can we include "and the evidence

3    that you've received"?

4           THE COURT:  Oh, that's fine, yes.

5           MS. RATTAN:  Okay.

6           THE COURT:  So "The Court refers you back to the

7    Court's Final Jury Instructions as well as all of the

8    evidence of record."  Does that work?

9           MR. WHALEN:  It does, your Honor.

10          THE COURT:  Okay.  She's going to type it up, and

11   then I'll read it one more time to make sure we're all in

12   agreement.

13          So here is my response.  The typewritten note

14   says, "Response to Jury Note Number 4:  The Court refers

15   you back to the Court's Final Jury Instructions and the

16   evidence of record."

17          Is that --

18          MS. RATTAN:  We agree.

19          THE COURT:  -- acceptable?

20          MR. WHALEN:  Yeah, that's acceptable.

21          THE COURT:  Okay.  I will sign that and again

22   respond back to the note.

23          I did want to raise one other issue, the issue I

24   raised before regarding Count 19 and the issue of attempt.

25   I know the government asserted that criminal Rule 31(c)

 1    says that attempt can be asserted in any of those counts or

 2    charges.  The Fifth Circuit has not ruled upon this.  But

 3    in our preliminary research, the Circuits that have

 4    addressed it have indicated that the Rules of Criminal

 5    Procedure doesn't expand upon whatever the statute says; so

 6    the statute has to say that it includes attempt.

 7            So if the statute says it includes attempt, then

 8    Rule 31 comes into play; but it can be any of those.

 9    But -- and the Fifth Circuit hasn't ruled on that but -- so

10    that could be a concern since the statute that the

11    government asserted to proceed to the jury on does not

12    provide for attempt.

13            Now, there may be some arguments about statutory

14    construction and having a look at the various provisions.

15    One thing that I'm just throwing out as a consideration is

16    if the jury convicts on Count 19, I would ask the parties

17    to ponder whether or not it is appropriate for the Court to

18    then send another -- supplemental interrogatory back to

19    find out did the jury convict him of the actual offense or

20    did they convict him of the attempt, so then we know the

21    answer.  If it's the underlying offense, there is no issue.

22    If the attempt, then there is a posttrial issue we'll deal

23    with and I'm sure Mr. Whalen will raise.

24            And I know if that's the way -- I know,

25    Mr. Whalen, you agree to -- that you think there is an

1   issue; but I don't know if that's -- if attempt is not

2   statutorily authorized as a crime, then that count won't

3   survive, if the jury found him guilty on the attempt and

4   that's what they were unanimous on.

5           So any thoughts off the top of your head?  I'm

6   just thinking outside the box of trying to figure out if

7   they convict, since there were two ways they could convict.

8   Only one of those is problematic but -- or possibly

9   problematic.  I'm not saying definitely the answer is

10  attempt couldn't be done, but I'm just trying to note that

11  since the issue has been -- at least I have an issue about

12  it, that I would like to see if there is a way to not --

13  it's too late to fix that, but it's a way to at least find

14  out what the jury decides on that count.

15          Any thoughts?

16          MS. RATTAN:  A way to address it.

17          Thank you for raising it.  May we have an

18  opportunity to review it and talk about it --

19          THE COURT:  Of course.

20          MS. RATTAN:  -- talk about it and let the Court

21  know?

22          THE COURT:  Of course.

23          Mr. Whalen, any thoughts?

24          MR. WHALEN:  No, and I think that -- let me think

25  about it, but I think that could be a solution.  I'm just

1   trying to --

2          THE COURT:  I mean, it doesn't solve the problem,

3   you know, if they -- if we send them a supplemental

4   interrogatory and they say they found him guilty of the

5   attempt, then we'll deal with that post-trial and figure

6   out what that means.

7          MR. WHALEN:  Yeah, because I think that would then

8   impact the enhancement, the special issue, possibly.

9          THE COURT:  Well -- well, that goes to the

10  underlying offense, the attempt issue.  If attempt is not

11  authorized, I'm not -- that's the underlying --

12         MR. WHALEN:  Okay.

13         THE COURT:  -- underlying substantive count before

14  the enhancement would apply.

15         MR. WHALEN:  Okay.  We'll think about it.

16         THE COURT:  But I would ask both sides to look at

17  it and, again -- at least it gives us a way to figure out

18  did they find him guilty -- if they find him guilty of that

19  count, what was the basis so --

20         MR. WHALEN:  Okay.

21         THE COURT:  Okay.  Very good.

22         Again, we will await the jury's verdict.

23         (Recess, 2:03 p.m. to 3:17 p.m.)

24         (Open court, defendant present, jury not present.)

25         THE COURT:  I have Note Number 5 from the jury.

```
 1   "Are we able to take a break and get fresh air, which

 2   includes going outside?"

 3            So I will answer them, "Yes, you are free to take

 4   a break."

 5            Do you want me to give them a time limit or --

 6            MS. RATTAN:  It seems like 30 minutes would be

 7   reasonable.

 8            THE COURT:  Oh, you're more generous than me.  I

 9   was going to say 20 minutes but -- so "You are free to take

10   a 20-minute break, which means you are allowed to go

11   outside.  Please remember to follow all of my previous

12   instructions."

13            Anything else you would like me to add?

14            MS. RATTAN:  No, your Honor.

15            MR. WHALEN:  No, your Honor.

16            I mean, my only thought would be as far as putting

17   a limit on it.  I mean, it's always been their prerogative

18   of how they deliberate and how long and stuff so --

19            THE COURT:  Okay.  So let me just -- I'll take

20   that out.

21            So, "Yes, you are able to take a short break"?

22            MR. WHALEN:  Sure.

23            THE COURT:  Without defining the time.

24            Okay.  So the written response is, "Response to

25   Jury Note Number 5:  Yes, you are free to take a short
```

 1  break, which means you are allowed to go outside.  Please

 2  remember to follow all my previous instructions."

