STATE OF TEXAS       §
                   §
COUNTY OF DALLAS     §

    THIS TRUST AGREEMENT is entered into on the H₆ day of Doai , in the year 2019, between JAMES E SEEGAN of Dallas County, Texas, as settlor (the "Settlor") and as initial trustee (the "Trustee").

## W I T N E S S E T H:

    The Settlor desires to create a trust to be held, administered and distributed in accordance with the provisions of this Trust Agreement. Accordingly, the Settlor has transferred to the Trustee, and the Trustee acknowledges receipt from the Settlor of the sum of ten dollars ($10.00) in cash. This property, together with any other property which may hereafter be conveyed to the Trustee subject to the trust hereby created, shall be held, administered and distributed by the Trustee, upon the trust and for the purposes and uses herein set forth. The trust initially created by this Trust Agreement shall be known as the "JAMES E SEEGAN REVOCABLE TRUST."

### Article I.
### Identification

    **A.**   **Settlor's Wife.** The Settlor's wife is SAKDIDA SEEGAN. All references in this Trust Agreement to the "Wife" are to her.

    **B.**   **Settlor's Children.** The Settlor has one son, Joshua Edward Seegan. All references in this Trust Agreement to "the Settlor's son" are to him.

### Article II.
### Initial Revocable Trust

    **A.**   **Distributions.** The Trustee shall hold, manage, sell, exchange, invest and reinvest the trust property, collect all income and, after deducting such expenses as are properly payable, shall accumulate and distribute the income and principal as herein provided. The Trustee shall distribute the income and principal of the trust to the Settlor in such amounts as the Settlor may direct. All undistributed trust income shall be accumulated and invested. If the Settlor becomes incapacitated, the Trustee shall distribute such amounts of the income and principal of the trust for the comfort, health, support, maintenance or other needs of the Settlor as the Trustee shall determine, in the Trustee's discretion, to be necessary or appropriate to maintain the Settlor in

1

accordance with the Settlor's accustomed standard of living at the time of the execution of this Trust Agreement.

**B.**     **Additions Following Death of Settlor.** The Trustee shall add to the trust created by this Article all property which was owned by the Settlor and which is received by the Trustee under the Settlor's Will or otherwise. All non-probate assets (which shall include, but not be limited to, any payments from an employee or self-employed benefit plan, individual retirement account or annuity or any proceeds of any insurance policy on the life of the Settlor) which are payable to the Trustee hereunder shall be allocated as follows: that portion of such payments and proceeds which represents the separate and/or community property of the Wife shall be distributed to the Wife, and that portion of such payments and proceeds which represents the separate and/or community property of the Settlor shall be added to the trust created by this Article.

**C.**     **Gifts of Tangible Personal Property.** The Settlor requests that the beneficiaries of the trust created by this Article and the Trustee honor the provisions of any memorandum written by the Settlor directing the disposition of any portion of the Settlor's personal and household effects. Following the death of the Settlor, except as may be provided in any such memorandum, the Trustee shall distribute all of the Settlor's motor vehicles, boats and personal watercraft, household goods, appliances, furniture and furnishings, pictures, silverware, china, glass, books, clothing, jewelry or other articles of personal use or ornament, and other tangible personal property of a nature, use or classification similar to the foregoing to the Wife, free of trust; provided, however, if the Wife fails to survive the Settlor, such property shall be distributed to the Settlor's Beneficiaries as defined in Article III, free of trust, with particular items to be allocated as they may agree, or if they cannot agree, as the Trustee shall decide. If any beneficiary hereunder is a minor, the Trustee may distribute such minor's share to such minor or for such minor's use to any person with whom such minor is residing or who has the care or control of such minor without further responsibility, and the receipt of the person to whom such minor's share is distributed shall be a complete discharge of the Trustee. The cost of packing and shipping such property to any such beneficiary shall be charged against this trust as an administration expense.

**D.**     **Payment of Taxes.** Following the death of the Settlor, the Trustee shall pay from the remaining property of this trust the difference between all taxes which must be paid by reason of the Settlor's death and those taxes which would be payable by reason of the Settlor's death had the property of this trust not been includable in the gross estate of the Settlor for the purpose of calculating such taxes; provided, however, the property passing pursuant to the terms of a memorandum authorized by Article II, Section C or any other property passing under Article II, Section C shall not be used for the payment of such taxes. Except as otherwise specifically provided herein, any taxes caused by the inclusion in the Settlor's estate of property not passing under this Trust Agreement or under the Settlor's Will shall be apportioned and paid in accordance with Sections 124.001 through 124.018 of the Texas Estates Code (or any successor statute), and

2

in such case, Federal law shall control if Texas law and Federal laws conflict or if Texas law fails to address an apportionment or tax payment issue. This Section shall not apply to any generation skipping transfer taxes imposed by Section 2601 of the Code, which taxes shall instead be payable in accordance with the provisions of Section 2603 of the Code.

     **E.**   **Payment of Expenses.** The Trustee, in the Trustee's discretion, may pay from the trust property all or any part of the Settlor's funeral expenses, claims which are legally enforceable against the Settlor's estate and reasonable expenses of administration of the Settlor's estate, but the Trustee shall not make any such payments that are not in the best interests of any person having a beneficial interest in the remaining property of this trust upon termination. The Trustee may make such payments directly or may pay over the amounts thereof to the duly qualified executor, personal representative, or administrator of the Settlor's estate. Written statements by the executor, personal representative, or administrator of the Settlor's estate of the sums that may be paid under this Section shall be sufficient evidence of their amounts, and the Trustee shall be under no duty to confirm that such payments were applied properly.

     **F.**   **Survivorship Provisions.** For purposes of this Trust Agreement, no person shall be deemed to have survived the Settlor if such person shall die within 30 days after the Settlor's death. Any person who is prohibited by law from inheriting property from the Settlor shall be treated as having failed to survive the Settlor.

     **G.**   **Distributions Upon Termination.** The trust created by this Article shall terminate upon the death of the Settlor. Upon termination, the Trustee shall distribute all of the remaining income and principal of this trust to the Settlor's Beneficiaries as defined in Article III.

## Article III.
### Beneficiaries

Any property which is to be distributed to the "Settlor's Beneficiaries as defined in Article III" shall be distributed to the following beneficiaries in the noted percentages:

1.   40% (Forty Percent) shall be distributed to the Settlor's wife, Sakdida Seegan; provided, however, if she fails to survive the Settlor, this share of such property shall be distributed to her descendants who survive the Settlor per stirpes, or if no such descendant survives the Settlor, to the other beneficiaries named in this Article who are entitled to receive a portion of such property in proportion to their share of the overall distribution being made.

2.   40% (Forty Percent) shall be distributed to the Settlor's son, Joshua Edward Seegan; provided, however, if he fails to survive the Settlor, this share of such property shall be distributed to his descendants who survive the Settlor per stirpes, or if no such descendant survives the Settlor, to the other beneficiaries named in this Article who

3

are entitled to receive a portion of such property in proportion to their share of the overall distribution being made.

3.    20% (Ten Percent) shall be distributed to the Settlor's nephew, Kerby K. Keller; provided, however, if he fails to survive the Settlor, this share of such property shall be distributed to his descendants who survive the Settlor per stirpes, or if no such descendant survives the Settlor, to the other beneficiaries named in this Article who are entitled to receive a portion of such property in proportion to their share of the overall distribution being made.

If all of the beneficiaries listed in this Article fail to survive the Settlor, then such property shall be divided into two equal halves with one-half being distributed to the Settlor's heirs and one-half being distributed to the Wife's heirs. Any property (other than the Settlor's tangible personal property) to be distributed to an individual pursuant to the terms of this Article shall not be distributed outright, but instead shall be held, administered, and distributed by the Trustee subject to the terms and provisions of Article IV. Any requirement in this Article that a person must survive the Settlor shall, in the case of property distributed upon the termination of a trust, instead mean that such person must then be living.

## Article IV.
## Beneficiaries' Trusts

A.    **Applicability.** If any property is to be distributed to an individual subject to being held, administered, and distributed according to the terms and provisions of this Article, the Trustee shall not distribute such property outright, but instead the Trustee shall hold all of such property as a separate trust for the benefit of such individual, and the records of the Trustee shall be kept accordingly. Each trust created by this Article shall be known by the name of the individual for whom it is created (hereafter called "Beneficiary" of such trust) which individual shall be the primary beneficiary thereof.

B.    **Distributions.** With regard to each trust created by this Article, the Trustee shall distribute to the Beneficiary of such trust such amounts of the income and principal of such trust as are necessary, when added to the funds reasonably available to such Beneficiary from all other sources known to the Trustee, to provide for such Beneficiary's health, support, maintenance and education, taking into consideration the age, education and station in life of such Beneficiary. In addition, the Trustee, in the Trustee's discretion, may distribute to any one or more descendants of the Beneficiary of a trust created by this Article, such amounts of the income and principal of such trust as are necessary, when added to the funds reasonably available to such Beneficiary's descendants from all other sources known to the Trustee, to provide for their health, support, maintenance and education, taking into consideration their age, education and station in life. The

4

primary purpose of each of the trusts created by this Article is to provide for the Beneficiary of such trust and not to provide for distributions to the descendants of such Beneficiary or to accumulate funds for any other remainder beneficiaries. Accordingly, the Trustee shall always consider the needs of the Beneficiary of a trust ahead of the needs of any other beneficiary under this Trust Agreement. The Trustee shall make distributions to the Beneficiary of each trust in accordance with the aforementioned distribution standards even if doing so exhausts the principal of such Beneficiary's trust created under this Article. The Settlor desires that each of the Beneficiaries and the descendants of such Beneficiaries be afforded the opportunity to obtain as complete an education, including attendance at graduate, professional and special trade schools, as they may reasonably desire and be qualified to obtain; however, any such distributions for the education of the descendants of a Beneficiary shall be made only after the needs of the Beneficiary have been satisfied according to the aforementioned distribution standards.

  C. **Termination.** Except as limited by Article VI, Section E, each trust created by this Article shall last for the lifetime of the Beneficiary thereof and shall terminate upon such Beneficiary's death. Upon the termination of a trust created by this Article, all of the remaining property of such trust shall (except as provided in Article VI, Section E) be distributed to such Beneficiary's then living descendants per stirpes, or if no descendant of such Beneficiary is then living, such property shall be distributed to the Settlor's Beneficiaries as defined in Article III. Any distribution which is made to an individual upon the termination of a trust created by this Article shall be held by the Trustee in a separate trust for the benefit of such individual (who will be the "Beneficiary" of such trust) to be administered as provided in this Article; provided, however, any such distribution to an individual who is the Beneficiary of a trust then being held under the provisions of this Article shall not be made outright but instead shall be added to the principal and administered as a part of such Beneficiary's trust.

## Article V.
### Trustee Appointments

  A. **Successor Trustee.** If JAMES E SEEGAN dies, resigns, becomes incapacitated, or otherwise ceases to serve as Trustee of a trust created under this Trust Agreement, then KEITH ASHLEY shall become Trustee of such trust. If KEITH ASHLEY fails to qualify, dies, resigns, becomes incapacitated, or otherwise ceases to serve as Trustee of a trust created under this Trust Agreement, then the Settlor's nephew, KERBY K. KELLER, shall become Trustee of such trust.

  B. **Removal of Trustee Under Article II.** The Settlor may at any time or from time to time remove any Trustee of the trust created under Article II, with or without cause, and may appoint a successor individual or corporate Trustee or a series of successor individual or corporate Trustees or Co-Trustees.

060005

C.     **Trustee Resignation or Vacancy.** Any Trustee may resign by giving notice to the Settlor while the Settlor is living and to the beneficiaries or Ward of such trust after the death of the Settlor. While the Settlor is living, if the trusteeship of the trust created by Article II should become vacant for any reason, the power to appoint a successor shall be exercisable by the Settlor for a period of 30 days; provided, however, if the Settlor fails to appoint a successor within such 30 day period, and if no successor Trustee has been appointed pursuant to the terms of any other Section of this Article, the power to appoint a successor shall be exercisable, in succession, by the Wife for a period of 30 days, and by the Settlor's son for an additional 30 days should the Wife also fail to appoint a successor within such 30 day period. After the death of the Settlor, if the trusteeship of a trust should become vacant for any reason, and no successor Trustee has been appointed pursuant to the terms of any other Section of this Article, the power to appoint a successor shall be exercisable by the Beneficiary or Ward of such trust for a period of 90 days. If no successor Trustee has been appointed within 90 days of such vacancy or such notice of resignation, then a successor Trustee shall be appointed by a court of competent jurisdiction.

D.     **Expenses and Compensation.** Every Trustee shall be reimbursed for the reasonable costs and expenses incurred in connection with such Trustee's duties. Every Trustee, except the Settlor, shall be entitled to fair and reasonable compensation for services rendered by such Trustee in an amount not exceeding the customary and prevailing charges for services of a similar character at the time and place such services are performed.