 3          Acceptable to the government?

 4          MS. RATTAN:  Yes, your Honor.

 5          THE COURT:  To defense?

 6          MR. WHALEN:  Yes, your Honor.

 7          THE COURT:  Okay.  I'll go ahead and sign it.

 8          Thank you.  And we'll deliver that note to the

 9  jury.

10          Also, as we discussed earlier -- I don't know if

11  you had a chance to discuss the issue of -- well, I think

12  you've sent an email, from the government.

13          Mr. Whalen, have you had a chance to -- well, the

14  government indicated they agreed with my general proposal

15  of a supplemental instruction.

16          MR. WHALEN:  Your Honor, after reviewing it,

17  obviously the case law seems to suggest it's disfavored --

18          THE REPORTER:  I'm sorry, could you --

19          THE COURT:  Oh, you have to use a mic.

20          MR. WHALEN:  Yes, sir.

21          In reading an opinion from the Fifth Circuit,

22  Judge Costa seemed to indicate that they were disfavored

23  but in certain circumstances they would be appropriate; and

24  I think under the circumstances that we have here today,

25  because it would lead to a potential verdict that is

 1    improper, that we're not opposed to a supplemental

 2    instruction.

 3            THE COURT:  And I'm working on the language, but

 4    let me just read a draft that I've come up with.  It would

 5    be a supplemental question.  My thought was to repeat the

 6    language under Count 19.  "As you were instructed, Count 19

 7    of the Fourth Superseding Indictment charges the defendant

 8    with committing the crime of bank fraud in two different

 9    ways.  The first is defendant committed bank fraud, meaning

10    the four elements listed on page 31 of the Final Jury

11    Instructions were proven by the government beyond a

12    reasonable doubt.  The second is the defendant attempted to

13    commit bank fraud, meaning that the two elements listed on

14    page 32 of the Final Jury Instructions were proven by the

15    government beyond a reasonable doubt.  You were instructed

16    that all of you must agree the government proved that the

17    defendant committed bank theft or that all of you must

18    agree the government proved attempted bank theft in order

19    to find the defendant guilty."

20            Then it says:  "Proceed to Supplemental

21    Question 1.

22            "Supplemental Question 1:  With respect to

23    Count 19, we, the jury, found the defendant, Keith Todd

24    Ashley, is guilty based on" -- and then, parentheses,

25    select only one, closed parentheses, then has "bank theft"

1    or "attempted bank theft" where they could check; and then

2    it goes to initial the verdict.

3         I'll print this.  I'm making some changes.  I read

4    the -- what I read to you included my changes.  But how

5    does that sound generally?  I'll give you a copy to look at

6    just in case we need it but --

7         MS. RATTAN:  Generally, it sounds good.

8         THE COURT:  Mr. Whalen?

9         MR. WHALEN:  Agree, your Honor.

10         THE COURT:  Okay.

11         MR. WHALEN:  It sounds relatively --

12         THE COURT:  So what I'll do is I'm having my

13    lawyer -- we're making a few changes, and I'll give you a

14    copy of this so you can look at and then -- just so we're

15    ready and prepared if we need it.

16         Anything further from the government?

17         MS. RATTAN:  No, your Honor.

18         THE COURT:  Anything further from defense?

19         MR. WHALEN:  No, your Honor.

20         THE COURT:  Okay.  Then we will go back in recess

21    while awaiting the jury verdict.  Thank you.

22         (Recess, 3:21 p.m. to 5:01 p.m.)

23         (Open court, defendant present, jury not present.)

24         THE COURT:  Okay.  We have Note Number 6.  Of

25    course, this came about 10 minutes ago.  "As we have only

1    10 minutes, can we end early?"

2              So I'm just going to instruct them that -- "Please

3    return tomorrow by 9:00 to begin your deliberations again.

4    Again, follow all of my prior instructions."

5              MS. RATTAN:  Yes, your Honor.

6              MR. WHALEN:  No objection, your Honor.

7              THE COURT:  Okay.  Okay.  So here I have the

8    written response.  "Response to Jury Note Number 6:  Please

9    return tomorrow at 9:00 a.m. to continue deliberations.

10   Again, please follow all of my previous instructions."

11             Is that acceptable?

12             MS. RATTAN:  Yes, your Honor.

13             MR. WHALEN:  Yes, your Honor.

14             THE COURT:  Okay.  I'll sign that and send that

15   back to the jury, and then I will see y'all tomorrow

16   morning -- well, we'll await the jury's verdict but they

17   will resume tomorrow morning at 9:00 and I'll see y'all

18   tomorrow at the next note.

19             Thank y'all.  Have a good evening.

20             (Proceedings adjourned, 5:02 p.m.)

21   COURT REPORTER'S CERTIFICATION

22             I HEREBY CERTIFY THAT ON THIS DATE, NOVEMBER 1,
     2022, THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD
23   OF PROCEEDINGS.

24                    ___/s/_____
                      CHRISTINA L. BICKHAM, CRR, RDR
25