E.     **Waiver of Bond; Ancillary Trustees.** No Trustee acting hereunder shall be required to give bond or other security in any jurisdiction. If any trust created by this Trust Agreement contains property located in another state or a foreign jurisdiction, and the Trustee cannot or chooses not to serve under the laws thereof, the power to appoint an ancillary Trustee for such property (as well as any successor ancillary Trustee) shall be exercisable by the Settlor, or by the Trustee if the Settlor is not living or is not competent to act. An ancillary Trustee appointed pursuant to this Section may be an individual or corporate Trustee.

F.     **Uneconomical Trusts.** With regard to any trust created by this Trust Agreement after the death of the Settlor, the Trustee of such trust shall have the power, in the Trustee's discretion, to terminate such trust if the fair market value of such trust falls below the amount that would have had the same purchasing power as $100,000 had on the January 1st following the date of this Trust Agreement (based on the U.S. Consumer Price Index for All Urban Consumers applicable to Dallas, Texas) or becomes so small in relation to the cost of administering such trust that continued administration thereof is uneconomical or contrary to the primary purpose of such trust, and upon termination, the Trustee shall distribute the principal and accrued or undistributed income of such trust to the primary beneficiary or Ward of such trust.

G.     **"Trustee" Defined.** Unless another meaning is clearly indicated or required by context or circumstances, the term "Trustee" shall mean and include the initial Trustee and any

6

successor Trustee or Co-Trustees. Except as otherwise specifically provided in this Trust Agreement, if Co-Trustees are designated to serve hereunder or if Co-Trustees are already serving, and one such Co-Trustee declines to serve, fails to qualify, dies, resigns, becomes incapacitated, or otherwise ceases to serve for any reason, then the remaining Trustee or Co-Trustees, as the case may be, shall serve or continue to serve in such capacity.

H.   **Actions by Co-Trustees.** In all matters relating to each trust created under this Trust Agreement, the decision of a majority of the Trustees then serving shall control. Any writing signed by the persons whose decision shall control shall be valid and effective for all purposes as if signed by all such Trustees.

I.   **"Corporate Trustee" Defined.** The term "corporate Trustee" shall mean a bank having trust powers or a trust company either of which must have (alone or when combined with its parent organization and affiliate) assets beneficially owned by others under its management with a value in excess of $100,000,000 (U.S.), and such term shall also mean the successor (by merger, consolidation, change of name or any other form of reorganization, or if such corporate Trustee ever transfers all of its existing business of serving as a fiduciary to any other bank or trust company or corporation) bank or trust company to any such corporate Trustee named herein or serving hereunder. If a bank or trust company is specifically named herein or was a corporate Trustee (as defined above) when it accepted its fiduciary position hereunder, it shall not cease to be considered a corporate Trustee because its assets under management presently are or later decline below the amount stated above. In any instance where a corporate Trustee is required to be appointed as a successor Trustee or Co-Trustee in connection with the removal of any Trustee or Co-Trustee, the instrument of removal shall contain the acceptance of the corporate Trustee so appointed evidenced on it. If a corporate Trustee is serving as a Co-Trustee, it shall have exclusive custody of the properties, books and records of the trust as to which it is serving, but shall make such properties, books and records available for inspection and copying by every other Trustee of such trust.

## Article VI.
### Administrative Provisions

A.   **Revocation Prior to Death of Settlor.** The Settlor may by acknowledged instrument alter, amend, modify, revoke or terminate any of the provisions of this Trust Agreement by notice to the Trustee. Any alteration, amendment, modification, or revocation made pursuant to this Article shall be made by acknowledged instrument delivered to the Trustee.

B.   **Irrevocability Following Death of Settlor.** After the death of the Settlor, the trusts created under this Trust Agreement shall become irrevocable, and no person shall thereafter have the power to alter, amend, modify, revoke or terminate any of the provisions of this Trust

7

Agreement.

C.    **Right To Use Principal Residence.** The Settlor or the primary beneficiary of a trust created hereunder shall have the right to use and occupy real or personal property owned by any trust created under this Trust Agreement as the Settlor's or such primary beneficiary's principal residence rent free and without charge for life or until this Trust Agreement is revoked or terminated, whichever occurs first. Further, any such property (or any interest therein) shall be acquired by an instrument of title that describes the property with sufficient certainty to identify it and the interest acquired, and the instrument shall be recorded in the real property records of the county in which the property is located. This section shall be construed in accordance with the Settlor's intention that all eligible real or personal property which is owned by a trust created hereunder qualify for the homestead exemption and that the trust which owns such property is a "qualifying trust" as defined and described in Section 11.13(j) of the Texas Tax Code and, if applicable, Section 41.0021 of the Texas Property Code.

D.    **Combination of Trusts.** After the death of the Settlor, the Trustee, in the Trustee's discretion, may combine any trust created under this Trust Agreement with any other trust or trusts if the terms of such trusts are substantially similar, if such trusts have the same primary beneficiaries, and if such trusts have the same inclusion ratio as defined in Section 2642(a) of the Code. The Trustee shall not be obligated to combine such trusts. If trusts which are combined are to terminate at different times, the combined trust shall terminate in stages, with a pro rata portion of the combined trust being distributed to the appropriate beneficiaries when each such trust terminates. If trusts which are combined are to terminate at the same time but have different contingent beneficiaries, the remaining property of the combined trust shall be divided pro rata among the contingent beneficiaries of each trust. Any such pro rata distributions shall be made in proportion to the value of each trust at the time such trusts were combined.

E.    **Maximum Duration of Trusts.** Each trust created by this Trust Agreement, unless earlier terminated according to the terms of this Trust Agreement, shall continue in perpetuity if so permitted under the governing law of such trust. If a trust is not permitted under the governing law of such trust to continue in perpetuity, then such trust shall terminate on the latest date which will enable such trust to comply with the common-law or statutory rule against perpetuities of the governing law of such trust. If applicable, for purposes of determining the date by which such trust must terminate under such governing law, the maximum duration of such trust shall be measured by the following persons who are living on the Settlor's date of death: (1) the Wife, (2) the descendants of the Settlor's parents, (3) the descendants of the Wife's parents, and (4) all of the persons who are specifically named as the Settlor's Beneficiaries in Article III. If the governing law of a trust provides that a separate rule against perpetuities or similar rule applies only to certain types of property, such as (without limitation) real property, then such shorter period of duration shall apply solely to such property, and the remainder of the trust shall continue to be held in trust

8

for the maximum permissible period under such governing law. If the Trustee at any time combines and administers as one trust any trust or trusts created hereunder and any trust or trusts under any other instrument, such combined trust shall not continue beyond the date on which either of such trusts would, without regard to such combination, have been required to terminate under the rule against perpetuities or other applicable law governing the maximum duration of trusts. If any trust (including a combined trust) would, but for the terms of this Section, continue beyond such date, such trust shall nevertheless at that time terminate and the remaining property of such trust shall be distributed to the Beneficiary or Ward of such trust.

      F.    **General Power of Appointment.** If, without regard to this Section, any part of a trust would be subject to the imposition of a generation skipping transfer tax upon the death of the Beneficiary thereof, then such Beneficiary shall have the general testamentary power to appoint all or any part of such Beneficiary's trust to the creditors of such Beneficiary's estate; provided that such general power shall not apply to more than the largest amount, if any, of such Beneficiary's trust where the marginal estate tax together with any state inheritance or estate tax (after taking into account all available credits) that would be attributable to the inclusion of such trust in the Beneficiary's gross estate would be less than the marginal generation skipping transfer tax (after taking into account all available credits) that would be attributable to such trust if taxed as a taxable termination. Such power shall be exercisable only by specific reference in such Beneficiary's Will. If any estate, inheritance or other death taxes are payable by reason of such Beneficiary's death as a result of the inclusion of all or any portion of the unappointed property of such Beneficiary's trust in such Beneficiary's gross estate because of this general power of appointment, the Trustee of such trust shall pay to the executors, personal representatives, or administrators of such Beneficiary's estate from the remaining unappointed property of such Beneficiary's trust the difference between the amount of such taxes that are payable and the amount of such taxes that would be payable if such Beneficiary did not possess this general power of appointment over any portion of his or her trust, unless such Beneficiary shall direct otherwise in his or her Will.

      G.    **Support Obligation.** Notwithstanding anything to the contrary in this Trust Agreement, the Trustee, other than an Independent Trustee as defined in Section 674(c) of the Code, shall make no distributions of income or principal of any trust that would to any extent reduce or discharge a legal or contractual obligation of any person to support any other person.

      H.    **Allocation of GST Exemption.** The Trustee, in the Trustee's discretion, may assist the executor, personal representative, or administrator of the estate of the Settlor in allocating any remaining portion of the Settlor's GST exemption amount to any property as to which the Settlor is the transferor, including any property transferred by the Settlor during life as to which the Settlor did not make an allocation prior to the Settlor's death and/or among any generation skipping transfers (as defined in Section 2611 of the Code) resulting under this Trust Agreement and/or that may later occur with respect to any trust established under this Trust Agreement, and the Trustee

060009

shall never be liable to any person by reason of such allocation, if it is made in good faith and without gross negligence. The Trustee may, in the Trustee's discretion, set apart, to constitute two separate trusts, any property which would otherwise have been allocated to any trust created hereunder and which would have had an inclusion ratio, as defined in Section 2642(a) of the Code, of neither one nor zero so that one such trust has an inclusion ratio of one and the other such trust has an inclusion ratio of zero. The Trustee shall not make any adjustments in the interests of any beneficiaries as the result of any such elections or allocations and shall incur no liability for making such elections or allocations if done in good faith.

### Article VII.
### Trustee Provisions

A.    **Powers.** The Trustee shall have all of the powers and authorities conferred upon trustees by statute or common law in any jurisdiction in which the Trustee may act, including all powers and authorities conferred by the Texas Trust Code and by any future amendments thereto, except for any instance in which such powers and authorities may conflict with the express provisions of this Trust Agreement, in which case the express provisions of this Trust Agreement shall control. In addition to such powers, the Trustee is specifically authorized:

> (1) To retain, without liability for any depreciation or loss occasioned by such retention, any property transferred to the Trustee by the Settlor or any other person when the Trustee determines that, because of the circumstances involved, a trust created hereunder would be better served by not diversifying the investment in such property;

> (2) To exchange, sell or lease (including leases for terms exceeding the duration of all trusts created by this Trust Agreement) for cash, property or credit, or to partition, from time to time, publicly or privately, at such prices, on such terms, times and conditions and by instruments of such character and with such covenants as the Trustee may deem proper, all or any part of the assets of each trust, and no vendee or lessee of the Trustee shall be required to look to the application made by the Trustee of any funds paid to the Trustee;

> (3) To borrow money from any source (including any Trustee) and to mortgage, pledge or in any other manner encumber all or any part of the assets of any trust as may be advisable in the judgment of the Trustee for the advantageous administration of the trusts;

> (4) To invest and reinvest each of the trust estates in any kind of property whatsoever, real or personal (including oil, gas and other mineral leases, royalties, overriding royalties and other interests), whether or not productive of income, and such investments and reinvestments may be made without regard to the proportion

10

that such property or property of a similar character held may bear to the entire trust estate if the Trustee determines that, because of the circumstances involved, such trust would be better served by not diversifying such investment or reinvestments; provided, however, the standard for assessing the investment performance of a Trustee who is an individual shall be the prudent investor rule in Section 117.003 of the Texas Uniform Prudent Investor Act, and such rule shall be applied to the investment performance of the entire portfolio, taking into account the purposes, terms and provisions stated herein, and not the investment performance of any single investment considered apart from the rest of the portfolio; provided, further, the Settlor may direct the Trustee as to the investments to be made by the Trustee, and the Trustee shall not be liable to any person for any losses resulting from following the written direction of the Settlor in investing the trust assets;

(5) To employ attorneys, accountants, investment managers, specialists and such other agents as the Trustee shall deem necessary or desirable; to have the authority to appoint an investment manager or managers to manage all or any part of the assets of any trust, and to delegate to said manager investment discretion, and such appointment shall include the power to acquire and dispose of such assets; and to charge the compensation of such attorneys, accountants, investment advisors, investment managers, specialists and other agents and any other expenses against such trust;

(6) To register and carry any securities or other property in the name of the Trustee or in the name of the nominee of any corporate Trustee (or to hold any such property unregistered) without increasing or decreasing the fiduciary liability of the Trustee; to exercise any option, right or privilege to purchase or to convert bonds, notes, stocks (including shares or fractional shares of stock of any corporate Trustee), securities or other property, and to borrow money for the purpose of exercising any such option, right or privilege; to vote any stock which may be held in the trusts; and if two or more Trustees are serving hereunder and no such Trustee is a corporate Trustee, to open any type of account in such a manner that all activities associated with such account may be handled by one of the Co-Trustees acting alone;

(7) To enter into any transaction on behalf of any trust (including loans to beneficiaries for adequate security and adequate interest) despite the fact that another party to any such transaction may be (i) a trust of which any Trustee under this Trust Agreement is also a trustee; (ii) an estate of which any Trustee under this Trust Agreement is also an executor, personal representative, or administrator; (iii) a business or trust controlled by any Trustee under this Trust Agreement or of which any such Trustee, or any director, officer or employee of any such corporate Trustee, is also a director, officer or employee; or (iv) the Settlor, the Wife, any other beneficiary, or any Trustee under this Trust Agreement acting individually;

(8) To make, in the Trustee's discretion, any distribution required or permitted to be made to any beneficiary under any trust established by this Trust

11

Agreement, in any of the following ways when such beneficiary is a minor or is incapacitated: (i) to such beneficiary directly; (ii) to the guardian or conservator of such beneficiary's person or estate; (iii) by applying the required or permitted distribution for the benefit of such beneficiary; (iv) to a person or financial institution serving as custodian for such beneficiary under a uniform transfers to minors act of any state; (v) by reimbursing or advancing funds to the person who is actually taking care of such beneficiary (even though such person is not the legal guardian or conservator) for expenditures made or to be make by such person for the benefit of such beneficiary; and (vi) by managing such distribution as a separate fund on the beneficiary's behalf, subject to the beneficiary's continuing right to withdraw the distribution; and the written receipts of the persons receiving such distributions shall be full and complete acquittances to the Trustee;

(9)      To access, manage, modify, control, use, continue, cancel, deactivate, delete, transfer, or archive the Settlor's Digital Accounts and Digital Assets, and to access, control, use, deactivate, or dispose of the Settlor's Digital Devices. "Digital Accounts" are electronic systems for creating, generating, sending, sharing, communicating, receiving, storing, displaying, or processing information which provides access to a Digital Asset which is stored on any type of Digital Device, regardless of the ownership of the Digital Device upon which the Digital Asset is stored, including but not limited to, email accounts, social network accounts, social media accounts, file sharing accounts, health insurance accounts, health-care accounts, financial accounts, credit card accounts, travel-related accounts, domain registration accounts, domain name service accounts, web hosting accounts, tax preparation service accounts, online store accounts and affiliate programs thereto, including accounts with publishers, internet service providers, retail vendors, utility companies and other online accounts which currently exist or may exist as technology develops or such comparable items as technology develops. "Digital Assets" mean data, files, text messages, emails, documents, audio, video, images, sounds, social media content, social networking content, apps, codes, health care records, health insurance records, credit card points, travel-related miles and points, computer source codes, computer programs, software, software licenses, databases, or the like, including access credential such as usernames, passwords and answers to secret questions, which are created, generated, sent, communicated, shared, received, or stored by electronic means on a Digital Device. "Digital Devices" are electronic devices that can create, generate, send, share, communicate, receive, store, display, or process information, and such electronic devices shall include, but are not limited to, servers, desktops, laptops, tablets, peripherals, mobile telephones, smartphones, personal digital assistants, electronic books, electronic watches, electronic body and activity monitoring equipment, audio and video recorders, flash drives, hard drives, digital memory cards, and any similar storage device which currently exists or may exist as technology develops or such comparable items as technology develops;

(10) To purchase any of the property (including speculative investments) in the testamentary estate of either the Settlor or the Wife at its fair market value and

060012

to retain any property so acquired without liability for depreciation or loss occasioned by such purchase and retention;

(11) To lend money to the testamentary estate of either the Settlor or the Wife upon adequate security and for adequate interest;

(12) To invest the trust assets in any life insurance policy or policies (including term insurance) on the life of one or more of the beneficiaries of the trusts, or on the life of any person or persons in whom one or more of the beneficiaries of the trusts have an insurable interest;

(13) To store personal property given to a person who is a minor or who is incapacitated for later distribution to such person, or to sell such property and add the proceeds of sale to a trust of which such person is a beneficiary;

(14) To allocate or transfer at any time all or any portion of the property of any trust established by this Trust Agreement as the Trustee, in the Trustee's discretion, deems advisable to the trustee of one or more other trusts (a "Recipient Trust") created by the Settlor, the Trustee, or any other person, as long as the following conditions are satisfied: (i) the Recipient Trust must exclusively benefit the same beneficiary or beneficiaries as the trust from which the property was allocated or transferred; (ii) all distributions from a Recipient Trust must be made with the same distribution standards provided in this Trust Agreement; (iii) the Recipient Trust must not include any power or provision that would constitute a general power of appointment held by the trustee within the meaning of Section 2041 of the Code (except for a general power, if any, already provided by this Trust Agreement); and (iv) if any such allocation or transfer made to a Recipient Trust violates the applicable rule against perpetuities, such Recipient Trust shall provide that with respect to such portion allocated or transferred, the perpetuities period shall be properly adjusted so that it is not violated. The Recipient Trust may be subject to and administered under the laws of a different jurisdiction than the laws which govern the trust created hereunder. In making any allocation or transfer of any portion of the property of a trust created hereunder, the Trustee may allocate or transfer the same in kind, including undivided interests therein, or in its discretion may allocate or transfer all or any part of such trust's property, and make such allocation or transfer in cash, or in kind, or partly in cash and partly in kind. The authority of the Trustee to exercise this power shall not be limited by any statute that would restrict the Trustee's authority absent the authorization herein conferred on the Trustee and, furthermore, the exercise of this power shall not require the consent of any beneficiary who may be potentially affected thereby, whether beneficially or adversely;

(15) To make divisions, partitions, or distributions in money or in kind, or partly in each, whenever required or permitted to divide, partition, or distribute all or any part of any trust; and, in making any such divisions, partitions, or distributions, the judgment of the Trustee in the selection and valuation of the assets

13

to be so divided, partitioned, or distributed shall be binding and conclusive, and the Trustee shall not be liable for any differing tax consequences to the beneficiaries of the trusts created hereunder; and, further, the Trustee shall be authorized to make distributions from the trusts created by this Trust Agreement on a non-pro rata basis, including but not limited to non-pro rata distributions of community property, and in the case of non-pro rata distributions of principal from a trust, no such distributions shall be charged against the share or shares of such trust ultimately allocated to any beneficiary or trust upon termination thereof;

(16) To release, in the discretion of the Trustee, any fiduciary power at any time, in whole or in part, temporarily or permanently, whenever the Trustee may deem it advisable, by an instrument in writing executed and acknowledged by the Trustee;

(17) To invest and reinvest all or part of the assets of any trust in any common trust fund of any corporate Trustee;

(18) To open and maintain margin accounts or similar accounts with brokerage firms, banks or others for purposes of investing the properties of each trust; to conduct, maintain and operate these accounts, directly or through designation of another as agent, for purchase, sale and exchange of stocks, bonds, commodities, options (including puts and calls, both covered and uncovered), and other securities; and in connection therewith, to borrow money, obtain guarantees and engage in all other activities necessary or incidental to conducting, maintaining and operating such accounts;

(19) To continue any business (whether a proprietorship, corporation, partnership, limited partnership or other business entity) which may be transferred to any trust for such time as the Trustee may deem it to be in the best interest of the trusts; to employ in the conduct of any such business such capital out of any trust as the Trustee may deem proper; to borrow money for use in any such business alone or with other persons financially interested in such business, and to secure such loan or loans by a mortgage, pledge or any other manner of encumbrance of, not only the trusts' interest in such business, but also such portion of the trusts outside of such business as the Trustee may deem proper; to organize or acquire, either alone or jointly with others, corporations, partnerships, limited partnerships, limited liability companies or other business entities; and generally to exercise with respect to the continuance, management, sale or liquidation of any business which may be transferred to each of the trust estates, or of any new business or business interest, all the powers which may be necessary for its successful operation;

(20) To execute lease, pooling or unitization agreements (including agreements of such nature extending beyond the terms of the trusts) with respect to any mineral or royalty interest held or acquired by the trusts; to drill or contract for the drilling of wells for oil, gas or other minerals; to make dry hole or bottom hole contributions; to enter into any operating agreements with reference to any mineral

14

leases or properties held or acquired by the trusts; and generally, with reference to oil, gas and other mineral properties and operations, to enter into such agreements and to do all such other things (whether or not presently recognized as common or proper practice by those engaged in the business of prospecting for, developing, producing, processing, transporting or marketing oil, gas or other minerals) as the Trustee may deem to be advantageous;

(21) To transfer such sums of the property of the Settlor to an individual serving as agent or attorney-in-fact under a valid power of attorney signed by the Settlor (or to several individuals serving jointly as agents or attorneys-in-fact under a valid power of attorney signed by the Settlor) as such agent or agents may request in order to make gifts, which are specifically authorized by such power of attorney, on behalf of the Settlor, or alternatively, to transfer such sums of the property of the Settlor directly to one or more persons or charities as directed by the Settlor's agent or attorney-in-fact under a valid power of attorney as long as such transfers are specifically authorized by such power of attorney;

(22) To select and employ, at the discretion of the Trustee but at the expense of the trusts, any person, firm or corporation, engaged in rendering investment advisory services or investment management services, to furnish professional assistance or management in connection with making investments, managing securities, or making any other decisions with respect to the purchase, retention, sale or other disposition of property or securities belonging to the trusts; and

(23) To employ a bank or trust company located anywhere within the United States, at the discretion of the Trustee but at the expense of the trusts, as custodian or agent; to have stock and securities registered in the name of such agent or custodian or a nominee thereof without designation of fiduciary capacity; and to appoint such bank or trust company to perform such other ministerial functions as the Trustee may direct. While such stock or securities are in the custody of any such bank or trust company, the Trustee shall be under no obligation to inspect or verify such stock or securities nor shall the Trustee be responsible for any loss by such bank or trust company.

B.      **Property, Books of Account and Records.** All properties, books of account and records of each trust shall be made available for inspection at all times during normal business hours by the Settlor or by any person designated by the Settlor. Prior to the death of the Settlor, the Trustee shall provide an accounting to the Settlor, if requested by the Settlor. Furthermore, except as otherwise provided in this Section, following the death of the Settlor, within 60 days of receiving a written request from a beneficiary of a trust created hereunder who is entitled to receive an accounting, the Trustee shall furnish an accounting to such beneficiary. Any such accounting shall comply with the requirements of the Texas Trust Code and shall be deemed correct and binding one year after receipt by the requesting beneficiary. Notwithstanding the foregoing, with regard to each beneficiary of a trust (i) who is neither entitled nor permitted to receive current

15

distributions from such trust and who would receive no distribution from such trust if it were to then terminate, or (ii) who is under 25 years of age, the Trustee shall be relieved of the duty to keep such beneficiary reasonably informed concerning the administration of such trust and the material facts necessary for such beneficiary to protect such beneficiary's interest. Further, the Trustee shall not be required to respond to a request for an accounting from a beneficiary described in subsection (i) above.

      C.    **Allocation of Principal and Income.** The Trustee shall determine, in the Trustee's discretion, the allocation or apportionment of all receipts and disbursements between income and principal; provided, however, in exercising this discretion, the Trustee may consider the provisions of the Texas Uniform Principal and Income Act but shall not be bound by those provisions.

      D.    **Notice.** Any notice required or permitted to be given by or to a person or a Trustee acting under this Trust Agreement must be given by acknowledged instrument actually delivered to the person or Trustee to whom it is required or permitted to be given. Any notice required or permitted to be given to a minor shall be given to such minor's parent who is closest in relation to the Settlor, or if no such parent is able to receive such notice, to such minor's guardian. Any notice required or permitted to be given to an adult incapacitated person shall be given to such adult incapacitated person's guardian or conservator. If such notice concerns a trusteeship, it shall state its effective date and shall be given at least 30 days prior to such effective date, unless such period of notice is waived. Any action permitted to be taken by a minor shall be taken by such minor's parent who is closest in relation to the Settlor, or if no such parent is able to take such action, by such minor's guardian. Any action permitted to be taken by an adult incapacitated person shall be taken by such adult incapacitated person's guardian or conservator.

      E.    **Acts of Prior Trustees.** Each Trustee shall be relieved of any duty to examine the acts of any prior Trustee and no court accounting shall be required. Each successor Trustee shall be responsible only for those properties which are actually delivered to such Trustee. Each successor Trustee, upon executing an acknowledged acceptance of the trusteeship and upon receipt of those properties actually delivered to such successor Trustee, shall be vested with all of the estates, titles, rights, powers, duties, immunities and discretions granted to the prior Trustee.

      F.    **Reliance on Legal Opinion.** In acting or declining to act, each Trustee may rely upon the written opinion of a competent attorney, any facts stated in any instrument in writing and believed true, or any other evidence deemed sufficient. Each Trustee shall be saved harmless from any liability for any action taken, or for the failure to take any action, if done in good faith and without gross negligence.

      G.    **Administration As Single Trust.** The Trustee shall keep a separate account for each of the separate trusts created under this Trust Agreement, but all of such trusts may be administered as a single fund. Joint investments or interests in investments may be assigned to such trusts, with each trust being credited with an undivided interest in all joint investments in the

16

proportion which is assigned to it or in the proportion which its contribution to such investments bears to the whole.

**H.**     **Undistributed Income.** At the end of the accounting year of a trust where the income is not required to be distributed, any undistributed income shall be added to principal; provided, however, any distributions from a trust made pursuant to Section 663(b) of the Code shall be deemed to have been made on the last day of such trust's preceding accounting year.

## Article VIII.
### Other Miscellaneous Trusts

**A.**     **Subchapter S Stock.** Notwithstanding any provision in this Trust Agreement to the contrary, after the death of the Settlor, if any stock of an S corporation (as defined in Section 1361(a) of the Code) is to be distributed to the Trustee of any trust created under this Trust Agreement, the Trustee may, in the Trustee's discretion, elect to treat such stock as owned by a qualified subchapter S trust (as defined in Section 1361(d)(3) of the Code) or as owned by an electing small business trust (as defined in Section 1361(e) of the Code). If the Trustee elects to treat any such stock as owned by an electing small business trust, the Trustee shall apportion to such trust a reasonable share of the unallocated expenses of all the trusts created under this Trust Agreement, as required by the Code and the related Treasury Regulations. The Trustee shall not be liable to any beneficiary if the election to treat such stock as owned by an electing small business trust results in additional taxes or in the loss of income tax deductions or credits. If the Trustee elects to treat any such stock as owned by a qualified subchapter S trust (referred to herein as an "S corporation trust"), then within the time period prescribed by Section 1361(c) of the Code, the Trustee shall instead hold such S corporation stock in a separate S corporation trust for the benefit of the primary beneficiary of the trust from which such stock is set aside. Each S corporation trust shall have identical provisions as the trust from which such S corporation stock was set aside (including the termination provisions) except that each such S corporation trust shall require that: (1) such primary beneficiary shall be sole beneficiary of the S corporation trust created for his or her benefit under this section, and no income or principal shall be distributed to any person other than the primary beneficiary; (2) all of the income of each S corporation trust shall be distributed to the primary beneficiary at least annually and, upon the death of the primary beneficiary, any accrued but unpaid income shall be distributed to such primary beneficiary's estate (and principal distributions may be made to the primary beneficiary in the manner specified in the trust from which such stock is set aside); and (3) the election under Section 1361(d)(2) of the Code shall be made in the manner and within the time required by said Section. Any trust to which the provisions of this section apply is intended to constitute a qualified subchapter S trust, as defined in Section 1361(d)(3) of the Code, or an electing small business trust, as defined in Section 1361(e) of the

17

Code, and any provision of this Trust Agreement which may conflict with or fail to satisfy this intention shall be disregarded, reconciled or amplified to accomplish this objective. References to "stock" in this paragraph shall include the ownership units of an entity other than a corporation if such entity has elected to be classified as an S corporation.

 **B.** **Contingent Trusts.** With regard to any property which will pass outright to a beneficiary upon the death of the Settlor or upon the termination of a trust created hereunder, if such property is to be distributed to a person who is under the age of 40 or who is incapacitated (such person is referred to as the "Ward"), the Trustee shall hold such property in a separate trust for the benefit of such Ward; provided, however, the provisions of this Section shall not apply to property distributed to the Wife. The Trustee shall distribute to the Ward of each trust such amounts of the income and principal of such trust as the Trustee, in the Trustee's discretion, deems desirable from time to time to provide for such Ward's health, support, maintenance or education, directly and without the interposition of any guardian or conservator. Each trust created by this Section for a Ward who is under age 40 shall terminate when such Ward attains that age. Each trust created by this Section for a person who is incapacitated shall terminate when the Ward of such trust, in the Trustee's discretion, is no longer incapacitated. Upon the termination of a trust created by this Section, the remaining property of such trust shall be distributed to the Ward of such trust, but if a Ward dies before the termination of such Ward's trust, then upon such Ward's death the remaining property of such trust shall be distributed to such Ward's estate. Notwithstanding the foregoing provisions of this Section, the Trustee, in the Trustee's discretion, may hold the property that would have otherwise been distributed to a Ward's trust as custodian under the uniform transfers to minors act of any state, as it is the Settlor's intention to ensure maximum flexibility in the administration of such property.  The beneficiary may receive 1/3 of their trust balance at the age of 25 and another 1/3 at the age of 30 and the final distribution at the age of 40.

**Article IX.**
**Miscellaneous Provisions**

 **A.** **Additions To Trust.** The Settlor, or any other person, may at any time, grant, transfer or convey, either by inter vivos transfer or by Will, to the Trustee such additional property as he or she desires to become a part of any trust hereby created and, subject to acceptance by the Trustee, such additional property shall be allocated to the trusts on the basis specified in the instrument by which such property is transferred, and shall thereafter be held, administered and distributed by the Trustee in accordance with the provisions of this Trust Agreement.

 **B.** **Separate Property; Trust Names.** After the death of the Settlor, the beneficial interests of a beneficiary in any trust created under this Trust Agreement, as well as any income or

18

principal distributed to such beneficiary, shall be the separate property and estate of such beneficiary. In addition, the Trustee may choose the name which is given to a trust created hereunder, even if the name chosen differs from that otherwise provided for herein, and the Trustee may also rename a trust created hereunder at any time and for any reason (by acknowledged instrument and without a court order approving such change).

      **C.**     **Spendthrift Provisions.** After the death of the Settlor, each trust created by this Trust Agreement shall be a spendthrift trust to the fullest extent allowed by law. Prior to the actual receipt of trust property by any beneficiary, no property (income or principal) distributable under any trust created by this Trust Agreement shall, voluntarily or involuntarily, be subject to anticipation or assignment by any beneficiary, or to attachment by or to the interference or control of any creditor or assignee of any beneficiary, or be taken or reached by any legal or equitable process in satisfaction of any debt or liability of any beneficiary, and any attempted transfer or encumbrance of any interest in such property by any beneficiary hereunder prior to distribution shall be void.

      **D.**     **Disclaimer.** Any person (referred to herein as the "Disclaimant") who would be the primary beneficiary of a trust provided for under this Trust Agreement, acting alone and without the joinder of any other person, shall have the right to disclaim all or any portion of any property that would (absent such disclaimer) be distributable or payable to a trust of which such person would be the primary beneficiary. Any property (or portion thereof) so disclaimed shall be payable in the same manner as would have been the case had the Disclaimant failed to survive the Settlor. In the case of any trust provided for under this Trust Agreement to which property (or a portion thereof) becomes payable by reason of a disclaimer, then, notwithstanding any provision in this Trust Agreement to the contrary, the Disclaimant shall have no power or authority (whether a fiduciary or non-fiduciary power or authority) with respect to such trust and shall have no beneficial interest in such trust that, if it were held or possessed by such Disclaimant after the disclaimer, would cause the disclaimer to fail to be a qualified disclaimer (as defined in Section 2518(b) of the Code). However, the Disclaimant may (except to the extent expressly disclaimed in the instrument of disclaimer) continue to have or possess such powers and authorities (whether fiduciary or non-fiduciary powers or authorities) as to such trust and such beneficial interests in such trust as otherwise conferred by this Trust Agreement that would not cause the disclaimer to fail to be a qualified disclaimer. Any disclaimer pursuant to this Section shall be made in the manner provided by law and may be made by the personal representative of a deceased primary beneficiary, by the guardian of the estate of a minor, or by the guardian or conservator of the estate of an incapacitated primary beneficiary even if such personal representative, guardian, or conservator may personally benefit, directly or indirectly, by reason of the disclaimer. The person who would be the primary beneficiary of a trust is the person designated as the primary beneficiary thereof in this Trust Agreement or, if the trust has only one current beneficiary, such current

19

beneficiary.

**E.**  **GST Exemption Amount.** References to the Settlor's "GST exemption amount" shall be the maximum amount of the Settlor's GST exemption, as defined in Section 2631 of the Code, available to the Settlor and the Settlor's estate at the time of the Settlor's death, after taking into account all allocations of the Settlor's GST exemption made by the Settlor pursuant to Section 2632(a) of the Code during the Settlor's lifetime, as well as all deemed and automatic allocations occurring during the Settlor's lifetime and at the Settlor's death. In satisfying any distributions of such Settlor's GST exemption amount, the Trustee may make distributions in cash or in kind, or partly in each and shall value each such property at the date of its distribution.

**F.**  **Descendants.** References to "descendant" or "descendants" mean lineal blood descendants of the first, second or any other degree of the ancestor designated; provided, however, that such references shall include, with respect to any provision of this Trust Agreement, descendants who have been conceived at any specific point in time relevant to such provision and who thereafter survive birth; and provided, further, an adopted child and such adopted child's lineal descendants by blood or adoption shall be considered under this Trust Agreement as lineal blood descendants of the adopting parent or parents and of anyone who is by blood or adoption a lineal ancestor of the adopting parent or of either of the adopting parents.

**G.**  **Discretion.** Whenever in this Trust Agreement an action is authorized in the discretion of the Trustee, the term "discretion" shall mean the reasonable discretion of the Trustee.

**H.**  **Incapacitated.** A beneficiary (other than the Settlor) shall be deemed "incapacitated" if the Trustee, in the Trustee's discretion, determines that such beneficiary lacks the ability, due to a physical or mental condition, to manage his or her own personal and financial affairs. The Settlor or a Trustee shall be deemed "incapacitated" if and for as long as (i) a court of competent jurisdiction has made a finding to that effect, (ii) a guardian or conservator of the Settlor's or such Trustee's person or estate has been appointed by a court of competent jurisdiction and is serving as such, or (iii) one physician (licensed to practice medicine in the state where the Settlor or Trustee is domiciled at the time of the certification, and who is board certified in the specialty most closely associated with the cause of the Settlor's or Trustee's incapacity) certifies that due to a physical or mental condition the Settlor or Trustee lacks the ability to manage his or her own personal and financial affairs. A Trustee shall immediately cease to serve upon being deemed incapacitated. The Settlor shall be deemed to have regained capacity if there is a finding to that effect by a court of competent jurisdiction or if one physician (with the same qualifications described above) certifies that the Settlor is capable of managing the Settlor's personal and financial affairs.

**I.**  **Internal Revenue Code.** References to various Sections of the "Code" are to such designated Sections of the Internal Revenue Code of 1986, as amended.

**J.**  **Heirs.** References to "heirs" are to those persons who would inherit separate

20

personal property from the person designated under the statutes of descent and distribution of the State of Texas, if such person died intestate and single at such time.

**K.**   **Governing Law.** The construction, validity and administration of each trust created under this Trust Agreement shall be controlled by the laws of the State of Texas. After the death of the Settlor, the Trustee may designate the laws of another jurisdiction as the controlling law with respect to the construction, validity and administration of a particular trust if either (i) the Trustee resides in, or administers that trust in, such designated jurisdiction (or in the case of a corporate Trustee, if such corporate Trustee is chartered in such designated jurisdiction), or (ii) the primary beneficiary of such trust resides in such designated jurisdiction, in which case the laws of such designated jurisdiction shall apply to such trust as of the date specified in such designation. Any such designation shall be in writing and shall be delivered to each beneficiary of the affected trust.

**L.**   **Per Stirpes.** When a distribution is to be made to a person's descendants "per stirpes," property shall be divided into as many equal shares as there are (i) living children of such person, if any, and (ii) deceased children who left descendants who are then living. Each living child shall receive one share, and the share that would have passed to each deceased child shall be divided in a similar manner (by reapplying the preceding rule) among his or her then living descendants. For example, if a person has deceased children and living children when a distribution is to be made, the assets will be divided into equal shares at the child level and distributed per stirpes below that level; however, if the person has no living children at that time, that equal division will still be made at the child level and distributed per stirpes below that level. This definition is intended to override any conflicting or contrary common law definition. In the case of a distribution which is to be made "per stirpes" in the event of the death of the Settlor, references in this Section to "then living" or to "living" shall mean persons who survive the Settlor.

IN WITNESS WHEREOF, the Settlor and the Trustee have hereunto set their hands as of the date first above written.

JAMES E SEEGAN, Settlor

JAMES E SEEGAN, Trustee

STATE OF TEXAS                     §
                                   §
COUNTY OF DALLAS                   §

21

This instrument was acknowledged before me on the ___16___ day of _____April____, in the year 2019, by JAMES E SEEGAN as Settlor and as Trustee of the James E Seegan Revocable Trust.

_____
Notary Public, State of Texas

JOHN S COSENZA
Notary ID #130101058
My Commission Expires
February 3, 2023

22

**060022**

```
00001:01                    EXHIBIT 062

     02 FILE NAME:      01-21-2020_08.19.53.1a_-_20249_

     03                 -_Jennifer_Jennings_-_972_658_6113_(voice).WAV

     04 DATE:           Jan 21, 2020

     05 DURATION:       02:21

     06 PARTICIPANTS:  Keith Todd Ashley (ASHLEY)

     07                 Jennifer Jennings (JENNINGS)

     08 JENNINGS:       Thank you for calling customer contact.

     09                 This is Jennifer. May I have your name and

     10                 the policy number?

     11 ASHLEY:         Yes, my name is Keith Ashley. My agent code

     12                 is 0YR6. And I am calling about the last

     13                 name is Seegan:  S-E-E-G-A-N. And his policy

     14                 number is... hold on I'm pulling it up now.

     15                 The policy number I'm... calling about is

     16                 1505080593.

     17 JENNINGS:       Thank you. One moment for me. All right,

     18                 how can I help?

     19 ASHLEY:         Yes, this client sent, uh, uh- uh, I guess

     20                 a beneficiary change form, I believe Thursday

     21                 late or maybe even Friday morning-

     22 JENNINGS:       Mm-hmm.

     23 ASHLEY:         -wants to know what the status is if you

     24                 received it. He said he sent it up and he

     25                 wanted to make sure that it was in good
```

```
00002:01                 order because he made his trust a

     02                  beneficiary, and he wanted to make sure he

     03                  filled out all of the appropriate paperwork.

     04 JENNINGS:        Sure.

     05 ASHLEY:          And I will call up this morning and find out.

     06 JENNINGS:        So, we did receive it. Um, it was just

     07                  uploaded to our system yesterday for

     08                  processing. So, I'm not certain yet, Ja- uh-

     09                  Jason, if it's in good order. I might need a

     10                  couple more days.

     11 ASHLEY:          My name's Keith.

     12 JENNINGS:        Keith! I'm sorry. Oh, my goodness.

     13 ASHLEY:          Oh yeah-

     14 JENNINGS:        I wonder where I got Jason from. [Laughs]

     15 ASHLEY:          I was gonna ask-

     16 JENNINGS:        Too early in the morning! [Laughs]

     17 ASHLEY:          My best man at my wedding's name was Jason.

     18 JENNINGS:        [Laughs]

     19 ASHLEY:          I mean, I- I mean, do you know him? I mean...

     20 JENNINGS:        [Laughs] Oh, goodness!

     21 ASHLEY:          That was 25 years ago, but yeah.

     22 JENNINGS:        Oh, sorry about that. Um...

     23 ASHLEY:          No, yeah.

     24 JENNINGS:        It's still in processing. I won't know if

     25                  it's in good order probably until tomorrow-
```

```
00003:01              maybe even Thursday. Our beneficiary changes

      02              do take seven b- uh, calendar days for

      03              processing, especially when they're going

      04              through a trust. They have to go through it

      05              with a fine-tooth comb, but you can assure

      06              him that everything is here and we're

      07              working on it.

      08 ASHLEY:      Okay. I will call back maybe later on

      09              tomorrow afternoon or the following day.

      10 JENNINGS:    That sounds perfect!

      11 ASHLEY:      All right, thank you!

      12 JENNINGS:    Absolutely, have a great day now.

      13 -1-

      14

      15
```

```
00001:01                    EXHIBIT 064

      02

      03 FILE NAME:      01-23-2020_10.54.41.1a_-_20202_-

      04                 _Rachel_Appel_-

      05                 _214_324_6100_(Voice).WAV

      06 DATE:           January 23, 2020

      07

      08 DURATION:       00:08:23

      09

      10 PARTICIPANTS: Rachel Appel (APPEL)

      11               Keith Todd Ashley (ASHLEY)

      12

      13 APPEL:    Thank you for calling customer contact. My

      14           name is Rachel. Could I have your name

      15           please?

      16 ASHLEY:   Yes, my name is Keith Ashley. Um, my agent

      17           code is 0YR6. I am calling back to follow

      18           up on a last name- uh, let me give you a

      19           policy number here. I'm pulling it up.

      20           One second here. Hold on one second.

      21           I'm sorry. Hold on.

      22 APPEL:    No, you're totally fine.

      23 ASHLEY:   [U/I]-

      24 APPEL:    You take your time.

      25 ASHLEY:   My computer just went blank and I had to
```

```
00002:01           reload it, hold on. [Laughs]

      02 APPEL:    [Laughs] That's okay.

      03 ASHLEY:   Pull up his-

      04 APPEL:    Technology's great when it wants to help you

      05           out, but- [Laughs]

      06 ASHLEY:   Yes. [Beeping] Okay, come on. Here, let me

      07           see, um...

      08 APPEL:    [Laughs]

      09 ASHLEY:   Hold on, here. Uh... [U/I]... Hold on a

      10           second.

      11 APPEL:    'Kay.

      12 ASHLEY:   Okay. All right, you ready?

      13 APPEL:    Yes, I'm ready.

      14 ASHLEY:   Okay. Um, policy number is going to be

      15           1505080593. Last name, Seegan. He called me

      16           'cause he's following up again on, um... He

      17           sent up a beneficiary change form and we

      18           want to know what the status is on that.

      19 APPEL:    Oh, okay. That's simple enough, here. We can

      20           help with that. Just a moment. Did he

      21           recently send that into us?

      22 ASHLEY:   Yeah, I believe we sent it on Thursday of

      23           last week.

      24 APPEL:    All right. Well, let's see what we've got

      25           here. Okay. There is a note here from our
```

```
00003:01          processing team. It looks like they reviewed

     02           that here yesterday. What they had noted

     03           here was that there was a little bit of an

     04           issue here on the form.

     05 ASHLEY:   So, what is that? So, I can get it fixed for

     06           him and tell him to send it back.

     07 APPEL:    Yeah. Just reading through this here, and if

     08           you need me [U/I] to, I can send you a copy

     09           of the old form too, to make the

     10           corrections. Um, the- Their notes state that

     11           we needed the primary and contingent

     12           beneficiaries to be stated on the

     13           beneficiary change request form. And then if [U/I]-

     14 ASHLEY:   Whoa- whoa- whoa- what about- It's a trust.

     15           The trust is the beneficiary.

     16 APPEL:    Correct.

     17 ASHLEY:   So, it- there's- He has a trust that's- that

     18           is the beneficiary. So why does he need to

     19           put contingency when there is none? It- It's

     20           the trust and the trust outlines what happens.

     21 APPEL:    Right. On- on pages three and four of the

     22           beneficiary form, which is where you'd list-

     23           three is where he'd list primaries, which is

     24           where he would list the trust. It was

     25           written, "N/A." So, we need to have the- the
```

```
00004:01        trust listed there to get that through

     02         processing. The other portion of the note

     03         here was stating that if he wants to- if you

     04         want to designate the trust as a beneficiary,

     05         list in the beneficiary section. Also, then they

     06         followed up with that certification of trust document.

     07         And it stated here... Yeah. Stated here that there is

     08         a section here where it asks, "Is this a

     09         testamentary trust?" And they checked,

     10         "Yes". Then it says, "If yes, please sign

     11         and date here and return the form. Note,

     12         nothing further is needed to- to get this

     13         completed." So, that signature and date was

     14         missing there. And then the last page, there

     15         were no signatures, dates, etcetera, there.

     16  ASHLEY: Okay, well, yeah. Please send this back to

     17         me because that is not what he was

     18         instructed to do on a recorded line from a

     19         gentleman at your office. Um, he was

     20         instructed to fill that form out identically

     21         the way he filled it out. And then, um,

     22         because he asked multiple times- I was

     23         actually on the phone as well, um, "Do we

     24         need to have the back page filled out or

     25         signed?" He goes, "Nope. It says right
```

00005:01          there, it's a testament of trust. Do not do

02          anything else." So, he didn't do anything

03          else. So, now he has to do something else.

04          So, he was told- You know what I mean?

05          Do- I mean, I need to make sure that this is

06          exactly what needs to get done, so he

07          doesn't have to do this a third time.

08 APPEL:   Absolutely. Absolutely. I'm sorry about

09          that. Let's get this corrected here.

10 ASHLEY:  Um, I- I believe it was Peter, who he spoke

11          with.

12 APPEL:   I'm sorry, what was that name?

13 ASHLEY:  I think it was Peter. I'm not sure. I'll

14          find out.

15 APPEL:   [U/I]- Okay. Otherwise, I can take a look

16          here on my side. I'll send you that, uh, the

17          letter that was also mailed out in this

18          event, too. Let's see if I can-

19 ASHLEY:  Yeah. If that could be emailed.

20 APPEL:   Sure, absolutely. [U/I] here.

21 ASHLEY:  So, I'm going to take notes again. So, he

22          needs to list the- So, can he use the same

23          form or does he have to redo the entire

24          form?

25 APPEL:   Nope. We can- We can use that same form.

```
00006:01 ASHLEY:   So, where he put "N/A," he just needs to

      02            list the trust as beneficiary.

      03 APPEL:     Yep. You would need to have that, that trust

      04            tax ID, all that jazz filled in.

      05 ASHLEY:    Okay, no, no, no. He doesn't have to have a

      06            tax ID because it's a living trust.

      07 APPEL:     [U/I] living trust, testamentary there. I

      08            apologize. So, let's see. All right. For me

      09            to email this over here, I'm going to email

      10            a couple documents- is it okay if I send

      11            that to your Keith@northtexasmoney.com?

      12 ASHLEY:    Yes ma'am, that's fine.

      13 APPEL:     Okay, perfect. Just drafting this up here.

      14            I'll include the letter that was sent out

      15            from our processing team to confirm the

      16            missing information. Any corrections made to

      17            the existing form, um, I can- I can enclose

      18            a new one if you- if you'd like to have that

      19            one enclosed as well, it's completely up to

      20            you. Um, but you're able to make the

      21            corrections there on that form. And then the

      22            policy owner would just need to- to initial

      23            those corrections as they're made.

      24 ASHLEY:    Okay. And you're emailing that to me now.

      25 APPEL:     Yep. You should have that here momentarily
```

```
00007:01          in your inbox.

      02 ASHLEY:   And then that explains what... Okay, so, just

      03           to make it clear, um, on the beneficiary, he

      04           needs to put the trust.

      05 APPEL:    Mm-hmm.

      06 ASHLEY:   Then, what was the next thing?

      07 APPEL:    [U/I]-

      08 ASHLEY:   He needs to i- sign where it says that

      09           testamentary or not, [U/I] blah, blah, blah,

      10           he needs to sign and date that.

      11 APPEL:    Yep.

      12 ASHLEY:   Correct?

      13 APPEL:    Correct.

      14 ASHLEY:   Then, on the last page, he needs to do what now?

      15 APPEL:    [U/I] just needs the signature and date there.

      16 ASHLEY:   Signature of who?

      17 APPEL:    The signature of the- of the policy owner,

      18           making the change. Let's get that form

      19           pulled up here one more time.

      20 ASHLEY:   Yeah, I- I could have sworn, I mean, I don't

      21           have a copy of it, but I will get a copy and

      22           we'll get this done. But, um..

      23 APPEL:    Uh, the bottom page, um, page seven out of

      24           seven, there it says, "Signature of trustee.

      25           The trustee on behalf of the- the trust,"
```

```
00008:01           here. So, in this case it would be Ja-

      02 ASHLEY:   The trustee has to sign it?

      03 APPEL:    Correct. Sign and date it.

      04 ASHLEY:   Does the trustee have to sign in front of a

      05           notary?

      06 APPEL:    Nope. It doesn't need to be notarized. No,

      07           sir.

      08 ASHLEY:   Okay. I'll have them take care of that. All

      09           right.

      10 APPEL:    Alrighty. Any [U/I]-

      11 ASHLEY:   Thank you very much, Ma'am.

      12 APPEL:    Absolutely. Thank you, sir. Have a good day.

      13 ASHLEY:   Uh-huh, buh-bye.

      14   -1-

      15   -

      16   -

      17   -
```

```
00001:01                    EXHIBIT 066

     02

     03 FILE NAME:          01-24-2020_09.04.56.3a_-_20235_-

     04                     _Paula_Diaz_-

     05                     _972_658_6113_(Voice).WAV

     06

     07 DATE:               January 24, 2020

     08 DURATION:           00:04:50

     09

     10 PARTICIPANTS:       Paula Diaz (DIAZ)

     11                     Keith Todd Ashley (ASHLEY)

     12

     13 DIAZ:               Thank you for calling customer contact. My

     14                     name is Paula. May I please start with

     15                     your name?

     16 ASHLEY:             Yeah. I'm Keith Ashley. I'm [U/I] records

     17                     [U/I]-

     18 DIAZ:               We have a very bad connection. So, I'm not

     19                     hearing what you're saying. Can you try

     20                     that again?

     21 ASHLEY:             Can you hear me now?

     22 DIAZ:               That's better. Yep.

     23 ASHLEY:             Okay. All right. My name is Keith Ashley,

     24                     agent code 0YR6. I'm calling in regards

     25                     to policy number 1505080593.
```

```
00002:01 DIAZ:        'Kay. And what's the name of the insured?

      02 ASHLEY:      Last name, Seegan. Last name, Seegan. S-E-E-

      03              G-A-N. First name, James.

      04 DIAZ:        Okay. How can I help for the call today,

      05              Keith?

      06 ASHLEY:      Okay. Um, I am- just left his house and I

      07              wanna make sure that he has filled out the

      08              beneficiary change request form

      09              appropriately. He had attempted to send it

      10              in by himself and missed, or didn't complete

      11              it 100 percent. So, I wanna make sure. If

      12              you could pull up what was done wrong, and I

      13              wanna make sure that we get it right for him

      14              this time.

      15 DIAZ:        Okay. One second. Oh, he had quite a few

      16              things wrong with the form initially.

      17 ASHLEY:      Correct. I wanna make sure that we've done

      18              'em correctly.

      19 DIAZ:        'Kay.

      20 ASHLEY:      So, the first thing I believe was on page

      21              three of seven, section 4A. He had put

      22              "N/A." Now he has put, "James E. Seegan

      23              revokable trust," and 100 percent as the

      24              primary beneficiary. With the date of birth,

      25              the date of the trust, and of course his
```

```
00003:01              social security number.

     02 DIAZ:          Okay.

     03 ASHLEY:        So that is the primary beneficiary. There

     04               are no contingents because he has a trust.

     05 DIAZ:          Okay. I'm not [U/I]-

     06 ASHLEY:        So then, that's correct now, hopefully. And

     07               now on- And then of course, on page five of

     08               seven, him and his wife signed it. Then, um,

     09               on the certificate of trust agreements, he

     10               filled all of that out and on the section

     11               where it says, "Is this a testamentary

     12               trust?" He checked, "Yes." Last time, he did

     13               not sign and date that. This time he signed

     14               and date that blank right there.

     15 DIAZ:          Okay. Perfect.

     16 ASHLEY:        Then, on the name and all current trustee,

     17               he has one trustee, and then he has a

     18               contingent trustee, if the first trustee

     19               dies or does not want to do it anymore. So,

     20               he fills out all of the trustee, because

     21               only has one, all of his pertinent

     22               information, and his cell phone number, his

     23               social, his date of birth. Then, he placed

     24               the name and address of his successor

     25               trustee in that section.
```

```
00004:01 DIAZ:        Okay. If he answered, "Yes, this is a
      02               testamentary trust," that's as far as the
      03               form would go, because none of-
      04 ASHLEY:       Okay, well-
      05 DIAZ:         -the other stuff would be set.
      06 ASHLEY:       That's what I thought. So, the question I
      07               have is, is why in the letter and why did
      08               the instruction say for him to put this on
      09               there?
      10 DIAZ:         Because he just checked, "Yes, it's
      11               testamentary", but didn't sign or date.
      12 ASHLEY:       [U/I]-
      13 DIAZ:         So, they're telling you what- what would be
      14               wrong.
      15 ASHLEY:       All right, perfect. So, if he signed and
      16               dated that, he doesn't have to put the
      17               trustee, because there really is- I mean,
      18               he just- Okay, no problem. Then all questions-
      19               1, 2, 3, and 4 do not need to be filled out,
      20               or do they?
      21 DIAZ:         They don't.
      22 ASHLEY:       Correct. Okay, [U/I]-
      23 DIAZ:         So right after, "Is this a testamentary
      24               trust?", it would say you would just sign
      25               and date here and return the form. If no,
```

```
00005:01               then you're gonna complete the remainder
      02               of the form.
      03 ASHLEY:       Perfect. Okay. That's what he did. And then
      04               there's no need for a trustee signature
      05               then, because there isn't.
      06 DIAZ:         Right.
      07 ASHLEY:       That's what we thought. Okay, perfect. I'll
      08               send this new form up. I greatly appreciate
      09               your help.
      10 DIAZ:         Yeah, you're welcome. Anything else, Keith,
      11               I can answer or help with?
      12 ASHLEY:       No ma'am. Thank you very much.
      13 DIAZ:         You're welcome. Have a good day.
      14 ASHLEY:       Bye.
      15 -
      16 -
```



**MIDLAND NATIONAL**®
*Life Insurance Company*



*3965*

## BENEFICIARY CHANGE REQUEST

### Policy/Certificate Number(s)

| | | | |
|---|---|---|---|
| 1505080593 | | | |

### Section 1: Insured

| First Name | Middle Name | | Last Name |
|---|---|---|---|
| James | E | | Seegan |

| Permanent Address: City, State, Zip Code | ☐ Please check if you would like the address listed to be the address of record for the policy. | Phone Number |
|---|---|---|
| 2114 CANNES DRCARROLLTON TX 75006-2923 | | 214-535-5719 |

| Date of Birth | Social Security Number/Tax Identification Number (TIN) |
|---|---|
| 08-31-1957 | 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 |

The policy proceeds payable upon the death of the insured for each policy listed above will be paid to the beneficiaries named herein.

### Section 2: Owner (If different than Insured)

If there are multiple owners, please designate one address for all policy correspondence to be mailed to since our administrative systems will only allow one address for mailing. Please note: If you do not indicate an address for mailing, the first owner listed will become the nominee owner and receive all correspondence.

| First Name | Middle Name | | Last Name |
|---|---|---|---|
| | | | |

| Permanent Address: City, State, Zip Code | ☐ Please check if you would like the address listed to be the address of record for the policy. | Phone Number |
|---|---|---|
| | | |

| Date of Birth | Social Security Number/Tax Identification Number (TIN) |
|---|---|
| | |

### Section 3: General Provisions

- Please complete the form(s) in their entirety to avoid delays in processing.

- Please use percentages in your designation - fractions and dollar amounts are not accepted. **Designations must equal 100%.**

- All beneficiary changes **MUST** include the designation of a Primary Beneficiary. Even if you only want to change the Contingent Beneficiary, you must restate the Primary Beneficiary.

- To distribute proceeds "per stirpes" please check the box. Per Stirpes is a common way of distributing proceeds where if one or more of your beneficiaries has died, his or her children share equally in his or her share of the proceeds (also known as Right of Representation). If per stirpes is selected it is required to attach a separate page listing the names, social security numbers, date of birth, address and phone numbers for all children.

*Continued on Page 2*

3965

Midland National Life Insurance Company • Administrative Office: One Sammons Plaza, Sioux Falls, SD 57193 • Principal Office: West Des Moines, IA
Phone: (800) 923-3223 • Fax: (877) 841-6706 • MidlandNational.com

Page 1 of 7

REV 11-15

**068001**

- Contingent Beneficiaries will receive death benefit proceeds in the event that the Primary Beneficiary predeceases the insured and if the primary designation did not include "per stirpes".

- If you need additional space or wish to designate more than four beneficiaries, attach another sheet marked "Attachment." Each attachment must contain policy number(s) and be signed and dated.

- If a Trust is named beneficiary, complete the Certification of Trust in section 6. The Company is not required to know or research the terms of the Trust. Payment to the named trust will fully discharge all liability of the Company to the extent of such payment.

- If the owner is a Company or Plan, please provide a current list of those authorized to sign on the company's behalf. The form must be signed by two authorized representatives (signors).

- If a legal representative signs for the Owner, supporting legal documentation must accompany the form.

- Any payment to a minor beneficiary will be held with the Company until the state's age of majority or until Legal Guardianship of the minor's Estate is established or unless otherwise permitted by law.

- If the Insured's Estate is selected as Primary Beneficiary, a Contingent Beneficiary does not apply.

- If the owner resides in Massachusetts, the owner's signature must be witnessed by a disinterested person over 18 who is not being named beneficiary.

# BENEFICIARY CHANGE REQUEST

## Section 4A: Primary Beneficiary(ies)
*fields are required for processing the Beneficiary Change request.*

| Name* | Percentage* |
|---|---|
| James E Seegan Revocable Trust | 100 % |

| Date of Birth (mm/dd/yy)* | Relationship* | Phone Number |
|---|---|---|
| 4/16/2019 | Trust | 972-658-6113 |

| Street Address | City | State | Zip |
|---|---|---|---|
| | | | |

| Social Security Number/TIN Number* | Please distribute the proceeds "Per Stirpes" ☐ |
|---|---|
| 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 | |

| Name* | Percentage* |
|---|---|
| | % |

| Date of Birth (mm/dd/yy)* | Relationship* | Phone Number |
|---|---|---|
| | | |

| Street Address | City | State | Zip |
|---|---|---|---|
| | | | |

| Social Security Number/TIN Number* | Please distribute the proceeds "Per Stirpes" ☐ |
|---|---|
| | |

| Name* | Percentage* |
|---|---|
| | % |

| Date of Birth (mm/dd/yy)* | Relationship* | Phone Number |
|---|---|---|
| | | |

| Street Address | City | State | Zip |
|---|---|---|---|
| | | | |

| Social Security Number/TIN Number* | Please distribute the proceeds "Per Stirpes" ☐ |
|---|---|
| | |

| Name* | Percentage* |
|---|---|
| | % |

| Date of Birth (mm/dd/yy)* | Relationship* | Phone Number |
|---|---|---|
| | | |

| Street Address | City | State | Zip |
|---|---|---|---|
| | | | |

| Social Security Number/TIN Number* | Please distribute the proceeds "Per Stirpes" ☐ |
|---|---|
| | |

If you need more space or have attached additional sheets to your form, please check this box ☐.  You may use additional blank pages completed with beneficiary information, signed and dated on each sheet.  Include the word "Attachment" and policy numbers on each additional sheet.

## Section 5: Signature of ALL Owners

If this transaction is subject to a **community property** interest, we strongly recommend that You obtain your spouse's signature on the line below to document his/her consent to this transaction. States that recognize community property interests in property held by married persons include Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington, and Wisconsin.

You understand and agree that the Company may presume that no community property interest exists if You have not obtained your spouse's signature below. Further, You understand and agree that the Company has no duty to inquire further about any such community property interest. As a result, You agree to indemnify and hold the Company harmless from any consequences relating to community property interests and this transaction.

Please note that the term "spouse" includes domestic partner or other partner as permitted by civil union, domestic partnership or similar law.

I hereby revoke all previous beneficiary designations and request Midland National Life Insurance Company change the beneficiaries for the listed contract or policy.

| Date | Owner's Signature* |
|---|---|
| 1/24/2020 | |
| Date | Signature of Owner's Spouse (Required if issue or resident state is AK, AZ, CA, ID, LA, NV, NM, TX, WA WI) |
| 1/24/2020 | |
| Date | Signature of Joint Owner or Second Officer with Title |
| | |
| Date | Signature of Disinterested Witness (Required in Massachusetts) |
| | |

If you are signing on behalf of the owner, as a legal representative, please print your name and provide your signature below. Check the box that applies to the capacity in which you are signing. If you have not already done so, please provide the court documents to verify you are authorized to act on behalf of the owner and have the authority to make such a change.

☐ Conservator      ☐ Guardian      ☐ Power of Attorney

| Printed Name | |
|---|---|
| | |
| Signature | Date |
| | |
| Signature of Witness (Required Only In Massachusetts) | Date |
| | |

01/27/2020  08:06 FAX 1 251 1081      ASSET MGT                                                    ☑ 005/006

# CERTIFICATION OF TRUST AGREEMENT
Please complete using information from the Trust document

**Section 6: Trust Agreement**

Policy No(s): *Please state pending if this form is being submitted with a new application.
**1505080593**

Name of Insured(s): First Name
**JAMES**   M.I. **E**   Last Name **Seegan**

First Name **JAMES**   M.I. **E**   Last Name **Seegan**

Full Name of Trust
**JAMES E Seegan Revocable Trust**

Trust Effective Date
**April 16 2019**

Trust Identification Number/Tax ID Number
**SS# 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  Living Trust No**
**Tax ID Number**

Which state law governs this Trust?
**Texas**

Preparer of Trust                                          Preparer's Telephone Number

Preparer's Address          Street                    City          State      Zip

Is the trust a beneficiary? ☒ Yes ☐ No
Is this a testamentary trust? ☑ Yes ☐ No  If yes, please sign and date here ___ **1-23-2020** ___ and return the form. If no, complete the remainder of the form before returning. **If this form is being completed in connection with a death claim, complete the remainder of the form before returning.

Name of Grantor(s)/Settlor(s): First Name    M.I.    Last Name

First Name    M.I.    Last Name

Name/Address of all current Trustee(s): *Please attach additional pages if insufficient space has been provided.

Trustee(s) Date of Birth:

Trustee(s) SSN:

Trustee(s) Telephone #:

Name/Address of Successor Trustee(s) if current trustee(s) resign or cannot fulfill their duties: *Please attach additional pages if insufficient space has been provided.

1.  The above referenced Trust Agreement (the "Trust") requires that: (Please mark the appropriate box.)
    ☐ all Trustees    ☐ a majority of Trustees    ☐ any Trustee    ☐ Trust only has one Trustee must sign documents pertaining to the above-referenced Policy which require a signature.

2.  The insurance agent or any person affiliated with the insurance agent is not a beneficiary of the above referenced trust.
    ☐ Agree    ☐ Disagree
    * If marked disagree, please attach an explanation of why your agent or person affiliated with your agent is named as a beneficiary of the trust.

    Note: Under the laws of most states, an agent is restricted in, or prohibited from, having a beneficial interest in a contract sold by that agent, unless that agent is a family member, or has a recognized insurable interest. Additionally, our Company policy prohibits our agents from serving in any capacity that may be construed as creating a direct or indirect conflict of interest with regard to a contract or contracts for which they are or have been the agent(s) of record.

3.  The relationship of the Trust Beneficiary(ies) to the Insured is:
    ☐ Spouse    ☐ Children    ☐ Grandchildren    ☐ Other _____
    Please explain.

4.  Was the Trust validly executed, and is it in full force and effect? ☐ Yes ☐ No

Please be advised that the Insurer reserves the right to request and receive a copy of the Trust documents if it determines that it is necessary to do so. Before the Insurer pays proceeds at the death of the Owner/Insured of the Policy(s) it may also require proof that the Trust is then in full force and effect.

3965

REV 11-15

## Declaration by Trustee(s)

The Trustee(s) states and agrees that if the Trust is named as owner, it is authorized under the terms of the Trust to purchase and hold insurance; that if the Trust is named as beneficiary of the Policy(s), it is authorized to receive insurance proceeds. The Trustee represents that they have determined the suitability of the Policy for the Trust.

The Trustee agrees that the Insurer's sole obligation is to perform under the terms of the Policy(s). The Trustee also agrees that the Insurer may rely on the signature(s) of the Trustee(s) on behalf of the Trust in the same regard as if they were the actual owner or beneficiary of the Policy(s); the Insurer may rely solely on this Certification as well as the statements and representations made in the associated application, as a basis for issuing and/or performing obligations of the above-referenced Policy and to determine the trust is in effect and the information provided is accurate; the Insurer has no obligation to investigate the terms of the Trust or the authority of the Trustee(s) and will not be accountable for knowledge about the terms of the Trust beyond this Certification; the Insurer expressly denies responsibility regarding the use and applications of any payments to the Trustee(s); the Insurer has no obligation to determine the Policy's conformance to income distribution requirements of the Trust agreement.

The Trustee(s) declares they have had an opportunity to consult with their own independent legal, tax and trust advisors concerning the appropriateness of the Policy(s) for the Trust and they have the authority to execute this Agreement and bind the Trust to the terms therein. As Trustee(s), and on behalf of the Trust, agree to hold the Insurer and its agents, employees, and other representatives harmless from any action the Insurer takes at the direction of the Trustee(s); unless such hold harmless is not permitted by applicable law.

The Trustee(s) declares, solely in its capacity as trustee and not individually and on behalf of the Trust, that each and every Trustee and successor Trustee are bound by this declaration. If is further understood that the Insurer may rely upon the direction of the named Trustee(s) and any named successor Trustee(s) until the Insurer receives written notification at its Administrative Office, of a change of Trustee. The Trustee(s) agrees to notify the Insurer within a reasonable time after such a change occurs.

The Trustee further acknowledges and agrees that:

**The Trustee further acknowledges and agrees that:**

- (a) Neither the Insurer or agents are authorized by the Company to recommend or sell Trusts while acting in their capacity as an agent for the Company and that any trust recommendation should be provided by a qualified advisor;

- (b) neither the Company nor any of its agents, employees or representatives are authorized to give tax or legal advice;

- (c) the Trustee(s) has not relied upon any representation or advice of any of the insurer's agents, employees or representatives with respect to the terms of validity of the Trust or the utilization of the Trust as the owner and/or beneficiary of this Policy; and

- (d) the purchase of this Policy is not required in conjunction with the establishment of the Trust and that any fees, costs and/or expenses associated with the establishment of the Trust are independent of any premium paid for the purchase of this Policy.

Note: The number of Trustees indicated in Question 1 must sign below.

| By: (Trustee Signature) | Date | By: Trustee Signature | Date |
|---|---|---|---|
| By: (Trustee Signature) | Date | By: Trustee Signature | Date |

**For Corporate Trustees:**

Title/Capacity of Signatory: _____

Trustee Name: _____
(Please Print or type)

Trustee Signature: **X** _____  Date: _____

Please include a copy of your corporate resolution showing the names and titles of the two officers authorized to sign on behalf of the entity.

Case 4:20-cv-00318-SDJ Document 26-2 Filed 11/07/22   Page 45 of 56 PageID #: 25719

*21850*

January 29, 2020

JAMES E SEEGAN
2114 CANNES DR
CARROLLTON, TX 75006-2923

Re: POLICY NUMBER: 1505080593 INSURED: James E Seegan

Dear James E Seegan:

Thank you for your recent request to change your beneficiary designation for the above listed policy.

Enclosed you will find the endorsement reflecting your requested change.  Please keep this information with your policy.  All previous designations have been removed and the proceeds of this policy at the time of a claim will be paid as directed on this endorsement.

To learn more about how we use and protect your information please refer to our privacy policies, which can be found at MidlandNational.com/privacy.

Please contact the Claims Department toll free at 800-923-3223 with any questions.  Our service professionals are happy to assist you Monday through Thursday from 7:30 am to 5:00 pm CST and Friday from 7:30 am to 12:30 pm CST.

Sincerely,

Claims Department
Midland National

CC: file &   KEITH T ASHLEY

**MIDLAND NATIONAL LIFE INSURANCE COMPANY**

**ENDORSEMENT OF CHANGE OF BENEFICIARY**

This amends your policy as stated below.  Please retain with your policy.

| | |
|---|---|
| Insured Name: | JAMES E SEEGAN |
| | |
| Trust Name: | JAMES E SEEGAN REVOCABLE TEST TRUST |
| Beneficiary Type: | PRIMARY |
| Relationship: | TESTAMENTARY TRUST |
| Percent: | 100% |
| Tax ID Number: | XX-XXX3737 |

---------------

Percentage of split between multiple beneficiaries may not be shown.  Unless otherwise stated, proceeds shall be paid to any Primary Beneficiaries who survive the Insured, but if none survive, proceeds shall be paid to any Contingent Beneficiaries who survive, or if none survive, to the Estate of the Policyowner.  It is hereby agreed that the provisions, if any, of the said policy requiring endorsement of change of beneficiary on the policy, are annulled.

Secretary

Midland National Life Insurance Company
One Sammons Plaza, Sioux Falls, SD 57193
Phone: (800) 923-3223 • Fax: (877) 841-6706 • MidlandNational.com

1505080593                                068008                            Page 2 of 2



## MIDLAND NATIONAL®
### Life Insurance Company

**Administrative Office: One Sammons Plaza, Sioux Falls, SD 57193**

**Questions?**
**A Customer Contact Specialist**
**will be happy to assist you.**
**Phone: (800) 923-3223**
**Fax: (877) 208-6136**
**Internet: MidlandNational.com**

JAMES E SEEGAN
2114 CANNES DR
CARROLLTON TX 75006

**PLANNED PREMIUM NOTICE**

POLICY/CERTIFICATE (POLICY):    1505080593
PLANNED PAYMENT DATE:    February 25, 2020
BILLING FREQUENCY:    ANNUAL
PLANNED PREMIUM:    $150,000.00
TOTAL AMOUNT:    $150,000.00

INSURED(S)   JAMES E SEEGAN       POLICY TYPE  Flexible Premium Universal Life

- **Please refer to the reverse side for important information.**
- Make your check payable to MIDLAND NATIONAL LIFE INSURANCE COMPANY and write the Policy number on your check. Please use the enclosed return envelope.
- Send correspondence or your payment for an amount other than that billed to our Policy Billing and Accounting Department at the Administrative Office address.
- Send overnight mail to: One Sammons Plaza, Sioux Falls, SD 57193.
- By sending us a check, you authorize us to use information from your check to make a one-time electronic debit from your account at your financial institution indicated on your check.
- We do not accept cash, money orders, travelers checks, Western Union money grams or counter checks.
- Checks must be drawn on a United States bank or a United States branch of an international bank.
- If an agent suggests that you discontinue or replace your Policy, always remember to request a written replacement proposal and contact us so we can help you with any questions you may have.
- If you received a grace notice in addition to this billing notice, the amount specified on the grace notice will need to be paid within the grace period or your Policy may terminate. Please note, your current planned premium may no longer be sufficient to prevent your coverage from terminating. Please contact us at the above number, or your agent, to establish a payment schedule that will be sufficient to keep the Policy active.
- Please note, if planned premium payments are not received by the stated Planned Payment Date, your insurance coverage may lapse.
- ***Enjoy the convenience of electronically paying your premiums from your checking account.*** *Contact us toll-free at the above number or visit our website at MidlandNational.com to request an authorization form.*

PLEASE RETAIN OR COPY TOP PORTION FOR YOUR RECORDS



## MIDLAND NATIONAL®
### Life Insurance Company

**Administrative Office: One Sammons Plaza, Sioux Falls, SD 57193**
**Telephone number: (800) 923-3223 Fax: (877) 208-6136**

☐ Check here and see reverse for address correction

| | |
|---|---|
| POLICY: | 1505080593 |
| JAMES E SEEGAN | UL |
| PLANNED PAYMENT DATE: | February 25, 2020 |
| BILLING FREQUENCY: | ANNUAL |
| PLANNED PREMIUM: | $150,000.00 |
| TOTAL AMOUNT: | $150,000.00 |
| AMOUNT ENCLOSED: | |

**MIDLAND NATIONAL**
**PO BOX 660768**
**DALLAS TX 75266-0768**

**068009**

1000401442150508059300015000000000000000000000000000100501444095020090019

**IMPORTANT INFORMATION**

Your check must be payable in U.S. dollars only.  Please do not send cash.

| | |
|---|---|
| **For Flexible Premium Universal Life Policies Only:**<br><br>**Payment of Planned Premiums**: The Policy owner specifies, and may change, the planned premium amount and billing frequency, subject to certain limits set forth in your Policy. The billing frequency shown on this Notice indicates the number of months until the date for your next planned premium payment.  The planned premium shown on this Notice is scheduled to be paid on or before the date shown. In some cases it may be necessary to pay more than the currently specified planned premiums to prevent the Policy from entering a grace period. If your Policy enters a grace period and we do not receive a sufficient premium payment by the end of the grace period, the insurance coverage under your Policy will terminate.   If your Policy enters a grace period, we will send you a notice before your insurance coverage terminates.    If the coverage under your Policy terminates, you may or may not be able to reinstate the coverage according and subject to the terms and conditions of Your Policy.<br><br>**Unscheduled Payments**: You can make an unscheduled payment at any time if your Policy provides for such a payment and the Policy is in force. | **Loan Principal and Interest:** If there is an outstanding loan against your Policy, the loan interest is due on the date indicated and in the amount stated if the Policy is in force. Any unpaid interest is automatically added to the amount of principal outstanding, and the total indebtedness bears interest at the rate indicated in your Policy (or at a new rate of interest if your Policy loan interest rate is subject to change). The amount of loan interest that is unpaid by the due date may be taxable income. For more information, please consult your tax advisor.  You can repay your loan principal in full or in amounts described in your Policy.<br><br>**Loan Repayments:** Loan repayments should be mailed directly to the address shown on the front side of this Notice with an instruction to apply the payment to the loan.<br><br>**Standard Loans:** If your policy is an indexed universal life product, we will allocate any unpaid interest on a standard policy loan first to the unloaned portion of the fixed account. |

| NEW ADDRESS?<br>SHOW ADDRESS CHANGE/CORRECTION BELOW | | |
|---|---|---|
| ADDRESS | | |
| CITY | STATE | ZIP CODE |
| AREA CODE | TELEPHONE NUMBER | |
| OWNER'S SIGNATURE | | |
| OTHER POLICY NUMBER(S) TO WHICH THIS CHANGE APPLIES | | |

**068010**

# Opening Claim Status Form

Claim Id:151945                    Claim Status:    Validated                    Examiner ID:

Contract Id:1505080593                    Amount:    $2,000,000.00


### *Deceased Info*

| | | |
|---|---|---|
| Name: | James E Seegan | |
| Gender: | M | |
| ID: | 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 | |
| Date of Birth: | 8/31/1957 | |
| Date of Death: | 2/19/2020 | |
| Manner of Death: | Natural | |
| Cause of Death: | | |
| Death Incident Country: | USA | |
| Accelerated Benefit Claim: | NO | |

### *Notifier Info*

| | |
|---|---|
| Claim Type: | Normal |
| Name: | Keith Ashley |
| Gender: | Male |
| Notifier Type: | Person |
| Beneficiary : | NO |
| Relationship: | Agent |
| Address: | |

### *Contact Info*

| | |
|---|---|
| Contact Type: | Phone |
| Date: | 2/20/2020 |
| Time: | 10:40 AM |

| | |
|---|---|
| Invalid Address: | NO |
| Contact: | |
| Best time to call: | |

Notes:

PER CCUI PB is spouse Sakdida Seegan doe 1505085759 and PB is James E Seegan Rev Test Trsut for 1505080593 ; email claim packets to the agent 2/20/20 - Keith calling to ask about family's online access. sjl KEITH@NORTHTEXASMONEY.COM Carla DeNeui-Simonsen

Entered By:    crd0902



February 24, 2020

JAMES E SEEGAN REVOCABLE TRUST
DATED 04/16/2019
2114 CANNES DR
CARROLLTON, TX 75006

Re:        James E Seegan, Deceased
           Contract-1505080593

Dear James E Seegan Revocable Trust:

On behalf of Midland National Life Insurance Company please accept our sincere condolences which we wish to extend to you and your family.  The documents listed below are required prior to settlement of the claim:

1.     An Original Certified Death Certificate showing cause and manner of death.
2.     Completion of the Claimant Statement by the Trustee(s) (enclosed)
3.     Completion of the Certification of Trust Agreement. If the Tax Identification Number (TIN) of the trust was the social security number of the deceased, please provide a new TIN. You can apply for a TIN online by accessing the IRS website at www.irs.gov/businesses and clicking on Employer ID Numbers under Related Topics, or call 1-800-829-3676 (enclosed)
4.     Generation Skipping Transfer Form (enclosed)

If you are sending in documents separate from the Claimant Statement please ensure the Policy number is indicated on your paperwork to ensure efficient handling of your documents.

As soon as we receive all documents, we will give your claim our prompt attention. Please be advised that elections made on the Claimant Statement are a full and final settlement once proceeds have been processed.

Please allow 10 calendar days for the review of any documents submitted for processing. If you have submitted the final requirement for a Claim, the Claim will be processed in 10 calendar days. Processing time may be extended if additional review or documentation is required.

We invite you to visit our website at https://www.midlandnational.com/life-claim-forms for helpful brochures that provide additional information on settlement options that may be available to you, frequently asked questions about the claim process and electronic versions of the Claims forms. Copies of the documents found on our website can be obtained by calling our Claims Department at the number listed below.

If you have questions, please call us toll-free at 800-923-3223.  We are available Monday through Thursday from 7:30 am to 5:00 pm (CT) and Friday from 7:30 am to 12:30 pm (CT).  A service professional within the Claims Department will be happy to take your important call.

Sincerely,

Claims Department

AGENT:
Keith T Ashley
PO Box 967

Allen, TX 75013
0YR6
9726586113

Midland National Life Insurance Company
One Sammons Plaza  ♦  Sioux Falls, SD 57193
Phone 800-xxx-xxxx  ♦  Fax 877-208-6136

068013

CTD36



**Keith Ashley**
Registered Representative

1207 W. University Dr. Ste.102 • McKinney, TX 75069
Phone: (972) 529-1707 • Fax: (972) 529-1732
Keith@NorthTexasMoney.com

To whom it may concern,

Please signature guarantee this application and then forward to American Funds.

Thanks

Keith Ashley

Securities Offered Through Sammons Securities Company, LLC
Member FINRA/SIPC

069001

**American Funds®**

Mutual Fund
Account Options/FundsLink®

**NOTE:** • This form should not be used for retirement accounts for which Capital Bank and Trust℠ is the custodian or trustee.
• This form is to be used ONLY if you are updating an existing American Funds account.

Denny M Willmon + Marilyn J Willmon
Name of owner(s) (print)

0843214118
Account number

15110 Empanada DR          Houston          TX   77083. 4314
Address                          City              State      ZIP

A signature guarantee may be required if the names on the bank account are not identical to the names on the American Funds account or if directing funds to a third party (see Section 9). Visit our website at americanfunds.com to sign up for many of these options online.

## 1 Purchase and sell shares via the Web and telephone

☑ Link my American Funds account(s) and bank account so that I can perform the following transactions by telephone and online at **americanfunds.com.** (Provide bank information in Section 8.)

☐ Purchase     ☐ Sell     ☑ Both

Your election will apply to all your fund holdings unless you specify otherwise. Maximum purchase is $100,000 a day. (Please check your funds' prospectuses for any share class purchase limits.) Maximum redemption is $75,000 a day.

## 2 Automatic Purchase Plan — Purchase shares in your American Funds account(s) automatically

*For fund names and numbers, see page 7. Please type or print clearly. If you need more space, attach a separate page. Provide bank information in Section 8.*

☐ I wish to establish an Automatic Purchase Plan.

| Fund name | Fund number | Purchase amount ($50 min. per fund) |
|---|---|---|
| _____ | ☐☐☐ | $ _____ |
| _____ | ☐☐☐ | $ _____ |
| _____ | ☐☐☐ | $ _____ |
| _____ | ☐☐☐ | $ _____ |
| _____ | ☐☐☐ | $ _____ |
| _____ | ☐☐☐ | $ _____ |
| _____ | ☐☐☐ | $ _____ |
| _____ | ☐☐☐ | $ _____ |

**Note:** AFS must receive your request at least two (2) business days prior to the first transaction date requested. If no date is provided below, the option will be established the date received and the transactions will begin the following month.

**1. Transactions should begin during the month of** _____

**2. Transactions should occur on the following date(s) of the month** _____, _____ (e.g., 8th, 19th, etc.)

**3. Transactions should stop on the following date (optional)** _____

**4. Frequency of automatic transactions:**

☐ Every month     ☐ Every other month     ☐ Every 3 months     ☐ Every 6 months     ☐ Every year

1 of 7

**069002**

**American Funds** °

Mutual Fund
Account Options/FundsLink

## 3 Automatic Withdrawal Plan — Withdraw money from your American Funds account(s) automatically

*For fund names and numbers, see page 7. If you need more space, attach a separate page. Transactions established to continue automatically until American Funds receives instructions to stop.*

☐ I wish to establish an Automatic Withdrawal Plan.

| Fund name | Fund number | Withdrawal amount ($50 min. per fund) | | Annual withdrawal percentage* |
|---|---|---|---|---|
| _____ | ☐☐☐ | $ _____ | or | _____ % |
| _____ | ☐☐☐ | $ _____ | or | _____ % |
| _____ | ☐☐☐ | $ _____ | or | _____ % |
| _____ | ☐☐☐ | $ _____ | or | _____ % |
| _____ | ☐☐☐ | $ _____ | or | _____ % |
| _____ | ☐☐☐ | $ _____ | or | _____ % |

*For annual percentage withdrawals, the dollar amount of the automatic withdrawal is recalculated based on the percentage designated, the frequency of the transactions and the account value on each withdrawal date. For example, if you request a 12% annual withdrawal, drafted monthly, you will receive 1% each month. Because of market fluctuation and the amount of any previous withdrawals, the actual payment amount will vary with each transaction.

**Note 1:** AFS must receive your request at least two (2) business days prior to the first transaction date requested. If no distribution date is provided below, the distribution will be established the date received and transactions will begin the following month.

1. **Transactions should begin during the month of** _____

2. **Transactions should occur on the following date(s) of the month** _____ , _____ (e.g., 8th, 19th, etc.)

3. **Frequency of automatic transactions:**

   ☐ Every month   ☐ Every other month   ☐ Every 3 months   ☐ Every 6 months   ☐ Every year

**Note 2:** If your account goes to a zero balance, your automatic option will be stopped.

4. **I would like one of the following:**

   ☐ Electronically deposit my withdrawal into my bank account. Electronic deposits should be available in bank accounts within three (3) business days of the transaction date. Provide bank information in Section 8.

   ☐ Mail checks to registered owner(s). (Bank information is not required for this request.)

   ☐ Mail checks to a third party. **Provide the name and address of the third party below and have your signature guaranteed in Section 9.**

_____
Name and address of third party

**069003**

**American Funds®**

Mutual Fund
Account Options/FundsLink

## 6 Check writing — For money market funds, Class A shares only

You must have a minimum fund balance of $1,000 to request this option. Minimum check amount is $250.

**Note 1:** You must have sufficient funds available in one of the money market funds listed below BEFORE your check can be presented for payment. Checks will not be honored if sufficient funds are not available within the money market fund.

☐ Subject to the terms of the prospectus, I want to write redemption checks and have completed the signature verification below.

**Note 2:** Only those people named in the account registration can sign checks. In the case of corporate, limited liability, partnership registration, etc., only those people who have authority to sign checks for that entity have the legal capacity to do so here. If you are unsure how this applies to your request, please contact your financial adviser for guidance. **A signature guarantee is required in Section 9.**

### Signature verification for check writing

For account number  0843 21 4 11 8

**Check applicable fund(s) below (Class A shares only)**

☒ The Cash Management Trust of America    ☐ The Tax-Exempt Money Fund of America    ☐ The U.S. Treasury Money Fund of America

**Provide shareholder name(s) and signature(s) below. Although multiple signers may be indicated, only one signature is required for check writing.**

| | |
|---|---|
| _Denny M. Willmon_ | X _Denny M Willmon_ |
| Shareholder's name (please print) | Shareholder's signature |
| _Marilyn J. Willmon_ | X _Mrs. Denny M. Willmon_ |
| Co-shareholder's name — if applicable (please print) | Signature |
| | X |
| Name of other authorized signer (please print) | Signature |

**If you are an authorized signer and have not previously provided information about yourself, you must complete page 6.**

## 7 Wire redemptions to your bank account — For money market funds only

☐ Wire proceeds of redemptions ($1,000 minimum) requested by telephone or fax to the bank specified in Section 8.

**A signature guarantee is required in Section 9.**

## 8 Bank information

☐ check the box

MR. OR MRS. DENNY M. WILLMON
15110 EMPANADA DR.   PH. 281-495-9334
HOUSTON, TEXAS  77083

95-808-1130                7871

Pay to the order of _____  $

**VOID**

_____ Dollars

TRADITION BANK
13000 BELLAIRE BLVD  (281)495-4410
HOUSTON, TEXAS 77072
PHONE EXPRESS (281)564-3600
WWW.TRADITIONBANK.COM

For _____

⑆113008083⑆ 7871⑆ 608 6256⑆

Account Number

**Note:** Only one bank account can be used on any *Account Options* form. Separate *Account Options* forms must be submitted if you want to use different bank accounts for various options.

Attach your document here.

4 of 7

⬛ **American Funds**®

Mutual Fund
Account Options/FundsLink

## 9  Signature/Signature guarantee

I/We request the establishment of the privileges selected on this form and authorize American Funds Service Company (AFS), upon request via telephone, facsimile or any other means utilizing telecommunications, including wireless or any other type of communication lines by authorized persons with appropriate account information, to **(1)** redeem fund shares from this/these fund account(s) and deposit the proceeds into the bank account identified on this form, and/or **(2)** secure payments of amounts invested by me/us in the fund account(s) identified on this form from the bank account identified on this form. I/We authorize the bank to accept any such credit or debit to my/our account without responsibility for its correctness. I/We understand that amounts invested may not be redeemed for 10 business days.

I understand that if requesting check writing privileges against any American Funds money market fund, there will be sufficient funds available within the money market fund to honor the check. I also understand that if there are insufficient funds, the check will be returned and not honored.

In consideration of AFS acting on such instructions and processing such transactions, I/we agree to hold harmless and indemnify AFS; any of its affiliates or mutual funds managed by such affiliates; and each of their respective directors, trustees, officers, employees and agents from any losses, expenses, costs or liability (including attorney fees) that may be incurred as a result of AFS establishing these privileges or acting on such instructions.

I/We understand that this authorization may be terminated by me/us at any time by telephone or written notification to AFS. The termination request will be effective as soon as AFS has had reasonable time to act upon it.

X _Kevin M Willman_   X _Marilyn G Willman_
Fund account owner's signature*      Fund account co-owner's signature*

*Fund account owner's/co-owner's signature(s) must be guaranteed if establishing electronic deposit of redemption proceeds, dividends and/or capital gains or automatic withdrawals **and** the names on the bank account are not identical to the names on the American Funds account.

X _____   X _____
Bank account owner's signature†      Bank account co-owner's signature†
(if different from above)      (if different from above)

†Bank account owner's/co-owner's signature(s) must be guaranteed if establishing investments by telephone or website or automatic investments **and** none of the names on the bank account are included on the American Funds account.

**If required**, signatures must be guaranteed by a bank, savings association, credit union, a member firm of a domestic stock exchange or the Financial Industry Regulatory Authority, that is an eligible guarantor institution. **A notary public is NOT an acceptable guarantor.** The guarantee must be in the form of a stamp or a typewritten or handwritten guarantee that is accompanied by a raised corporate seal.

| GUARANTOR: | GUARANTOR: |
|---|---|
| Stamp signature guarantee here. | Stamp signature guarantee here. |
| _Megan Heaton_ | _Megan Heaton_ |

| Indiana Service Center | Virginia Service Center |
|---|---|
| **Please mail this form to the appropriate service center.** (If you live outside the U.S., mail the form to the Indiana Service Center.) | **American Funds Service Company** P.O. Box 6007 Indianapolis, IN 46206-6007  **Overnight mail address:** 8332 Woodfield Crossing Blvd. Indianapolis, IN 46240-2482 | **American Funds Service Company** P.O. Box 2280 Norfolk, VA 23501-2280  **Overnight mail address:** 5300 Robin Hood Rd. Norfolk, VA 23513-2430 |

**069005**